## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RYAN NOAH SHAPIRO,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 13-0555 (RDM)** |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## JOINT STATUS REPORT

Pursuant to the Court's Order, ECF No. 50, Ryan Noah Shapiro ("Shapiro"), National Security Counselors ("NSC"), Jeffrey Stein ("Stein"), and Truthout (collectively "the Plaintiffs") as well as the United States Department of Justice ("Defendant" or "FBI") (collectively "the Parties") conferred on March 4, 2016, and throughout the week of March 7 – 11, 2016, and hereby respectfully submit this Joint Status Report.

### Defendant's Position

Before the Court is Plaintiffs' five count complaint wherein NSC, Stein, and Truthout alleged that Defendant had unlawfully failed to search for and/or unlawfully withheld "administrative processing files" in three of the five counts. *See generally* ECF No. 1, Complaint, at Counts 1 – 3. Shapiro alleged that Defendants unlawfully failed to process and/or unlawfully withheld both "administrative processing files" and "case evaluation forms." *Id*. at Count 4. Ultimately, the gravamen of Plaintiffs' complaint is that Defendant's policy of not processing requests for search slips less than 25 years is inconsistent with the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. ("FOIA"). *Id*. at Count 5. Plaintiffs sought varied relief,

but the main relief they requested was declaratory and injunctive relief from Defendant's "blanket invocation of Exemption (b)(7)(E) to withhold information about [] FOIA searches constitute an unreasonable interpretation of the statutory obligations imposed by FOIA." *Id.*

Thus, the singular issue that cuts across all the counts is the issue of the categorical treatment of processing records under FOIA Exemption (b)(7)(E). Accordingly, Defendant anticipated that information contained in all processing records would also be protected under FOIA Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(F) and reserved those exemptions in the event its categorical treatment was not affirmed. *See* Second Declaration of David M. Hardy, ECF No. 21 at 25, n.20. After full dispositive briefing, the Court held that Defendant's policy was not consistent with FOIA and that the records could not be categorically withheld under FOIA Exemption (b)(7)(E). ECF No. 48.

Defendant does not take the Court's ruling lightly and have discontinued the practice of categorically denying FOIA requests for all administrative processing records less than 25 years old under FOIA Exemption 7(E). *See* Exhibit A, Fourth Public and Overall Declaration of David M. Hardy ("4th Hardy Declaration"). In fact, subject to other FOIA Exemptions, Defendant will be producing all records related to the processing of FOIA requests that resulted in something other than a "No Record" response to the Plaintiffs within 60 days or by May 10, 2016. *Id.*, ¶ 9. Regarding the "No Record" response cases, it is noteworthy that the Court acknowledged that "the problem the FBI describes is a serious one." ECF No. 48 at 23. Given Defendant's revised policy that "narrows the application of this 25-year categorical protection…to only those requests…where the FBI issued a 'No Records' or a *Glomar* response," 4th Hardy Decl. ¶ 6, and anticipated release of all non-exempt segregable administrative processing records for requests resulting in non "No Record" responses, any prejudice to the Plaintiffs has been reasonably

constrained.  Thus, Defendant respectfully requests that the Court permit it to submit further briefing that addresses its new targeted treatment of the narrow subset of "No Record" responses. Defendant will be able to submit further briefing on this modified policy within 60 days.  *Id.*

Furthermore, in light of the fact that Defendant no longer applies the policy previously addressed by the Court and is processing records related to requests that did not result in a "No Record" response within 60 days, it is doubtful that declaratory relief is merited.  This is not a case where there is a clearly identified "economic effect" and Defendant offers only "weak assurance" against a backdrop of "stubborn refusals…to release information…even in the face of instructions from the Secretary of the Air Force."  *Payne Enter., Inc. v. United States of America, et al.*, 837 F.2d 486, 492 (D.C. Cir. 1988)("The Government has offered only modest assurance, in the form of an affidavit by an Air Force Major [Agency Counsel], that the contested practice will not be reinstated.  [The Major's] claim that [] requests…'will not be denied in the future…' seems to be founded on her own inference" from a superior's memorandum).  Here, Defendant has provided a strong assurance from Mr. Hardy himself that the policy the Court ruled on has been discontinued.  *See* 4th Hardy Decl.  Thus, declaratory and/or injunctive relief is moot and/or redundant.  If the Court deems it necessary, Defendant will be prepared to submit additional briefing on this narrow issue of declaratory relief within the next seven (7) days.

In light of Defendant's position taken throughout this litigation that information in all Plaintiffs' requests implicate similar issues related to the protection of processing records and search slips "enter[ing] final judgment with respect to [] Shapiro under [Rule] 54(b)" would not serve the purposes of judicial economy and efficiency.  ECF No. 50 at 2.  Defendant believes that one final order on all claims best serves that end.  A decision is final only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van*

*Cauwenberghe v. Biard*, 486 U.S. 517, 521-22 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).  This approach avoids piecemeal appellate review and also "protects the district court's independence, prevents multiple, costly, and harassing appeals, and advances efficient judicial administration." *Blue v. D.C. Pub. Sch.*, 764 F.3d 11, 15 (D.C. Cir. 2014).  District courts have "substantial discretion" in determining whether there is no just reason for delay.  *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001); *Hill v. Henderson*, 195 F.3d 671, 673 (D.C. Cir. 1991)(dismissing appeal as not promoting judicial economy where one count of the complaint was on appeal and the remainder was not).  Here, because each request concerns similar processing records and common issues, further briefing is likely to raise arguments that could touch on them raising the prospect of piecemeal appeals that are disfavored by the rule.  Thus, Defendant believes that final judgment on the Shapiro count alone disserves Rule 54(b).

To summarize, Defendants will process all records for requests resulting in non-"No Record" responses within sixty (60) days.  Within the same sixty (60) days Defendants will file further briefing as requested by the Court as well as brief the new policy that has been narrowed to "No Record" responses only.  As for the Stein Third Request, FOIA Request No. 1182251-000, the records will be disclosed on or before March 18, 2016.

## Plaintiffs' Position

1. The appropriate schedule for Defendant's production of those records that the Court has found were unlawfully withheld.

During the meet and conference, Plaintiffs proposed that all records that the court has found were unlawfully withheld should be produced by March 18, 2016, which would have provided the FBI with two weeks from the date of the meet and confer phone call to produce the records.

4

The FBI did not agree to production by that date. Accordingly, in order to balance the need for the Court to have sufficient time to consider this Joint Status Report with Plaintiffs' statutory right of prompt access to the documents at issue, Plaintiffs propose that the deadline for disclosure be keyed to the Court's order, specifically, 14 days after the issuance of the forthcoming order. Plaintiffs note that under FOIA, once records are determined to be releasable, the agency "shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A); *Taylor v. Sturgell*, 553 U.S. 880, 885 (2008) ("unless the requested materials fall within one of the Act's enumerated exemptions, see § 552(a)(3)(E), (b), the agency must 'make the records promptly available' to the requester.")

Defendants' proposal of 60 days is too long. "As to actual production, FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013). Defendant explains that 60 days is necessary because of the need to re-review records which were categorically denied and apply FOIA exemptions to exempt information. However, a delay of 60 days is not necessary because the FBI does not need to re-review records and apply exemptions; it simply needs to disclose the records in unredacted form (except for the names of analysts on the Case Evaluation Forms, which Plaintiffs conceded could be redacted under Exemption 6). The FBI is not entitled to re-process the records and assert new exemptions because it has waived its ability to assert any other exemptions.

The D.C. Circuit's opinion in *Maydak* compels the release of the search processing material (including search slips) and case evaluation forms without allowing the agency a second bite at the apple. *See Maydak v. United States DOJ*, 218 F.3d 760 (D.C. Cir. 2000). As was the case in

*Maydak*, "the DOJ does not allege that the district court failed to consider an issue that it properly should have." *Id.* at 768. Thus, the Court must apply the D.C. Circuit's rule "[r]equiring the simultaneous invocation of exemptions." This rule was adopted because "the delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of efficient, *prompt*, and full disclosure of information." *Id.* at 765 (internal quotation marks omitted). The court must "not allow an agency to play cat and mouse by withholding its most powerful cannon until after the District Court has decided the case and then springing it on surprised opponents and the judge." *Senate of P.R. ex rel. Judiciary Comm. v. United States DOJ*, 823 F.2d 574, 580 (D.C. Cir. 1987).

The FBI implies that it was blindsided by this Court's ruling, believing that it was only litigating a categorical policy. Fourth Hardy Decl. ¶ 9. However, this suggestion from Mr. Hardy is disingenuous. In support of its motion for Summary Judgment, Mr. Hardy submitted a declaration explaining that the records responsive to Plaintiffs' requests had already been processed; that the declaration was intended to be a *Vaughn* declaration; and that "[a]dditionally" the FBI was addressing the categorical policy. Hardy Decl. ¶ 4[ECF dkt: 21-3]. Further, Mr. Hardy was cognizant enough about the nature of the proceedings to have invoked Exemption 6 with respect to the names of third parties in search records, (Hardy Decl. ¶ 64) but appears to have deliberately chosen to not invoke any other exemptions.

The FBI did not, as it claims, "reserve" FOIA Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(F), such that it could invoke them in the event its categorical treatment was not affirmed. In his declaration, Mr. Hardy states in a footnote: "Information in the documents responsive to plaintiffs' requests may also be exempt pursuant to Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and/or 7(F)." This is virtually identical to the situation in *Maydak* where the agencies' affidavits

merely suggested that certain other exemptions may be applicable. 218 F.3d at 765. Rather than

finding that these references to other exemptions reserved them for later invocation, the D.C.

Circuit held that the agency had waived them because the agency's summary judgment motion

"made no attempt to substantiate those claims." *Id.* Further, Defendant's motion for summary

judgment in this case did not even reference this retroactively-characterized "reserve[ation]"

contained in the Hardy declaration. Instead, the motion contained a chart specifically

enumerating the exemptions "at issue in *lawsuit*" (emphasis added) and with respect to Shapiro's

claims, referred only to Exemptions 2, 6, and 7(E).

Further, unlike other cases involving categorical withholdings, such as *CREW v. DOJ*, 978

F.Supp.2d 1 (D.D.C. 2013), Plaintiff does not seek the remedy of compelling the agency to

produce a *Vaughn* declaration. ("At this stage, CREW mainly takes issue with DOJ's policy of

categorically withholding the requested documents: that is why CREW seeks an order requiring

DOJ to produce a *Vaughn* Index.") In this case, the agency already produced a *Vaughn*

declaration. First Hardy Decl. ¶ 4[ECF dkt: 21-3] (referring to his declaration as being submitted

pursuant to *Vaughn*). The Court rejected the claimed exemptions and the only thing left to do

with respect to the search material and case evaluation forms is for the agency to produce them.

This is not a case in which the Court held that it was impossible to evaluate the search slips

categorically; instead the Court held that the search are categorically *not* exempt under

Exemption 7(E) because "the FBI's exercise of its statutory authority to exclude documents from

FOIA's reach is not the kind of 'technique' or 'procedure' to which Exemption 7(E) refers."

Any concerns that the FBI has about the impact of the Court's ruling can be directed to the

D.C. Circuit and, if necessary, in a request for a stay.

2. Whether the Court should enter final judgment with respect to Plaintiff Ryan Noah Shapiro under Federal Rule of Civil Procedure 54(b).

Plaintiff Shapiro requests that the Court enter final judgment with respect to him under Federal Rule of Civil Procedure 54(b). Although Defendant now argue "that information in all Plaintiffs' requests implicate similar issues" and that entry of partial final judgment is inappropriate, they previously argued to this Court that the claims do *not* implicate similar issues: "The only thing that Plaintiffs claims have in common is that they stem from FOIA requests, which are processed similarly by the FBI." [ECF dkt: 11-1 at 4.] Defendant described the counts at issue here as "many, multifarious claims" and pointed to the fact that "Counts 1 to 4 were made at different times, by different people, seek different documents, and deal with unrelated FOIA/PA requests that are at varying stages of administrative processing and thus are logically distinct." [ECF dkt: 11-1 at 4-5] (internal quotation marks and ellipsis omitted). While the Plaintiffs' claims were previously tied together by the allegation of a common policy or practice, now that both Shapiro's individual claims *and* the policy or practice claim have been resolved, there is no just reason for delay with respect to Plaintiff Shapiro's claims.

3. Whether additional briefing is necessary with respect to whether a declaratory judgment should issue invalidating Defendant's search-slip policy under *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) and, if so, the appropriate schedule for such briefing.

A declaratory judgment and permanent injunction should issue invalidating Defendant's search-slip policy without further briefing. Plaintiffs propose that the Court enter declaratory judgment stating "The FBI's policy of categorically invoking Exemption 7(E) to withhold release of FOIA/PA processing material younger than 25 years, including search slips, violates FOIA." Plaintiffs further request entry of an injunction "enjoining Defendant from employing this policy." Defendant offers no non-frivolous reason as to the propriety of entering some form

of declaratory and injunctive relief. Defendant argues only that the FBI has voluntarily ceased

the practice, thereby making the dispute moot. In support, it submits a declaration from David

Hardy attesting to the changed practice. However, the in *Payne* itself the D.C. Circuit clearly

rejected the argument that an agency's voluntary cessation of an illegal practice under FOIA

moots the case. *Id.* at 491-92. Moreover, Defendant has offered no evidence that they will not

reinstate the policy in the future.

4. The appropriate schedule for further briefing and evidentiary submissions on those issues
   identified by the Court as requiring additional submissions.[1]

In NSC-1 (Req. Nos. 1152912-002, 1152931-002, 1152932-002, 1152933-002, 1152934-

002, and 1152935-002), the FBI did not search for search slips because it considered them

categorically exempt. None were returned because none were searched for. The FBI should

therefore be ordered to search for search slips responsive to that request and then process them.

Ex. G to the Hardy declaration clearly showed an appeal of the adequacy of the search on the

basis that no search slips were found.  Ex. I of the Hardy declaration is OIP's statement,

"Because any such records responsive to your request would be categorically exempt from

disclosure, the FBI properly asserted Exemption 7(E) and was not required to conduct a search

for such records" (emphasis added).  The Hardy declaration says nothing about whether or not it

considered search slips to be responsive.  If Defendant contends that the FBI did conduct a

search for search slips and OIP nonetheless forced this issue instead of simply saying that no

records were found, it should say so explicitly and with a sworn declaration from the FBI.

With respect to NSC-2 (Req. No. 1174832-000), the FBI should be ordered to either release

---

[1] Because Plaintiffs lack full knowledge about how FBI processed the requests in question, the list of issues contained in this section may not be exhaustive; the issues presented here are intended to serve as a recitation of the issues known to Plaintiff at the time of this filing.

all information which has been previously disclosed in court documents or demonstrate to the Court that the previously disclosed information is inextricably intertwined with exempt information. The FBI should be ordered to provide a *Vaughn* index or any other statement confirming how many records it found, as well as to identify which of these requests (covered by NSC-2/Stein 1) had "No Records" responses.

For Truthout (Req. No. 1196979-000), Stein-1 (1174507-000), and Stein-3 (1182251-000), Plaintiff Truthout and Stein take the same position as for NSC-2.

Also with respect to Stein-3, if the FBI takes the position that it may limit its response to Stein-3 to 100 pages, Stein requests briefing on the issue of whether the Court should reconsider the dismissal of that count as moot, since he is arguing that he is entitled to 500 free pages, or 1 free CD (the cost equivalent of 100 free pages). If litigation is necessary, Stein will file his brief after March 18, 2016.

With respect to Stein-2 (Req. No. 1182250-000), search slip information was withheld from pages FBI-13-15, 17-18, and 51-206 of the coded release.  Other information was withheld under Exemption (b)(5) from pages FBI-13-15, 17-18, 55-119, and 122-199.  The FBI should be ordered to release all the information which has been previously disclosed in court documents or demonstrate to the Court that the previously disclosed information is inextricably intertwined with exempt information.  The FBI must also release all (b)(5) records which would have been created regardless of the litigation or demonstrate to the Court that the litigation fundamentally changed the character of that information. Further, to the extent that search slips or Case Evaluation Forms exist that the FBI did not search for, the FBI should be ordered to search for responsive search slips and then release them.

5.   Any other issues that the parties deem appropriate.

The non-Shapiro plaintiffs request that any entry of partial final judgment for Shapiro include them because the Court's decision on the issues as to which Shapiro prevailed apply to all plaintiffs.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Civil Chief

By: _____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. ʙ Civil Division
Washington, D.C.  20530
(202) 252-2562


/s/ Kelly B. McClanahan[2]
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org


/s/ Jeffrey L. Light[3]
Jeffrey L. Light, Esq.
D.C. Bar #485360
1712 Eye Street, NW
Suite 915
Washington, DC  20006
202-277-6213
Jeffrey@LawOfficeOfJeffreyLight.com


*Counsel for Plaintiffs*

---

[2] With respect to Plaintiffs' Position 1, 3, 4, and 5.
[3] With respect to Plaintiffs' Position 1, 2, and 3.