**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RYAN NOAH SHAPIRO; JEFFREY STEIN; NATIONAL SECURITY COUNSELORS; TRUTHOUT, | |
| *Plaintiffs*, | Civil Action No. 13-555 (RDM) |
| v. | |
| U.S. DEPARTMENT OF JUSTICE, | |
| *Defendant*. | |

## MEMORANDUM OPINION AND ORDER

This FOIA action is before the Court on the parties' joint status report, Dkt. 51, regarding the appropriate course of action following the Court's January 22, 2016 Memorandum Opinion, Dkt. 48. In their joint report, the parties dispute the following issues: (a) whether the FBI should be required to produce *all* search slips and processing notes subject to the Court's opinion or may advance a new policy that would protect some of those records; (b) whether the FBI may assert new exemptions to withhold portions of those records that it will produce; (c) whether additional briefing is required with respect to the plaintiffs' request for declaratory and injunctive relief on the now-abandoned policy; (d) whether the Court should enter final judgment with respect to one of the plaintiffs, Ryan Noah Shapiro; and (e) the timing of any additional briefs and evidentiary submissions that may be required. This Opinion and Order resolves these outstanding issues.

### A.    New Policy

The FBI states in the status report that it has "discontinued the practice of categorically denying FOIA requests for all administrative processing records less than 25 years old." Dkt. 51 at 2. It explains that in May 2015, without informing the Court or the plaintiffs in this case, it

"modified its then-existing categorical denial policy" and adopted "a more balanced, narrowly-tailored approach."  Dkt. 51-1 at 2–3 (Fourth Hardy Decl. ¶ 5).  Under the new policy, the FBI proposes to deny requests for search slips and processing notes "only . . . where the FBI issued a 'No Records' or a *Glomar* response to the underlying FOIPA request."  *Id.* at 3 (Fourth Hardy Decl. ¶ 6).  It states that it intends to produce all records to the plaintiffs that do not fall within the scope of the new policy, "subject to other FOIA Exemptions," Dkt. 51 at 2, but it "requests that the Court permit it to submit further briefing . . . on this modified policy" and whether it comports with FOIA, *id.* at 3.  The plaintiffs oppose the FBI's request.  *Id.* at 5–7.

The FBI's request turns on the scope of the rule set out by the D.C. Circuit in *Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000).  In *Maydak*, a defendant in a federal criminal prosecution submitted a FOIA request for records concerning his case.  *Id.* at 761–62.  The government "denied Maydak's request in full, relying solely on Exemption 7(A)."  *Id.* at 762.  After lengthy motions practice, the district court accepted the government's assertion of Exemption 7(A), *id.* at 763, but on appeal the government abandoned the exemption and filed a motion to remand the case "based on changed circumstances" and "requesting the opportunity . . . to reprocess Maydak's FOIA request and determine whether other FOIA exemptions might apply," *id.* at 764.

The D.C. Circuit rejected the government's request.  It explained that it had "plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings."  *Id.*  It further stated that "the delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of 'efficient, *prompt*, and full disclosure of information,' and with 'interests of judicial finality and economy.'"  *Id.* (quoting *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823

F.2d 574, 580 (D.C. Cir. 1987)).  And it specifically rejected the government's argument that it

should be permitted to assert *categorical* exemptions (such as the Exemption 7(A) assertion) at a

preliminary stage of the proceedings, then "start back at the beginning" in assessing whether an

additional, more targeted, exemption would apply.  *Id.* at 766.  Accordingly, the D.C. Circuit

rejected the government's request for a remand.  *Id.* at 769.

The *Maydak* rule, however, is not an absolute one.  As the Court of Appeals stated in that

case, the D.C. Circuit has consistently recognized "two exceptions for unusual situations":

> [1] where, from pure human error, the government failed to invoke the correct
> exemption and will have to release information compromising national security or
> sensitive, personal, private information unless the court allows it to make an
> untimely exemption claim; and [2] where a substantial change in the factual
> context of the case or an interim development in the applicable law forces the
> government to invoke an exemption after the original district court proceedings
> have concluded.

*Id.* at 767.  This understanding of the *Maydak* rule was confirmed in *August v. FBI*, 328 F.3d 697

(D.C. Cir. 2003).  In *August*, the government again categorically asserted Exemption 7(A) before

the district court and again sought a remand on appeal to assert additional exemptions.  *See id.* at

698–99.  But because the government argued that its "failure to invoke all applicable exemptions

. . . was the result of a reasonable mistake, rather than an attempt to gain a tactical advantage

over the FOIA requester," and because the government provided "clear evidence that wholesale

disclosure would jeopardize the safety and privacy of third parties," the D.C. Circuit concluded

that the case fell within the first exception to the *Maydak* rule, and granted a remand.  *Id.* at 698.

The FBI's present request clearly does not fall into the second exception to the *Maydak*

rule.  The FBI does not contend that some change in law or fact has required it to reevaluate its

policy with respect to requests for search slips or processing records.  Indeed, it represents that it

changed its policy in May 2015, eight months *before* the Court issued its opinion in this matter,

"after extensive analysis and experience in responding to this new genre of FOIA requests." Dkt. 51-1 at 2 (Fourth Hardy Decl. ¶ 5). The FBI does not point to any "interim development," at least not to one outside its control; it only represents that has developed a new policy that it would like to apply to the plaintiffs' requests.

Instead, the FBI's request must proceed, if at all, under the first of the two exceptions outlined in *Maydak*. Under that exception, an agency can assert a new rationale for withholding records if (1) it "failed to invoke the correct exemption" as a result of "pure human error" and (2) it "will have to release information compromising national security or sensitive, personal, private information unless the court allows it to make an untimely exemption claim." *Maydak*, 218 F.3d at 767. The Court concludes that the FBI cannot satisfy this standard. First, its request to apply its new policy to the plaintiffs' long-pending FOIA requests bears more resemblance to "an attempt to gain a tactical advantage over the FOIA requester" than it does to a simple mistake. *August*, 328 F.3d at 698. The FBI represents that it adopted its new policy in May 2015, after briefing in this case was complete but well before the Court heard oral argument and issued its decision. Dkt. 51-1 at 2 (Hardy Decl. ¶ 5). But the FBI did not inform the Court about the existence of its new policy at any point between May 2015, when the new policy was adopted, and February 26, 2016, when the Court held a status conference to discuss the implementation of its December 2015 opinion. The FBI has not lacked for opportunities to inform the Court or the plaintiffs that it had adopted a new policy regarding search slips. The Court provided the parties with the chance to submit supplemental briefing in this case, which the FBI did on December 4, 2015. *See* Dkt. 43. And at oral argument, the Court explicitly asked the FBI's counsel whether the FBI had considered (or could consider) adopting a narrower policy regarding search slips and processing notes. *See* Dkt. 52 at 30–31 (Hr'g Tr. 30:24–31:22) ("[THE COURT: H]as the FBI

given thought to whether there are narrower ways to address this? . . . [COUNSEL FOR THE

FBI:] The answer is I don't know whether something else has been contemplated.").  It would be

difficult—perhaps impossible—for the FBI to represent that its failure to advance its new policy

sooner was the result of "pure human error."  *Maydak*, 218 F.3d at 767.

     In light of the FBI's inability to establish that its failure to invoke the new policy in a

timely manner was the result of a simple mistake, the Court will decline to permit it to rely on

that policy at this stage in the proceeding.  *See August*, 328 F.3d at 699 (noting that courts have

been "wary of agency attempts to play cat and mouse by withholding its most powerful cannon

until after the District Court has decided the case" (internal quotation marks omitted)).  Still, in

light of the security and privacy interests implicated by this case, the Court will permit the FBI to

submit briefing on whether specific records sought by the plaintiffs should be withheld under a

FOIA exemption or exclusion because their disclosure would "compromis[e] national security or

sensitive, personal, private information."  *Maydak*, 218 F.3d at 767.  In doing so, the FBI should

explain why the disclosure of specific records (or specific portions of records) would cause harm

cognizable under a FOIA exemption or exclusion—and under *Maydak*—and shall propose a

solution that is tailored to the specific harm identified.  This is not an opportunity for the FBI to

advance its new policy regarding search slips.  The FBI is free to apply that policy to future

FOIA requests (and future FOIA requesters are, in turn, free to challenge it).  But this is not the

forum for such a proceeding.

     Accordingly, the FBI may file a renewed motion for summary judgment, addressing the

records that it believes should be withheld consistent with this Order, according to the schedule

set out below.  If the FBI wishes to proceed by filing an *in camera* brief and/or evidentiary

submissions, it may do so.  In all other aspects, the FBI's request to submit further briefing on

the applicability of its new policy to the records subject to this suit is denied.

**B.      New Exemptions**

The FBI makes a second, related request.  In its original briefing in this matter, it argued

that the relevant documents sought by the plaintiffs were *categorically* exempt from disclosure

on various grounds.  Dkt. 21-1 at 2 (identifying exemptions "at issue in lawsuit").  In particular,

the FBI argued that *all* of the search slips and processing notes sought by the plaintiffs were

lawfully withheld under Exemption 7(E); that *all* of the "case evaluation forms" were lawfully

withheld under Exemptions 2 and 6; and that *all* of the records sought by plaintiffs NSC and

Truthout—as well as all of the records sought in plaintiff Stein's first request—were also

lawfully withheld under Exemptions 5, 6, and 7(C).  *Id.*  By contrast, the FBI asserted

exemptions on a document-by-document basis only as to those records sought in Stein's second

request (No. 1182250-000).  *Id.* at 17–24.  The FBI argued that *some* of these records (or *some*

*parts* of some of these records) were lawfully withheld under Exemptions 5, 6, 7(C), 7(D), and

7(E), as well as the categorical bases it asserted elsewhere in this case.  *Id.*  In its prior opinion,

the Court evaluated and addressed these document-specific arguments.  *See* Dkt. 48 at 51–60.

The FBI now represents that it erred in failing to assert exemptions on a document-by-

document basis with respect to the records sought by the other plaintiffs.  Dkt. 51 at 2.  It states

that, because "the singular issue that cuts across all the counts [wa]s the issue of the categorical

treatment of processing records" under its search-slip policy, it "anticipated that information

contained in all processing records would also be protected under FOIA Exemptions 1, 3, 6,

7(A), 7(C), 7(D), and 7(F) and reserved those exemptions in the event its categorical treatment

was not affirmed."  *Id.*  It points to a footnote in the first declaration submitted by David Hardy,

in which he stated: "Information in the documents responsive to plaintiffs' requests may also be exempt pursuant to FOIA Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and/or 7(F)." Dkt. 21-3 at 25 n.20 (Hardy Decl. ¶ 75 n.20). The FBI now requests that it be permitted to assert the document-specific exemptions that it failed to raise in its motion for summary judgment or in its opposition to the plaintiffs' motion. *See* Dkt. 51 at 2.

The FBI's second request is also inconsistent with *Maydak*. In that case, the government initially asserted only a categorical exemption and, on appeal, requested a remand so that it could apply more targeted exemptions. *See Maydak*, 218 F.3d at 766. The D.C. Circuit rejected that argument, explaining that it would not be unduly burdensome for the government to advance both categorical and targeted exemptions at once. *See id.* It likewise rejected the government's claim that it had adequately preserved the targeted exemptions below. *See id.* at 765 ("We have said explicitly in the past that merely stating that 'for example' an exemption might apply is inadequate to raise a FOIA exemption."). Thus, to the extent that the FBI argues either that it adequately preserved the exemptions that it now seeks to assert or that it would have been too burdensome to do so, *Maydak* disposes of both arguments. As in *Maydak*, the FBI here did not adequately preserve any document-by-document exemptions, stating only that additional records "may be exempt." Dkt. 21-3 at 25 n.20. And, as in *Maydak*, it would not have been burdensome for the FBI to have asserted both categorical and document-by-document exemptions at the same time—indeed, this is precisely what it did in response to Stein's second request. *See* Dkt. 21-1 at 17–24.

Nor does it appear that the FBI's second request could reasonably fit within the first exception set out in *Maydak*. Although it is conceivable that the FBI's failure to assert any document-by-document exemptions with respect to the plaintiffs' requests resulted from "pure

human error," 218 F.3d at 767, that seems unlikely given the FBI's assertion of those same

exemptions in response to Stein's second request.  Furthermore, although *some* of the records the

FBI requests permission to withhold at this stage might implicate the disclosure of "national

security or sensitive, personal, private information," *id.*, it is clear that not all of them will.  Still,

for substantially the same reasons described above, the Court will—in its discretion—permit the

FBI to assert untimely exemptions to the extent that it can show that the disclosure of such

records *will* "compromis[e] national security or sensitive, personal, private information."  *Id.*

The FBI may address any such records in the renewed motion for summary judgment authorized

in the preceding section of this Opinion and Order.  In other respects, the FBI's request to apply

additional exemptions to the records subject to this action is denied.

## C.      Declaratory and Injunctive Relief

         In their initial complaint in this matter, the plaintiffs sought "a declaratory order that FBI

is in violation of its statutory responsibilities under FOIA and an order enjoining FBI pursuant to

that statute from invoking Exemption (b)(7)(E) to withhold information about FOIA searches."

Compl. ¶ 65; *see also* Dkt. 27 at 52–54 (advancing this claim).  In its opinion, the Court reserved

judgment as to the appropriate remedy for the FBI's original policy, Dkt. 48 at 32, and solicited

the parties' views on whether further briefing was appropriate on this question, Dkt. 50 at 2.  The

parties agree that no further briefing is required, but disagree as to why.  The FBI states that "it is

doubtful that declaratory relief is merited" given that it "no longer applies the policy previously

addressed by the Court."  Dkt. 51 at 3.  The plaintiffs argue that "[a] declaratory judgment and

permanent injunction should issue invalidating [the] policy without further briefing."  *Id.* at 8.

         In light of the parties' disagreement as to the necessity of declaratory or injunctive relief

and the limited analysis of the issue set out in their joint report, the Court will direct the parties to

8

submit additional briefing on this question.  The plaintiffs may submit such briefing in a renewed

cross-motion for summary judgment and the FBI may respond in its opposition.  If the plaintiffs

continue to seek either or both of these remedies, they shall (a) address whether a declaratory

judgment is necessary in light of the Court's opinion in this matter; (b) separately address the

propriety of declaratory and injunctive relief under the legal standards appropriate to each of

those remedies; and (c) to the extent they seek injunctive relief, submit evidentiary support

showing that they satisfy the traditional four-factor test for permanent injunctions, *see eBay Inc.*

*v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

### D.    Partial Final Judgment

Because the Court rejected the only exemptions that the FBI asserted to withhold records

responsive to plaintiff Ryan Noah Shapiro's request, Dkt. 48 at 20–42, Shapiro requests that the

Court enter partial final judgment on his claim under Federal Rule of Civil Procedure 54(b).

Dkt. 51 at 8.  The FBI opposes Shapiro's request for the same reasons described above; it intends

to apply its new policy regarding search slips and processing notes to Shapiro's request, and also

to assert additional record-by-record withholdings with respect to the documents Shapiro sought.

Although the Court has denied the FBI's principal requests, because it has granted the FBI an

opportunity to assert additional exemptions for the limited purpose of protecting records that, if

released, would "compromis[e] national security or sensitive, personal, private information,"

*Maydak*, 218 F.3d at 767, it will decline Shapiro's request for entry of final judgment as well.

The Court will enter final judgment with respect to all plaintiffs once it resolves the remaining

issues in this case.

**CONCLUSION**

In light of the foregoing discussion, the Court hereby **ORDERS** that:

(1)  On or before May 10, 2016, the FBI shall produce all responsive records in this case except:

   (a) Those records the Court determined were properly withheld, *see* Dkt. 48 at 58–60;

   (b) Those records about which the Court previously directed further briefing, *see id.* at 46–51, 54–58, 60–62, unless the FBI decides that any of these records should be released notwithstanding the potential applicability of a FOIA exemption; and

   (c) Those records that the FBI believes would, if released, compromise national security or sensitive, personal, private information, *see Maydak*, 218 F.3d at 767.

(2)  On or before May 10, 2016, the FBI shall submit a renewed motion for summary judgment, supplemented by further evidentiary submissions, regarding those records that it intends to withhold consistent with the Court's January 22, 2016 opinion and this Order.

(3)  Plaintiffs may file a renewed cross-motion for summary judgment and opposition to the FBI's renewed motion for summary judgment, limited to the issues described above and the propriety of declaratory and injunctive relief, on or before June 7, 2016.

(4)  The FBI may file a reply in support of its renewed motion for summary judgment and opposition to the plaintiffs' cross-motion for summary judgment on or before July 5, 2016.

(5)  Plaintiffs may file a reply in support of their cross-motion for summary judgment on or before July 19, 2016.

(6)  If the FBI seeks to stay any of the production obligations outlined in this Order, it shall file a motion to that effect on or before April 29, 2016.  Plaintiffs may file an opposition,

and the FBI may file a reply, according to the timeframes set out in Local Civil Rule 7.  *See*

D.D.C. Civ. R. 7(b), (d).

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  April 8, 2016