**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RYAN NOAH SHAPIRO; JEFFREY STEIN;
NATIONAL SECURITY COUNSELORS;
TRUTHOUT,

         *Plaintiffs*,

    v.

U.S. DEPARTMENT OF JUSTICE,

         *Defendant*.

Civil Action No. 13-555 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, to obtain records created by the Federal Bureau of Investigation ("FBI") during the course

of the FBI's processing of other FOIA requests.  In January 2016, the Court issued an opinion

that required the FBI to produce certain records, permitted the FBI to withhold other records, and

solicited supplemental briefing and declarations with respect to yet other records.  *See Shapiro v.*

*U.S. Dep't of Justice* (*Shapiro I*), No. 13-555, 2016 WL 287051 (D.D.C. Jan. 22, 2016).  In April

2016, after seeking the parties' positions on the remaining issues in the case, the Court issued a

second opinion, permitting the FBI to assert certain FOIA exemptions for the first time with

respect to the records it had ordered produced but denying the FBI permission to assert other

exemptions, and directing the FBI to produce the records not affected by the remaining issues in

the case.  *See Shapiro v. U.S. Dep't of Justice* (*Shapiro II*), No. 13-555, 2016 WL 1408080

(D.D.C. Apr. 8, 2016).  The FBI has moved for reconsideration of *Shapiro II*, Dkt. 55, and has

moved for a partial stay of its production obligations pending final judgment, Dkt. 60.

For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part the FBI's motion for reconsideration, and **GRANTS** in part and **DENIES** in part the FBI's motion for a partial stay.

## I. BACKGROUND

The facts and procedural history of this complex FOIA suit are set out in the Court's past opinions, *see Shapiro I*, 2016 WL 287051, at *1–8; *Shapiro II*, 2016 WL 1408080, at *1–4, and the Court will recount them only briefly here.

The plaintiffs are journalists, advocates, and nonprofit organizations who seek the records that the FBI creates during the course of processing FOIA requests.  Between 2010 and 2012, the plaintiffs filed FOIA requests with the FBI to obtain such records, to which the FBI responded in a variety of different ways.  First, citing two categorical policies then in force, the FBI denied all of the plaintiffs' requests for certain kinds of records (called "search slips," "processing notes," and "case evaluation forms") as categorically exempt under FOIA.  Second, the FBI denied *some* of the plaintiffs' requests for records on additional targeted grounds.  It withheld records from plaintiff Truthout on the ground that the deliberative-process privilege protected processing notes responsive to its request.  *Shapiro I*, 2016 WL 287051, at *7.  The FBI withheld records from plaintiffs NSC and Stein on the ground that the records responsive to their requests implicated the privacy interests of third parties.  *Id.* at *20.  And it withheld parts of records from Stein on the ground that various exemptions—Exemptions 5, 6, 7(C), 7(D), and 7(E)—protected those portions of the relevant records.  *Id.* at *22.

In *Shapiro I*, the Court considered both the FBI's categorical policies concerning search slips, processing notes, and case evaluation forms and the more targeted assertions that the FBI had made in response to particular plaintiffs.  The Court concluded first that both of the policies

relied on by the FBI to categorically deny records to the plaintiffs were inconsistent with FOIA. *Id.* at *9–18. With respect to the targeted assertions, the Court concluded that the FBI had acted consistent with FOIA in withholding some of the records it had withheld and sought additional information with respect to the FBI's other withholdings. *Id.* at *18–28. In particular, the Court sought additional briefing and evidentiary submissions with respect to (1) the FBI's assertion of the Exemption 5 attorney work-product privilege in response to Stein's second FOIA request, *id.* at *24–26, and (2) the FBI's assertion of the Exemption 5 deliberative-process privilege in response to Truthout's FOIA request, *id.* at *27–28. The Court asked the FBI to provide, with respect to this latter issue, "factual material that would explain why the . . . processing notes compiled in processing Turthout's request are any more 'predecisional' or 'deliberative'"—and thus shielded by the deliberative-process privilege—"than any other . . . processing notes." *Id.* at *28.

The Court did not enter an order directing the FBI to produce the withheld records at the time it issued its opinion in *Shapiro I*. Instead, at a status conference held on February 26, 2016, the Court asked the parties for their positions on the timeline for briefing the remaining issues in the case. The parties filed a joint status report on March 11, 2016, in which they set out radically different views of the issues remaining in the case. The FBI explained that it had "discontinued" one of the two policies the Court declared unlawful in *Shapiro I*—indeed, that it had terminated the policy some eight months before the Court's decision, in May 2015. Dkt. 51 at 2; Dkt. 51-1 at 3 (Fourth Hardy Decl. ¶ 6). The FBI stated its intention of "submit[ting] further briefing on [its] modified policy" for the Court's review. Dkt. 51 at 3. The FBI also explained that it had "anticipated that information contained in *all* processing records" (including those records that it had previously withheld only on the basis of its defunct policy) "would also be protected under

FOIA Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(F) and reserved those exemptions in the event

its categorical treatment was not affirmed," pointing to a footnote in a declaration attached to its

original motion for summary judgment that purportedly presented these arguments.  Dkt. 51 at 2

(citing Dkt. 21-3 at 25 n.20 (Hardy Decl. ¶ 75 n.20)) (emphasis added).  The FBI also stated its

intention to withhold additional information in these records pursuant to these newly identified

FOIA exemptions.  Dkt. 51 at 2.

On April 8, 2016, the Court issued its opinion in *Shapiro II*.  Relying on the D.C.

Circuit's opinions in *Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000), and

*August v. FBI*, 328 F.3d 697 (D.C. Cir. 2003), it concluded that the FBI had waived (a) its right

to assert its new search-slip policy and (b) its ability to assert additional targeted exemptions by

failing to raise those issues before the Court issued its opinion in the case and failing to provide

sufficient justification for its belated assertions.  *See Shapiro II*, 2016 WL 1408080, at *1–4.

Consistent with *Maydak* and *August*, however, it nonetheless permitted the FBI to assert any

exemptions that, if not entertained, might "compromis[e] national security or sensitive, personal,

private information."  *Maydak*, 218 F.3d at 767.  The Court also directed the FBI to produce any

non-exempt records to the plaintiffs on or before May 10, 2016.  *Shapiro II*, 2016 WL 1408080,

at *5.

The FBI has moved for reconsideration of the Court's decision in *Shapiro II*, arguing that

the cases on which the Court relied—specifically, *Maydak* and *August*—do not apply where the

agency makes an untimely exemption claim in the district court (rather than the court of appeals).

Dkt. 55.  The FBI has also moved for a partial stay of its production obligations, arguing that the

Court should stay any production not implicated by the ongoing briefing (specifically, the "case

evaluation forms" the Court ordered produced in *Shapiro I*) until the Court enters final judgment

in the case.  Dkt. 60.  The plaintiffs oppose both motions.  *See* Dkts. 61, 62.  The Court held oral

argument on these motions on May 19, 2016.

## II.  LEGAL STANDARD

Because the Court has not entered final judgment, the FBI's motion for reconsideration is

governed by Federal Rule of Civil Procedure 54(b), which permits the Court to revisit any order

that adjudicates "fewer than all the claims or rights and liabilities of fewer than all the parties . . .

at any time before" the entry of final judgment.  Fed. R. Civ. P. 54(b).  Rule 54(b) is a "flexible"

rule that "reflect[s] the 'inherent power of the rendering district court to afford such relief from

interlocutory judgments as justice requires.'"  *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)

(quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985)).  But a court

will ordinarily grant a motion for reconsideration under Rule 54(b) only when the movant

demonstrates that there has been "(1) an intervening change in the law; (2) the discovery of new

evidence not previously available; or (3) a clear error in the first order."  *Stewart v. Panetta*, 826

F. Supp. 2d 176, 177 (D.D.C. 2011).

## III.  DISCUSSION

### A.      Motion for Reconsideration

####     1.         Maydak*, *August*, and Forfeiture*

The FBI's primary argument in support of its motion for reconsideration is that the Court

erred in applying the waiver rule announced in *Maydak* and *August* to its belated assertions of the

targeted FOIA exemptions on which it now seeks to rely.  In the FBI's view, *Maydak* and *August*

apply only where the government seeks to assert new FOIA exemptions "on appeal or on remand

following appeal," *see* Dkt. 55-1 at 4 (quoting *Wash. Post Co. v. HHS*, 795 F.2d 205, 208 (D.C.

Cir. 1986)), and, by contrast, where the government seeks to assert new FOIA exemptions in the

district court, the waiver principles applied in *Maydak* and *August* generally do not apply.  In essence, the FBI argues, it should be free to assert additional claims *seriatim* in the district court, as long as it does not act in bad faith and does not assert new exemptions after the district court has entered final judgment.  The Court disagrees.  Both general principles of fairness and efficiency in litigation and principles specific to the context of FOIA litigation counsel against permitting an agency to rely on a belated FOIA exemption absent some showing of good cause.

As a preliminary matter, the Court agrees with both parties that the D.C. Circuit has not explicitly addressed the principles that should govern a district court's consideration of such an untimely assertion—that is, an assertion of a FOIA exemption that is made after the parties have filed comprehensive cross-motions for summary judgment and the district judge has adjudicated those cross-motions.  The parties point to different snippets found in D.C. Circuit opinions in support of their competing views.  The FBI, for its part, points to the D.C. Circuit's admonition that the government must "raise all its claims of exemption in the original proceedings in the district court," *Wash. Post Co. v. HHS*, 795 F.2d 204, 208 (D.C. Cir. 1986), and argues that this language supports its view that an agency is free to raise exemptions at any time before the district court.  The plaintiffs, by contrast, point to other D.C. Circuit cases state that "agencies [may] not make new exemption claims to a district court after the judge has ruled in the other party's favor," *Senate of the Commonwealth of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 580 (D.C. Cir. 1987) (quoting *Holy Spirit Ass'n v. CIA*, 636 F.2d 838, 846 (D.C. Cir. 1980))—cases that arguably support a more rigid rule requiring agencies to assert exemption claims at the outset or forfeit their ability to do so.

More recent cases—principally *Maydak* and *August*, upon which the Court relied in its *Shapiro II* opinion—emphasize a "flexible approach to handling belated invocations of FOIA

exemptions." *See August*, 328 F.3d at 700 (citing *Maydak*, 218 F.3d at 767).  But *Maydak* and

*August*, as the FBI observes, primarily concerned exemptions asserted belatedly at the Court of

Appeals level, not before the district court, and so do not directly control the present case.  The

FBI argues, citing *Sussman v. U.S. Marshals Service*, 494 F.3d 1106 (D.C. Cir. 2007), that the

D.C. Circuit has suggested some *other* set of considerations should apply when the government

advances an untimely argument that a FOIA exemption shields records from suit.  But *Sussman*

is entirely consistent with the "flexible approach" described in *Maydak* and *August*.  In *Sussman*,

a district court granted summary judgment to the government on an issue it had not briefed (and

that the plaintiff therefore had not opposed).  *Sussman*, 494 F.3d at 1111.  When the plaintiff

moved for reconsideration, the government argued that, notwithstanding the court's error, it was

entitled to summary judgment on the merits—an argument that the district court accepted.  *Id.*

On appeal, the plaintiff argued that the government had forfeited the argument by failing to raise

it until its opposition to his motion for reconsideration.  The D.C. Circuit rejected that argument,

stating:

> As for Exemption 7(A), the question is closer.  We have found no case in
> this circuit that definitively confirms or rejects the power of the government to
> avoid waiver by invoking a FOIA exemption for the first time in a motion for—or
> opposition to—reconsideration.  But the logic underlying our cases in this area
> suggests that invocation even at that late stage is proper, at least where the district
> court chooses to entertain the new argument.

*See id.* at 1119 (internal footnote omitted).  Emphasizing the district court's "large measure of

discretion" to entertain reconsideration motions, the D.C. Circuit noted that the district court had

chosen to entertain the exemption on the merits on reconsideration and held, on that basis, that

the government had not forfeited its ability to rely on the exemption.  *Id.*

Thus, while *Sussman* does not *direct* district courts to consider whether the government

has established good cause to assert a belated exemption, its reasoning is consistent with such a

conclusion. And *Sussman* certainly does not stand for the proposition that district courts should entertain such assertions as a matter of course. To the contrary, like *August* and *Maydak*, it emphasizes the "discretion" of the court to decide which late assertions to entertain and for what reason. Following these cases, judges of this Court have—entirely appropriately—reached different conclusions in different cases about whether to entertain the belated assertion of a FOIA exemption. *Compare, e.g.*, *Cuban v. SEC*, 795 F. Supp. 2d 43, 61–63 (D.D.C. 2011) (permitting agency to advance a belated Exemption 3 assertion in light of the pending proceedings and "the importance of protecting information in the [SEC's] suspicious activity reports"), *with Judicial Watch, Inc. v. U.S. Dep't of Energy*, 319 F. Supp. 2d 32, 34 (D.D.C. 2004) (refusing to allow agency to advance a belated Exemption 5 assertion where it "could have raised the . . . [assertion] in [its] motions for summary judgment, but chose not to"), *with Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, No. 11-cv-592, 2016 WL 1276413, at *5 & n.2 (D.D.C. Mar. 30, 2016) (permitting the FBI to advance a belated Exemption 5 assertion, but noting that the FBI had "prevailed on this issue by the skin of its teeth").[1]

In other words, although the D.C. Circuit has not provided any explicit instructions to district courts considering whether to accept an agency's belated assertion of a FOIA exemption, *Maydak*, *August*, and *Sussman* together recognize that a district court retains the discretion to find that such an untimely assertion has been forfeited. Basic principles of fairness, efficiency, and finality, moreover—principles inherent in the rules of civil procedure that apply with extra

---

[1] These are not the only examples. *See also, e.g.*, *Dugan v. U.S. Dep't of Justice*, 82 F. Supp. 3d 485, 501 n.7 (D.D.C. 2015); *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 201 (D.D.C. 2007); *Sciba v. Bd. of Governors of the Fed. Reserve Sys.*, No. 04-cv-1011, 2005 WL 758260, at *1 n.3 (D.D.C. Apr. 1, 2005); *Tax Analysts v. IRS*, 152 F. Supp. 2d 1, 25 (D.D.C. 2001); *Williams v. FBI*, No. 91-cv-1054, 1997 WL 198109, at *2 (D.D.C. Apr. 16, 1997).

force in the context of FOIA litigation—counsel in favor of requiring the government to make some threshold showing of good cause to avoid a finding of forfeiture.  Such a showing need not be an onerous requirement.  The government might in some cases argue that its failure to raise a FOIA exemption earlier was an inadvertent error, or that some intervening change in law or fact excuses it, or that the consequences of not permitting an untimely assertion would be "dire," *August*, 328 F.3d at 700; indeed, the reasoning employed in *August* and *Maydak* supports exactly these arguments.  *See id.*; *Maydak*, 218 at 767.  The government might also argue that the assertion of additional exemptions would not unreasonably delay proceedings, either because the assertion is *de minimis* or because the legal issues are identical to issues already present in the case.

What the government cannot argue is that it is permitted to assert additional FOIA exemptions absent any showing of good cause whatsoever.  That rule would sweep far too broadly.  It would permit the government to extend the scope and duration of FOIA litigation without end, and would frustrate FOIA's "statutory goals [of] efficient, *prompt*, and full disclosure of information."  *See August*, 328 F.3d at 699 (internal quotation marks omitted).  And it would be contrary to the more general principle that, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).  To the extent that the FBI argues that the D.C. Circuit's caselaw permits it to advance a FOIA exemption now that it did not advance previously *absent* a showing of good cause, it is wrong.  And to the extent that the FBI believes that the Court's opinion in *Shapiro II* rests on any rule other than this very basic one—one that requires it to make a showing of good cause before advancing any untimely assertions of FOIA exemptions—this Opinion should clarify that misunderstanding.

2.      *Clarification of* Shapiro II

Nonetheless, in the exercise of its discretion, the Court will revisit and clarify *Shapiro II*

in light of the arguments set out in the FBI's renewed motion for summary judgment, which it

has now filed with the Court.  The Court observes at the outset that, consistent with *Shapiro II*,

the FBI has abandoned its initial argument that it should be permitted to rely upon its modified

search-slip policy at this stage of the action.  *Shapiro II*, 2016 WL 1408080, at *1–3.  Instead,

the FBI explains, it has advanced arguments to protect certain search slips under Exemption 7(E)

that are "specifically tailored to the unique facts and circumstances of this case."  Dkt. 57-3 at 56

(Fifth Hardy Decl. ¶¶ 115–16).  The FBI's motion for reconsideration is thus limited to the

Court's denial of its request for permission "to assert the document-specific exemptions that it

failed to raise in its motion for summary judgment."  *See Shapiro II*, 2016 WL 1408080, at *3.

Moreover, at the hearing on the FBI's motion for reconsideration, the Court understood the

parties to agree that the FBI's reliance on Exemptions 1, 3, 6, 7(C), and 7(D) was appropriate in

light of *Shapiro II*, given that those exemptions concern the national-security and privacy issues

identified by the Court in that opinion.  *Cf. August*, 328 F.3d at 702 (remanding for consideration

of "FOIA Exemptions 7(C), 7(D), and 7(F)").[2]

The present dispute, then, concerns the applicability of *Shapiro II* to the FBI's assertions

of Exemptions 5, 7(A), and 7(E) with respect to documents that are potentially responsive to the

---

[2]  In its motion for reconsideration, the FBI also argues that the Court used language to describe
these considerations that would appear to set a higher bar for protection than is set out in FOIA.
*See* Dkt. 55-1 at 4 n.1.  The Court did not intend to set a higher bar for the protection of records
than is provided for by the statute.  Thus, to the extent the FBI seeks reconsideration on such a
basis, the Court **GRANTS** the motion and clarifies that the FBI need only demonstrate that the
records it seeks to withhold are properly exempt under one of the FOIA exemptions referenced
in this opinion in order to obtain summary judgment with respect to those records.

plaintiffs' requests. The plaintiffs first question whether Exemptions 7(A) and 7(E) qualify as exemptions that protect the kind of national-security interests identified in *August* and *Maydak* and acknowledged as sufficiently weighty in *Shapiro II* to overcome any potential forfeiture by the FBI. These exemptions protect "records . . . compiled for law enforcement purposes" if the records' disclosure "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A) (Exemption 7(A)) or "would disclose techniques and procedures for law enforcement investigations or prosecutions" or "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," *id.* § 552(b)(7)(E) (Exemption 7(E)). The plaintiffs argued at the hearing that these exemptions' connections to national security, or to privacy, are too weak and attenuated to permit the FBI to advance them at this late stage in the proceeding.

The Court disagrees. As the D.C. Circuit has explained, Exemption 7 is founded in part on "a greater congressional concern with the secrecy of documents held by agencies, such as the FBI, principally committed to criminal law enforcement." *Pratt v. Webster*, 673 F.2d 408, 417–18 (D.C. Cir. 1982). Such documents may implicate *both* national security and privacy issues—national security because the enforcement of the federal criminal laws is at times an issue of national security, and privacy because an agency's ability to protect its investigations and its tools of investigation at times implicates the privacy (and, indeed, the safety) of victims, witnesses, and suspects. *Cf. NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 225 (1978) ("In originally enacting Exemption 7, Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations . . . ."). In any event, the FBI has represented that the records at issue here could, if revealed, jeopardize ongoing FBI investigations, *see* Dkt. 57-3 at 46 (Fifth Hardy Decl. ¶ 96),

or tools vital to those investigations, *see id.* at 51–67 (Fifth Hardy Decl. ¶¶ 107–38).  The records thus implicate third-party interests—including public safety and the protection of victims and witnesses—that are potentially as weighty as the interests implicated by the national security and privacy exemptions.  In the Court's view, this similarity warrants providing the same treatment to records of this type as that the courts have previously accorded to records implicating national security and privacy.

By contrast, the Court's prior opinion in *Shapiro II* does *not* permit the FBI to advance Exemption 5 as a new basis for withholding records.  Exemption 5 shields "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *See* 5 U.S.C. § 552(b)(5).  It exempts "those documents, and only those documents, normally privileged in the civil discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  The FBI has withheld records on the basis of three Exemption 5 privileges: the attorney work-product privilege, the attorney-client privilege, and the deliberative-process privilege.  *See* Dkt. 57-1 at 14–19.  None of these privileges implicate the national security or privacy considerations discussed in *Shapiro II*—a position that counsel for the FBI agreed with during the hearing on this motion.

The FBI offers two reasons why the Court should permit it to assert Exemption 5 at this stage of the proceeding.  First, the FBI argues, its failure to assert Exemption 5 previously with respect to portions of the withheld documents was justifiable in light of the strength of its previously-asserted argument that the documents were categorically exempt under Exemption 7(E)—an exemption the Court rejected in *Shapiro I*—as well as the volume of the records that the plaintiffs sought and the "prolific" nature of their FOIA requests.  The Court accords little weight to this justification.  Although there may be times an agency is justified in asserting only

a single categorical exemption (e.g., "All of the records were withheld under Exemption 3") and reserving the use of more targeted exemptions in the event the court rejects that exemption, the FBI provides no reason why it did not clearly inform the Court or the plaintiffs that it intended to do so here. *See Maydak*, 218 F.3d at 765 ("We have said explicitly in the past that merely stating that 'for example' an exemption might apply is inadequate to raise a FOIA exemption."); *cf. Shapiro II*, 2016 WL 1408080, at *3 (rejecting a similar argument). And, although the nature of the FBI's *Vaughn* index in this case makes it difficult to determine precisely how many records were responsive to the plaintiffs' requests, upon initial review it does not appear to the Court that the requests in *this* case were sufficiently voluminous to warrant the kind of tiered processing approach the FBI would prefer.

The FBI's second reason is more persuasive. The FBI argues that the plaintiffs will not be prejudiced by its late assertion of Exemption 5, for several related reasons. For one, the FBI argues, this case is already in its second round of summary-judgment briefing, and it has filed a brief addressing the new exemptions (thus providing the plaintiffs with sufficient notice of the issues it intends to raise). *Cf. Cuban*, 795 F. Supp. 2d at 62 (explaining that "[t]he proceedings in this case are not yet complete" and that "the plaintiff . . . had an opportunity to respond to the defendant's recent invocation"). For another, the FBI points out that several of the privileges it asserts now for the first time with respect to certain plaintiffs' records it asserted in the original proceedings with respect to *other* plaintiffs' records, and thus the Court will have to decide similar—if not identical—legal questions whether it permits the FBI to assert Exemption 5 belatedly or not. Moreover, the FBI argues, several of the privileges it asserts now for the first time affect only a small number of records, and thus are unlikely materially to delay the case even if countenanced. Finally, the FBI's counsel repeatedly stated during oral argument on this

motion that the FBI will assert no *additional* exemptions, even if the Court were to conclude that Exemption 5 does not apply, and thus the FBI could be seen to have committed to ensuring the prompt resolution of this litigation.

On the basis of these reasons, the Court will grant the FBI's motion for reconsideration in part and deny it in part.  Although the Court is not persuaded that the FBI has justified its failure previously to raise the Exemption 5 privileges on which it now seeks to rely—or, more precisely, to raise them with respect to the *specific* records it now seeks to withhold—it agrees that there is good cause to permit the FBI to raise some of those privileges.  Specifically, the Court agrees that the FBI's assertion of the attorney work-product privilege and attorney-client privilege are substantially similar to issues already raised in the renewed motion for summary judgment and impact sufficiently few records that the risk of unduly prolonging this litigation is minimal.  *Cf.* Dkt. 57-3 at 33 nn.35–36, 38 nn.38–39 (Fifth Hardy Decl. ¶¶ 68–69, 79–80 & nn.35–36, 38–39). The Court is also cognizant that the FBI's assertion of these two Exemption 5 privileges impacts ongoing FOIA litigation in this court and in the Northern District of California.  Especially given the sensitivities involved in managing the disclosure of documents relevant to contemporaneous cases "involv[ing] the same . . . parties and equally applicable privileges," *Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009), the Court will permit the FBI to assert these exemptions here.

The Court concludes, however, that the equities are different with respect to the FBI's assertion of the Exemption 5 deliberative-process privilege.  In the initial summary-judgment proceedings, the FBI asserted this privilege only in response to Truthout's request for search slips and processing notes.  *See Shapiro I*, 2016 WL 287051, at *27.  The scope of the FBI's argument, however, was unclear.  As the Court noted, the FBI initially seemed to assert that *all* processing notes were categorically protected by the privilege.  *See id.*; Dkt. 21-1 at 17.  In its

reply brief, however, the FBI narrowed the scope of its argument, explaining that "it does not have 'a policy of categorically denying requests for [processing notes] pursuant to Exemption 5' but rather 'determined that the specific . . . notes responsive to Truthout's FOIA request were privileged deliberative materials.'" *Shapiro*, 2016 WL 287051, at *27.  Because the FBI's basis for that conclusion was not evident from the record, the Court denied both parties' motions for summary judgment and directed further briefing.  *Id.* at *28.

The FBI's renewed summary judgment brief and the Hardy declaration that supports it contain additional information about why the FBI believes that these records are protected by the Exemption 5 deliberative-process privilege.  Dkt. 57 at 16–19; Dkt. 57-3 at 33–37 (Fifth Hardy Decl. ¶¶ 71–77).  But the FBI now also argues that certain records responsive to Shapiro's FOIA requests are protected by the same privilege, and for the exact same reason.  *See id.* (making no distinction between Truthout's requests and Shapiro's).  At the hearing on the FBI's motion, the Court asked the FBI if its position was that *all* substantive material contained in search slips and processing notes is protected by the deliberative-process privilege, and the FBI's counsel stated that it was.  The FBI, in other words, is once more arguing that the deliberative-process privilege attaches to the substance of the search slips as a categorical matter—a position similar, if not identical, to the position that it appeared to abandon in its reply brief before the Court in *Shapiro I.*

The equities with respect to the FBI's assertion of the Exemption 5 deliberative-process privilege are thus materially different than its assertion of the work-product and attorney-client privileges.  First, unlike those assertions, the FBI's assertion of the deliberative-process privilege with respect to Shapiro's records rests on a position that it explicitly waived, not one it merely forfeited.  *See United States v. Olano*, 507 U.S. 725, 733 (1993).  Moreover, to the extent that the

FBI's present argument is *not* a categorical one, but instead turns on a case-by-case application of the deliberative-process privilege to the records it now seeks to withhold, such an argument presents a substantial risk of expanding the scope and duration of the present litigation.  The FBI appears to have asserted the deliberative-process privilege to protect information contained in over 450 pages of records.  Dkt. 57-3 at 37 n.37 (Fifth Hardy Decl. ¶ 37).  Even if half of those records are responsive to Truthout's request, not Shapiro's, permitting the FBI to assert the deliberative-process privilege with respect to even 225 pages of responsive records significantly increases the likelihood that the present litigation will be prolonged.  Especially in light of the possibility that the plaintiffs will contest the applicability of the deliberative-process privilege to these records (and the possibility that the Court will have to examine some or all *in camera*), the Court concludes that the FBI has not established good cause sufficient to overcome its waiver of this exemption with respect to Shapiro's records.

In sum, the Court will grant in part and deny in part the FBI's motion for reconsideration.  The FBI may assert Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E), as well as the Exemption 5 work-product and attorney-client privileges, in its renewed motion for summary judgment.  The FBI may not assert the Exemption 5 deliberative-process privilege with respect to those records that are responsive to Shapiro's request.  As detailed further below, the Court will order the FBI to produce all records that are not protected by any other FOIA exemption to the plaintiffs, but will impose a 60-day stay pending the filing of a notice of appeal.

B.       **Motion for Partial Stay**

The FBI also moves for a stay of certain production obligations pending final judgment. Dkt. 60.[3]  Specifically, it argues that the Court should stay its obligation, imposed in *Shapiro II*, to produce the case evaluation forms that were one subject of the Court's opinion in *Shapiro I*, until "sixty (60) days after the issuance of final judgment," so that it may consider filing—and perhaps file—a notice of appeal.  *Id.* at 1.  The plaintiffs oppose the motion in part.  Dkt. 62 at 3. They "do not oppose, in principle, a stay pending appeal," but oppose a stay pending *final judgment*.  *Id.*  In their view, the FBI should be required promptly to file a notice of appeal, and the Court should condition the issuance of a stay on the FBI's representation that it will seek an expedited briefing schedule in the D.C. Circuit.  *Id.*

The Court agrees that a stay of the FBI's production obligations with respect to the case evaluation forms is appropriate.  A party seeking a stay pending appeal must justify such a stay with reference to four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).  "The first two factors of the traditional standard are the most critical."  *Nken*, 556 U.S. at 434.  Here, the Court begins with the second factor, which favors a stay.  As the parties agree, the FBI will

---

[3]  The Court observes that it initially set a deadline of April 29, 2016, for the FBI to move for a stay of its production obligations, but the FBI did not seek a stay until May 10, 2016.  *Shapiro II*, 2016 WL 1408080, at *5.  The FBI explains that its delay in moving for a stay was the result of attorney miscommunication and asks the Court to excuse it.  Dkt. 58 at 1–3.  Because the delay did not prejudice any party, and the Court sees no basis to conclude that the FBI did not act in good faith, the Court deems the motion timely filed.

face irreparable harm in the absence of a stay, because disclosure would moot its right to appeal the Court's order.  *See People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007); *see also John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1308–09 (1989) (Marshall, J., in chambers).  The third and fourth factors also favor issuance of a stay. The plaintiffs' "interest in receiving the [records] immediately, while significant if [their] interpretation of the FOIA is correct, poses no threat of irreparable harm" to them.  *John Doe Agency*, 488 U.S. at 1309.  And, while the public interest requires the disclosure of records subject to FOIA, the plaintiffs identify no particular urgency—such as hot news—applicable to this case.

The only difficult question is whether the FBI has "made a strong showing that [it] is likely to succeed on the merits."  *Nken*, 556 U.S. at 420.  Before the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), this question would have had little practical import, given the D.C. Circuit's adherence to the rule that, when "the other three factors strongly favor interim relief," a court may "grant a stay if the movant has made a substantial case on the merits," and is not required to conclude "that ultimate success by the movant is a mathematical probability."  *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *see also Cuomo*, 772 F.2d at 974.  After *Winter*, though, some judges on the D.C. Circuit have expressed skepticism about the continuing vitality of this sliding-scale approach, reading *Winter* "at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement'" for obtaining preliminary relief.  *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Davis v. PBGC*, 571 F.3d 1288,

1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).[4]  This would put the government to the

insurmountable burden of demonstrating to the Court that it is "likely" that the Court's decision

would be reversed if subject to appeal.  The Court doubts that the Supreme Court intended to put

a putative appellant to such a burden in order to prevent the district court's order from mooting

the opportunity for appellate review of that order, especially given that the Federal Rules of

Appellate Procedure require an applicant to seek a stay from the district court in the first

instance.  *See* Fed. R. App. P. 8(a)(1).  In any case, in light of the parties' agreement that some

stay is warranted, and the fact that one judge on this Court has reached a different conclusion

with respect to the issue likely to be appealed, *see Stein v. U.S. Dep't of Justice*, 134 F. Supp. 3d

457, 472 (D.D.C. 2015), the Court concludes that there is a substantial question for appeal, and

that in this context, it makes little sense to make the issuance of a stay contingent on the Court's

determination that its own ruling was likely wrong.

     The only question remaining is whether to grant the FBI a stay pending final judgment, as

it has requested, or a more temporary stay, as the plaintiffs have argued is appropriate.  The FBI

contends that a stay pending final judgment "would enable all issues in this action to proceed in a

judicially efficient manner."  Dkt. 60 at 4.  The Court agrees that, where possible, it is better to

wait until final judgment for an appeal in order to provide the Court of Appeals a comprehensive

view of the issues presented by a case.  Here, however, the Court acknowledges that, in light of

the complexity of the litigation—spanning multiple plaintiffs, FOIA requests, and discrete legal

issues—it is not clear when the case will reach final judgment.  Although the FBI has stated that

---

[4]  Other circuits disagree.  *See, e.g.*, *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) (holding that "the sliding scale test . . . remains viable after the Supreme Court's decision in *Winter*"); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (same); *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) (same).

it will not seek to assert additional exemptions in this litigation, it is possible that the Court will not be able to resolve the case conclusively on the record before it, thus necessitating additional evidentiary submissions or even *in camera* review.  In light of the possibility of such delay, and the statutory goals of "efficient, *prompt*, and full disclosure of information," *August*, 328 F.3d at 699, the Court declines to grant a stay pending final judgment.

The Court will, instead, grant the FBI's motion for a partial stay for 60 days.  The FBI's obligation to produce the case evaluation forms remains in effect, but is stayed through and until July 25, 2016.  If the FBI files a notice of appeal by that date, the stay will continue pending the FBI's appeal.  If the FBI does not file a notice of appeal by that date, it shall produce the records to the plaintiffs on or before that date.  The Court will also order the FBI to produce the records to Shapiro that would otherwise only be impacted by the FBI's late assertion of the Exemption 5 deliberative-process privilege, and will stay that obligation for 60 days in order to permit the FBI to consider filing a notice of appeal of that production obligation.  Finally, the Court declines the plaintiffs' request that the stay should be conditioned on the FBI's decision to seek expedited briefing in the D.C. Circuit.  Although the Court is aware of the importance of prompt disclosure under FOIA, the plaintiffs can themselves, if appropriate, seek expedition on appeal.

## CONCLUSION

For the reasons stated above, the Court hereby **ORDERS** that:

(1)      The FBI's motion for reconsideration, Dkt. 55, is hereby **GRANTED** in part and **DENIED** in part.  The FBI may assert Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E), as well as the Exemption 5 work-product and attorney-client privileges in its renewed motion for summary judgment.  The FBI may not assert the Exemption 5 deliberative-process privilege with respect to records responsive to Shapiro's request.

(2)     The FBI's motion for a partial stay, Dkt. 60, is hereby **GRANTED** in part and

**DENIED** in part.  The FBI's obligation to produce the case evaluation forms to the plaintiffs is

hereby stayed through and until July 25, 2016, or, if the FBI files a notice of appeal by that date,

pending appeal.

(3)     If the FBI does not file a notice of appeal by July 25, 2016, it shall produce the

case evaluation forms to the plaintiffs on or before that date.

(4)     The FBI shall produce the records to plaintiff Shapiro that would otherwise only

be impacted by the FBI's late assertion of the Exemption 5 deliberative-process privilege on or

before July 25, 2016.  If the FBI files a notice of appeal as to this specific production obligation,

the order set out in this paragraph is stayed pending appeal.

(5)     The briefing schedule entered on April 8, 2016, remains in place.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 25, 2016