UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RYAN NOAH SHAPIRO,** *et al.*, ) <br> ) <br> Plaintiffs ) <br> ) <br> v. ) <br> ) <br> **U.S. DEPARTMENT OF JUSTICE,** ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 13-0555 (RDM) |

## REPLY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT[1]

Plaintiffs respectfully file this Reply in support of their Cross-Motion for Summary Judgment. For the reasons set forth herein, the Court should grant the Plaintiffs' Cross-Motion for Summary Judgment and order the Federal Bureau of Investigation ("FBI")[2] to immediately process and release the information they continue to improperly withhold under the Freedom of Information Act ("FOIA").

### I.   File Numbers Withheld Only Pursuant to Exemption 7(E)

The Court found it necessary to know whether "the relevant investigations are open, whether they closed in the past few years, or whether they closed decades ago." *Shapiro v. United States DOJ*, 239 F. Supp. 3d 100, 120 (D.D.C. 2017). Although all that remains at issue now are closed

---

[1] To the extent arguments made in this brief are relevant to Defendant's Third Motion for Summary Judgment, Plaintiffs encourage the Court to view them broadly even though they have not filed a formal motion for leave to file a sur-reply. Should the Court feel constrained by that fact, Plaintiffs are ready to file such a motion, and they have only refrained thus far in an attempt to avoid papering the Court further with procedural motions over minor issues.

[2] The FBI is treated as the "Defendant" herein because all of the counts pertain to FBI FOIA requests, even though the Department of Justice remains the proper party Defendant.

investigations, the FBI does not even acknowledge that the Court found it necessary to know "whether [the investigations] closed in the past few years, or whether they closed decades ago." *Id.* Instead the FBI states that "the Court asked the narrow question 'whether the relevant investigations are open [or] closed.'" (Def.'s Opp'n Pls.' Cross Mot. Summ. J. & Reply Pls.' Opp'n Def.'s Mot. Summ. J., Dkt. #104, at 3 (filed Jan. 11, 2018) (alteration in original) [hereinafter FBI's Opp'n].)

The FBI has steadfastly refused to answer the question of when the investigations ended, instead "broadening the relevant question to whether sensitive file and sub file numbers 'would' aid nefarious individuals in finding law enforcement vulnerabilities and thereby circumvention." (*Id.* at 3.) It is not entirely clear what is meant by "broadening" other than refusing to provide the information requested by the Court. At this point, it is crystal clear that the FBI has no intention of ever providing the information the Court has found necessary to evaluate the applicability of Exemption 7(E).

The FBI's refusal speaks volumes. This Court held that it is not enough for the FBI to show "the disclosure of FBI file numbers *can*—in theory—reveal sensitive law enforcement techniques," and that to justify the invocation of Exemption 7(E), the FBI must also show that "disclosure of the file numbers at issue here *would*, in fact, do so." *Shapiro*, 239 F. Supp. 3d. at 118. The FBI's failure to put forth any evidence relating to the closed investigation file numbers at issue here demonstrates that its concerns about revealing law enforcement techniques are entirely hypothetical and not grounded in facts. After multiple opportunities to provide factual support for its claims, the FBI offers no more than its own say-so as justification for applying Exemption 7(E). The FBI's argument is simply that its explanation is valid "[o]n its face" and it should prevail because of the "presumption of good faith[.]" (FBI's Opp'n at 4.) The FBI's

refusal to provide factual support individualized to each case number undermines its claim that its "case-by-case analysis" takes into consideration such factors as "the type or program under which the file number falls, whether the file is pending or closed, the subject or focus of the file, whether a file number has been previously released, and its interrelatedness with other criminal and/or national security investigations." (7th Hardy Decl., Dkt. #74-2, ¶ 19 (filed Sept. 21, 2016).) If the FBI had in fact considered each of these factors, it should be readily able to provide these factual details to Plaintiffs and the Court. At any rate, without the information needed by the Court to evaluate the agency's claims, and in light of the FBI's unwillingness to provide such information, the FBI has failed to meet it burden and disclosure of the file numbers associated with all closed files is required.

Plaintiffs have also set forth "two additional and related reasons" why Exemption 7(E) has not been properly invoked— "disclosure of the file numbers at issue here would not reveal sensitive law enforcement techniques, and disclosure could not reasonably be expected to risk circumvention of the law." (Pls.' Mem. P. & A. Supp. Pls.' Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J., Dkt. #99, at 2 (filed Nov. 28, 2017) [hereinafter Pls.' Mem.].) Specifically, the FBI has failed to answer the "*factual* question [of] whether disclosure of the file numbers would reveal a law enforcement technique that a 'nefarious' person might then exploit to circumvent the law is[.]" *Shapiro*, 239 F. Supp. 3d. at 119 (emphasis added). The FBI provides no response to these arguments.

## II.  Segregability of file numbers

Apparently realizing that its earlier "heat map" theory could not serve as a basis for withholding allegedly sensitive file numbers in their entirety, the FBI does not advance the "heat map" theory in either of its briefs in support of its present motion for summary judgment.

Instead, the FBI now argues "that release of *any* portion of a 'sensitive' and withheld file number risks circumvention of the law." (FBI's Opp'n at 5 (emphasis in original).) Although Plaintiffs pointed out that the FBI has not explained why this is the case, the FBI provides no further explanation, either legal or factual. The FBI does not even clarify what it meant by "exact matter" in describing what a nefarious person could infer from *any* part of the file number.

In its opening brief, the FBI also complained about the resources that would be involved in segregating file numbers. Plaintiffs explained why the FBI's position was factually and legally unjustified. The FBI's latest brief offers no response whatsoever to these points.

### III. File Numbers Associated with Hyram Kitchen Murder

Records previously released to Mr. Shapiro provide detailed information about the Hyram Kitchen murder investigation. (Pls.' Mem., Ex. 2, Dkt. #99-2 (filed Nov. 28, 2017).) Mr. Shapiro argued that in light of these prior disclosures, whatever information that could be gleaned from the withheld file numbers has already been made public. Further, Mr. Shapiro noted that these prior disclosures revealed that the file number associated with the investigation was "100A-LA-87472."

The FBI responds that "the file numbers listed on the *case notes* at issue here are not the same file numbers located in Exhibit 2." (Seidel Decl., Dkt. #104-1, ¶ 5 (filed Jan. 11, 2018) (emphasis added).) However, in addition to case notes, there is also a *search slip* at issue in this case relating to the Hyram Kitchen murder, attached as Ex. 1. The FBI does not make any representations as to whether the file numbers listed on the search slip are the same file numbers located in the previously disclosed memorandum. There is a reasonable factual basis to believe that the search slip contains the file number disclosed to Mr. Shapiro in the memorandum.

4

Specifically, because the search resulted in the FBI locating file 100A-LA-87472, the documentation of that search (the search slip) can be expected to contain the same file number.

Additionally, the FBI does not offer any persuasive rebuttal to Mr. Shapiro's argument that the memorandum already released vitiates any potential justification for withholding the file numbers on either the search slips or the processing notes. The FBI now explains, "[t]he file numbers themselves divulge the FBI's involvement with the case[.]" (Seidel Decl. ¶ 5.) However, the Memorandum produced to Plaintiff regarding the Hyram Kitchen murder already "divulges the FBI's involvement with the case" in far more detail than whatever can be gleaned from a file number. Therefore, the FBI has not met its burden of demonstrating that withholding is appropriate with respect to these file numbers.

### IV. File Number Inconsistencies

The FBI conflates Plaintiffs' argument relating to inconsistent disclosure of file numbers with their argument relating to waiver by prior disclosure of file numbers. With respect to the former, Plaintiffs argued that "the inconsistencies in redacting file numbers are so numerous as so (sic) suggest a general sloppiness in the FBI's overall handling of file numbers."(Pls.' Mem. at 9.) The FBI does not dispute these inconsistencies, but argues that the inconsistencies are "not to be unexpected given the hundreds of thousands of pages of records involved in Plaintiff Shapiro's 58 FOIA requests in this action." (FBI's Opp'n at 6.)  This response misses the point. There will of course be some errors in processing FOIA requests from time to time for a variety of reasons. Plaintiffs are not demanding perfection in the processing of FOIA requests. Rather, Plaintiffs are arguing that at some point, the number of inconsistencies becomes so high that it raises a serious question about the care with which Plaintiffs' FOIA requests are being processed. This Circuit has recognized a "general sloppiness" exception to the "substantial

weight" standard of review for over thirty years. *See*, *e.g.*, *Afshar v. Dep't of State*, 702 F.2d 1125, 1131 (D.C. Cir. 1983) (suggesting that "a general sloppiness in the declassification or review process" is sufficient reason to second-guess an agency's declaration despite the "substantial weight" standard). The FBI fails to grapple with the question of whether that number of inconsistencies has been reached here, instead choosing to argue about an inapposite "prior disclosure" standard and pretend that there *is* no "general sloppiness" exception.[3] The FBI has been given a clear chance to explain why it did not exhibit "general sloppiness," and it has failed to even acknowledge the question, leaving Plaintiffs' arguments on the issue uncontested. *Cf. Stein v. DOJ*, 197 F. Supp. 3d 115, 123 (D.D.C. 2016) (holding that FBI conceded argument about improper fee assessment by insisting on making unrelated fee waiver arguments and "ignor[ing] Plaintiff's argument").

Additionally, the existence of a large number of inconsistencies in redacting file numbers is relevant to Plaintiffs' argument that the determination as to whether a file number is "sensitive" is often arbitrary. The fact that FOIA analysts so frequently reach opposite conclusions as to whether a particular file number is "sensitive" raises doubts about the extent to which there is a consistent definition of "sensitive" that is being applied by the agency. Further, the inconsistencies suggest that the file numbers are not truly "sensitive" because "sensitive" information would not end up so frequently being released.

Finally, while some errors in processing FOIA requests may be inevitable, an agency may not submit a *Vaughn* index that is inaccurate in any way. *Schiller v. NLRB*, 964 F.2d 1205, 1209

---

[3] The FBI's attempt to hide its head in the sand about this exception is made even more remarkable by the fact that Plaintiffs specifically cited one of the most recent cases to discuss the matter, putting the FBI on notice that *this* was the legal argument being made. (Pls.' Mem. at 9 (citing *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 169, 181 (D.D.C. 2013)).)

(D.C. Cir. 1992) ("FOIA litigants are entitled to assume that the agency's *Vaughn* index is accurate in every detail. And so is the court. There is no excuse for submitting a *Vaughn* index that contains errors, even minor ones. We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate.") To the extent that Plaintiffs can show that the FBI has erred in determining that certain file numbers are sensitive, the accuracy of the *Vaughn* index as to other file numbers may reasonably be questioned. One way in which Plaintiffs seek to show that the FBI has erred in determining that certain file numbers are sensitive is by pointing out that the FBI has released those same file numbers before. Separate from any waiver effect that prior disclosure might have, the fact that the FBI has previously deemed a file number to be non-sensitive and releasable renders suspect its present determination that the same number is sensitive and non-releasable.

To be clear, Plaintiffs are not suggesting that inconsistent application of exemptions automatically invalidates the entirety of a declaration. Rather, inconsistent claims of which file numbers are "sensitive" should lead the Court to be circumspect in sanctioning withholdings based on this particular justification.

The inconsistencies in file number withholdings are particularly problematic here because the FBI failed to articulate any facts which support the withholding of particular file numbers or categories of file numbers. When an agency's withholding decisions are inconsistent, it is particularly important for the Court to ensure that the agency has provided articulable facts justifying its withholdings. Here, however, the FBI has refused to provide any facts about any of the file numbers it deems "sensitive." Under such circumstances, the FBI has not met its burden of persuasion, and the Court should grant summary judgment to Plaintiffs.

### V. File Numbers Officially Acknowledged

The FBI has previously released to Mr. Shapiro a large amount of file numbers in connection with his underlying, animal rights-related FOIA requests. Mr. Shapiro created a list of these file numbers which he attached to the Cross-Motion for Summary Judgment. He requested that the numbers in the list he created be compared to the numbers that are redacted in the search slips and case notes. To the extent that the numbers are identical, a prior disclosure has occurred and the file number cannot be properly redacted in the search slips and case notes.

The FBI does not argue that this approach is an improper application of the law. Indeed, it is not entirely clear precisely what the FBI is arguing on this point. (FBI's Opp'n at 6.) As best as can be discerned, the FBI appears to claim that if any file number now being withheld from Plaintiff was previously released to Plaintiff, the Court should disregard the previous release because it was "inadvertent." (*Id.*) There is no factual basis for believing that each of the file numbers released to Mr. Shapiro was inadvertent; the FBI is simply asking the Court to *speculate* that it was. Indeed, it is equally likely that any inadvertence was in withholding the file numbers from Mr. Shapiro, rather than in previously disclosing them. At any rate, an official disclosure constitutes a waiver even if the disclosure was inadvertent. *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 66, 72 n.3 (D.D.C. 2010) ("But through such inadvertence, the Corps has already irretrievably placed the sources' names in the public domain."). The FBI has not met its burden of persuasion on the issue of prior disclosure and accordingly summary judgment should be granted in favor of Plaintiffs. *See Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) ("The ultimate burden of persuasion, to be sure, remains with the government, but a party who asserts that material is publicly available carries the burden of *production* on that issue") (emphasis in original).

## VI.     Non-file number withholdings under Exemption 7(E)-4

According to the FBI, "[i]n Category (b)(7)(E)-4, the FBI protected sensitive case file numbers or sub-files." (5th Hardy Decl., Dkt. #57-3, ¶ 130 (filed May 10, 2016).) At no point has the FBI indicated that Exemption 7(E)-4 is being asserted to withhold anything other than "sensitive case file numbers or sub-files." Accordingly, Plaintiffs reasonably assumed that where the sole exemption associated with a redaction box is 7(E)-4, the only information that was actually under the redaction boxes was "case file numbers or sub-files." Plaintiffs assumed that the columns other than the "file" column were not filled out, as those columns would not contain "sensitive case file numbers or sub-files."

As it turns out, the FBI has been misleading Plaintiffs and the Court throughout this entire case. The FBI made a release on January 8, 2018 which consists of documents re-processed in light of the Court's ruling that the FBI could not properly assert the deliberative process privilege. In a small number of instances, the FBI unredacted not only the "File" column but also the other columns of the form. These other columns are "BB," "ID," "C/P," and a fourth column which is variously "Year," "Year Closed," and "Year Retrieved." (*See* Ex. 2.)[4] The contents of these columns were not blank, but the FBI has never provided any justification for withholding this information. A review of other documents released in the January 8, 2018 production makes clear that the FBI is continuing to intentionally withhold the non-blank contents of these columns in the vast majority of search slips, at times solely under Exemption 7(E)-4. (Ex. 2.) In some documents, the FBI has now drawn separate redaction boxes around these other columns, making clear that its withholdings are intentional. (Ex. 2.)

---

[4] The black redaction boxes on pages 1 and 2 of Exhibit 2 were added by Plaintiffs to protect the privacy of the individual whose name and other identifying information are contained in the search slip.

Similarly, the FBI asserts that it only "applied Category (b)(7)(E)-7 to protect information that could potentially reveal the investigative focus of specific FBI domestic and international terrorism investigations." (5th Hardy Decl. ¶ 132.) At no point has the FBI indicated that Exemption 7(E)-7 is being asserted to withhold anything other than investigation related to "the investigative focus of specific FBI domestic and international terrorism investigations." Yet it has similarly redacted the contents of these other columns in the vast majority of search slips, at times solely under Exemption 7(E)-7. (Ex. 2.)

The FBI has never even explained what these column headers mean. However, after examining the case notes released in this and other cases, Plaintiffs believe that "BB" refers to "blackballing"[5]; "ID" refers to "ident"; "C/P" refers to "Closed/Pending," and the "year" field refers to investigation was closed or the year the file was retrieved by FOIA staff, depending on the version of the form. "Ident" is a term used by the FBI which means that a file or document matches the requested topic (e.g., the John Doe that is the subject of the request is the same John Doe that is mentioned in the file). Closed/Pending is relatively self-explanatory, but at times closed files have a number appended, such as "C4" or "C6." (Ex. 2.) It is unclear to Plaintiffs what the number refers to.

---

[5] The FBI has explained, "'[B]lackball' is a term we typically use to describe a file (not a request) that initially looked responsive but upon review we find it's for a different guy or event. It can also be used to describe a file that we won't process because, i.e., a guy makes a request for his 'FBI file' in 2005 and [we] process it for him. When he makes another request for his 'FBI file' in 2011, we will only process his 'records' but will not process the file that was created to respond to the 2005 FOIA request, which is 190 file series [the classification the FBI uses for files requested on people]." Leopold, J., "Revealed: The FBI's Secretive Practice of 'Blackballing' Files," Truthout (Jan. 17, 2012) (quoting email from RIDS Assistant Section Chief Dennis Argall), *available at* http://www.truth-out.org/news/item/6130:revealed-the-fbis-secretive-practice-of-blackballing-files. For more information on Blackballing, see Exhibit 3.

10

By failing to provide any justification for withholding these categories of information, the FBI has waived its ability to do so, and the Court should order immediate release of the information contained in these columns. If the Court does not find that a waiver has occurred, supplemental briefing will be necessary to address the propriety of these withholdings. On the current record, there is no explanation as to why the information was withheld and therefore Plaintiffs have nothing to respond to.

## VII.   Adequacy of the Search

As the FBI indicates that it is conducting further searches for records responsive to most of Plaintiffs' requests (*see* Seidel Decl. ¶ 11), the Court cannot as a matter of law grant summary judgment to the FBI on the adequacy of those searches. It can, however, grant summary judgment to *Plaintiffs* on the *inadequacy* of those searches, since the FBI has conceded that more searches are necessary. However, to avoid unnecessary argument, Plaintiffs are willing to withdraw their arguments regarding the adequacy of the searches which are being redone.

However, there are two searches that the FBI claims are complete, and those two remain in controversy. Paragraphs 21 and 22 of the Seidel Declaration pertain to the requests from Counts 3 and 4 in which the FBI is conducting additional searches, and so those searches are not yet ripe for adjudication, as noted above. However, the FBI also attempts to justify the searches it conducted for two of the requests in Count 2, although it only does so in passing. The Court should find that, based on the information in the record, the FBI conducted inadequate searches for Request Nos. 1182250-000 and 1182251-000, and grant summary judgment to Plaintiffs accordingly.

Simply put, these searches were both inadequately conducted and inadequately described, and either defect would warrant summary judgment for Plaintiffs. They were inadequately

conducted because, as Mr. Seidel describes, the FBI only searched the FOIA Document Processing System ("FDPS") "using the referenced litigation case captions and/or their respective Civil Action Numbers." (Seidel Decl. ¶ 18.) Each case involved FOIA *requests* which had FOIA *request numbers*, and yet the FBI chose to only search for *case numbers*. Any search for records about a FOIA request, regardless of whether or not it is in litigation, which does not include the FOIA request number is *per se* inadequate. The fact that Mr. Stein did not include these request numbers in his requests is immaterial, as any search of the FDPS using a case number would immediately reveal this lead. An agency may not "ignore what it cannot help but know" when faced with "a lead so apparent that the [agency] cannot in good faith fail to pursue it," even if the lead is not included in the original request. *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996).

The searches were inadequately *described* because of the FBI's blatantly conclusory statement that the Litigation Support Unit ("LSU") was involved in the search, with no explanation. "Additionally, RIDS coordinated with its Litigation Support Unit . . . , which assists the FBI's Office of General Counsel with regard to FOIA litigation, to locate responsive material." (Seidel Decl. ¶ 18.) A simple unadorned statement that an office was "coordinated with," without any explanation of how that coordination proceeded or how—or even *if*—that office searched its own files fails to demonstrate that the agency conducted an adequate search. *See Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (holding agency's affidavit insufficient for summary judgment because affidavit failed to explain how search was conducted and failed to identify search terms used); *Banks v. DOJ*, 538 F. Supp. 2d 228, 238 (D.D.C. 2008) (finding that agency failed to demonstrate adequate search when affidavits lacked specificity and only stated that "responsible person(s)" conducted "thorough and efficient [searches]."); *Friends*

*of Blackwater v. Dep't of the Interior*, 391 F. Supp. 2d 115, 121 (D.D.C. 2005) (finding agency's search to be inadequate where declaration did not describe specific search terms).

Therefore, the Court should grant summary judgment to Plaintiffs on Count 2 with respect to the adequacy of the FBI's searches for responsive records.

### VIII. Additional Minor Matters

There remain a handful of minor matters which Plaintiffs raised in their Motion and the FBI either haphazardly addressed or failed to address at all, which will be treated very briefly before closing this brief.

First, while Plaintiffs demonstrated that the FBI had failed to adequately justify its withholdings pursuant to Exemption 3 (Pls.' Mem. at 6-8), the FBI's sole response was to complain that Plaintiffs did not argue *enough* about it, while still offering no evidence to refute Plaintiffs' claim that "the FBI has 'provided no context' for claiming Exemption 3." (FBI's Opp'n at 2.) Since the FBI bears the burden of showing that information is *exempt*, it has forfeited that argument, and the Court should grant summary judgment to Plaintiffs on all Exemption 3 claims.

Second, the FBI now argues that it was withholding information about *two* lawsuits from Truthout (*id.* at 7), but even accepting that as a given, its claims that the information in question pertained to any litigation strategy in the other case rings hollow if one considers the other case in question. *Leopold v. CIA* was *only* about the FBI's policy of refusing to provide estimated dates of completion for FOIA requests, as the Complaint attached as Ex. 4 shows. Unless the FBI can demonstrate that all of the information redacted because of that case pertained to the FBI's refusal to provide an estimated date of completion, the mere fact that a tiny aspect of the request

13

was *part* of a case in litigation does not mean that the information pertained to "the FBI's litigation strategy and defense." (Seidel Decl. ¶ 6.)

Third, while Plaintiffs demonstrated that the Court previously precluded the FBI from invoking Exemption 7(E) to withhold Truthout records, the FBI fails to respond *at all* to this argument in an admissible manner, stating only that "Plaintiffs also argue that the Court has already denied the application of Exemption 7(E) to Truthout records, but the FBI is still improperly withhold [sic] those records." (FBI's Opp'n at 7.)[6] Therefore, as noted above, the Court should find that the FBI conceded this argument by not responding to it.

Lastly, the Court may not consider any of the segregability arguments made in Paragraph 8 of the Seidel Declaration because they do not appear in any form in the FBI's brief. As a result, the Court should find that the FBI conceded this argument by not responding to it in its brief.[7]

## IX. Conclusion

For the foregoing reasons, Plaintiffs request that their cross- motion for summary judgment be granted.

Respectfully submitted,

---

[6] The following sentence consists solely of a quotation from the Seidel Declaration stating a legal conclusion, which this Court stated in its January 30, 2018 Minute Order it would not consider. Therefore, the Court cannot consider a mere quote of that inadmissible testimony in the FBI's brief, hence Plaintiffs caveat that the FBI failed to respond "in an admissible manner."

[7] However, to correct a patently false statement made by Mr. Seidel, the Court most definitely "rule[d] on the merits of this part of the request." (Seidel Decl. ¶ 8.) The Court explicitly denied summary judgment "relating to the segregability of non-public information contained in the records responsive to the NSCs second FOIA request and Stein's first FOIA request" and allowed the parties to *renew* their motions for summary judgment. *Shapiro*, 239 F. Supp. 3d at 127. The FBI did not renew its motion on this issue, and Plaintiffs did, and then the FBI ignored it except to include a paragraph of inadmissible legal argument in its declaration.

/s/ Jeffrey L. Light
Jeffrey L. Light, Esq.
D.C. Bar #485360
1712 Eye Street, NW
Suite 915
Washington, DC  20006
202-277-6213
Jeffrey@LawOfficeOfJeffreyLight.com

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*
