IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RYAN NOAH SHAPIRO, *et al.*,

     Plaintiffs,

          v.

U.S. DEPARTMENT OF JUSTICE,

     Defendant.

)
)
)
)
)
)  Civ. A. No. 1:13-cv-00555-RDM
)
)
)
)
)

## **TWELFTH OVERALL AND SECOND DECLARATION OF MICHAEL G. SEIDEL**

I, Michael G. Seidel, declare as follows:

(1)     I am currently the Assistant Section Chief ("ASC") of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Winchester, Virginia and, in the absence of RIDS Section Chief, David M. Hardy, I serve as Acting Section Chief for RIDS. I have held this position since June 26, 2016. I joined the FBI in September 2011, and prior to my current position, I was the Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("PA") litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency counsel representing the DEA in FOIA/PA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army

1

Litigation Division where I oversaw FOIA/PA litigation for the U.S. Army. I am an attorney registered in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Acting Section Chief of RIDS, I supervise approximately 245 FBI employees, supported by approximately 75 contractors, who staff a total of twelve (12) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities as Acting Section Chief also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA. The RIDS Section Chief has been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. Accordingly, when serving in the position of the Section Chief, RIDS in the absence of the incumbent, I assume the designated original classification and declassification authority. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to Plaintiffs' requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of

2

the FBI's handling of the 69 FOIA requests at issue in this lawsuit that Plaintiffs submitted to FBIHQ, generally seeking records regarding the processing of 86 FOIA matters/lawsuits.

(4)     This declaration incorporates the previous declarations in this case dated February 4, 2014 (hereinafter "First Hardy Declaration"), May 15, 2014 (hereinafter "Second Hardy Declaration"), May 15, 2014 (hereinafter "Third Hardy Declaration"), March 11, 2016 (hereinafter "Fourth Hardy Declaration"), May 6, 2016 (hereinafter "Fifth Hardy Declaration" and "Sixth Hardy Declaration"), September 20, 2016 (hereinafter "Seventh Hardy Declaration), September 21, 2016 (hereinafter "Eighth Hardy Declaration"), October 19, 2017 (hereinafter "Ninth Hardy Declaration"), January 10, 2018 (hereinafter "First Seidel Declaration"), and December 10, 2018 (hereinafter "Eleventh Hardy Declaration").  This declaration consists of two parts – *Part I* responds to the six issues Plaintiffs posit in their February 8, 2019 Cross-Motion for Summary Judgment (hereinafter "Cross-MSJ"); and *Part II* describes the FBI's actions in response to the five remaining issues in the Court's May 2, 2019 Minute Order ("hereinafter "Minute Order").  Lastly, this declaration will provide the Court and Plaintiffs with a brief explanation of the procedures used to review and process the additional material in *Part II* responsive to Plaintiffs' various FOIA requests, and mainly of the FBI's justification for withholding records in full or in part pursuant to FOIA Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Accordingly, the FBI processed 482 total pages of responsive additional material consisting of 140 pages released in full ("RIF"), 341 pages released in part ("RIP"), and 1 page withheld in full ("WIF") pursuant to the FOIA Exemptions above.

## *PART I* - CROSS-MSJ RESPONSES

### I. FBI FORMS 0-63 (ELSUR)

(5)      Plaintiffs allege that the FBI has inconsistently redacted these types of forms within the universe of documents at issue in this case with FOIA exemptions (b)(5) for the deliberative process privilege and (b)(7)(E) for specific investigative techniques and procedures. Specifically, Plaintiffs utilized examples from Bates pages (FBI-3948 and 3911-3912) to demonstrate how the FBI allegedly did not follow its policy of processing "No Records" cases versus "Non-No Records" cases. First, the Fourth Hardy Declaration described the FBI's modified search slip/FOIPA processing records policy which the FBI relied on in processing the responsive material at issue in this case. Specifically, Bates page FBI-3948 is an FBI Form 0-63 for the subject of "Undersea Railroad" (FBI FOIPA Request Number 1165550) in which the FBI may not have located any ELSUR records, but it did in fact locate records responsive to this request. Indeed, by letter dated October 5, 2011, the FBI advised Plaintiff that it previously produced records responsive to this subject to him in a separate request.[1] Therefore, the FBI properly produced the ELSUR search slip here because the resultant response was a "Non-No Records" response. As for Bates page FBI-3911, the FBI has reviewed this page along with all other "Non-No Records" cases in this litigation and determined that although it inadvertently withheld information on this page, there are no other instances in the production where this occurred.[2] Accordingly, the FBI will reprocess this page and release to Plaintiff. Lastly, the FBI's justification for coded category (b)(7)(E)-3 has been discussed extensively in the Fifth

---

[1] Per Bates Page FBI-3988, this separate request was designated FBI FOIPA Request Number 1153250-000 which is not at issue in this case.

[2] The FBI has subsequently re-reviewed the surrounding pages (FBI-3930 through FBI-3938) reprocessed the material, and released to Plaintiff in its supplemental release dated July 30, 2019.

4

Hardy declaration at ¶¶ 114-129 and holds true still because the FBI cited this category within "No Record" cases here to protect the law enforcement technique or procedure of the use of § 552(c) as a subterfuge to prevent the disclosure of the existence or non-existence of sensitive law enforcement records.[3] The FBI also applied coded category (b)(5)-2 to protect information on these forms specifically in instances where no records were located. The variability of the application of the deliberative process privilege and therefore the withholding of certain seemingly duplicate information does lie in the underlying disposition of the FOIA request at issue. The FBI considered these types of forms as a type of search slip because they are in fact a form used to memorialize the results of a search of the electronic surveillance indices. Therefore, as discussed in the Fifth Hardy Declaration at ¶¶ 72-77, the FBI withheld information pursuant to the deliberative process privilege on these forms for the same reasons.

## II. FBI FORM 4-22

(6)     Plaintiff avers that FBI Form 4-22 s used "to request searches of the Automated Database (ADB), Inactive Index, and Secure Data Information System (SDIC)." *See* Cross-MSJ at ¶ II. In fact, this type of form is actually an obsolete type of search slip that memorializes the *results* of a search for a given subject. Indeed, the "section enumerating any specific file numbers or names to be searched" is actually a listing of all the files located *as a result of* searching the Indices checked in the "Scope of Search" section of the form. *See* Cross-MSJ at ¶ II & Exhibit 4. For example, Exhibit 4 of Plaintiff's Cross-MSJ actually is a listing of all the files the FBI located on October 16, 2009 for Mr. Richard Masato Aoki as a result of the FBI's searches of ACS and its manual indices, not a request for searches.

(7)     As relevant to this case, the FBI processed Bates page FBI-3946 consistent with

---

[3] *See* ¶ 116, Fifth Hardy Declaration.

its approach to more heavily protect search slips and case notes for FOIA requests which resulted in a No Records response. Here, this request (FBI FOIPA Request Number 1121258-000) ultimately resulted in a No Records response to Plaintiff, and the FBI therefore heavily redacted this page pursuant to coded categories (b)(5)-2 and (b)(7)(E)-3 for the same reasons discussed at ¶ 5, *supra*.

## III. CODED CATEGORY (b)(7)(E)-3 - SPECIFIC INVESTIGATIVE TECHNIQUES AND PROCEDURES

(8)     The FBI has carefully reviewed the 17 FOIA requests Plaintiff claims were not true "no records" responses and therefore the FBI should not have applied coded category 7(E)-3. In that review, the FBI compared Plaintiff's original FOIA request with each of the subsequent filings from both parties in this case and determined that for the nine parent cases cited in the Second Shapiro Decl. at ¶ 8 (*see* ECF Docket Number 125-1) it initially had examined the four corners of the request and considered only the response for the initial FOIA request (e.g., the -000) for main file records and not any subsequent re-opened cases (e.g., due to Plaintiff requesting cross-references to be processed). This was because in most cases Plaintiff only requested the search slips and case processing notes for the initial FOIA request and not the re-opened cases and the FBI considered the information it had when it initially gathered the responsive material in the case. Therefore, with the limited exception of FOIA Request Number 1169304 (*see* Seventh Hardy Declaration at ¶ 6), the FBI initially processed the final determination of the initial FOIA request based on the specific request numbers sought in the original FOIA request.

(9)     However, to the extent that Plaintiff appealed such responses and/or submitted information requesting cross-references be searched, the FBI has, in good faith, examined these nine requests and confirmed that the disposition of these cases ultimately resulted in a Non-No

6

Record response to Plaintiff Shapiro.

(10)     Similarly, for the remaining eight cases cited in the Second Shapiro Decl. at ¶ 9, the FBI has determined that four of these cases (1161231, 1167408, 1180362, and 1121258) resulted in true No Record responses and therefore did not require reprocessing.  In the final four cases, however; as discussed *supra*, the FBI has determined the disposition of these cases ultimately resulted in a Non-No Record response to Plaintiff Shapiro.

(11)     Therefore, the FBI has now reprocessed the original responsive material for these 13 requests as well as the additional case notes and search slips for the re-opened cases and for purposes of this declaration has labeled them collectively as "Item 6."  See *Part II* at ¶¶ 16-83, *supra.*

## IV.  CODED CATEGORY (b)(7)(E)-5 - DATABASE INFORMATION AND/OR PRINTOUTS

(12)     Plaintiff avers various issues with the justification for this category.  First, the databases at issue here were developed to house law enforcement information to include FBI file numbers, investigative information and it is also used by FBI personnel to query FBI field offices for information in response to FBI FOIA requests.  Specifically, the FBI used this category to protect this database which acts as a recompilation (and sometimes exact copies) of the types of law enforcement records described above.  Therefore, both the database and the results therein, a) meets the Exemption 7 threshold in that the FBI's gathering of law enforcement information into investigative files and then RIDS recompilation of that information into this database serve as a law enforcement purpose; and b) even if this database may also contain administrative data RIDS uses to manage and organize information to respond to FOIA requests, this does not negate the overall purpose of the database – that is, to house recompiled FBI law enforcement information.  Therefore, the FBI has properly withheld information in this case pursuant to coded

7

category (b)(7)(E)-5.

## V. CODED CATEGORY (b)(7)(E)-7 - INVESTIGATIVE FOCUS OF SPECIFIC INVESTIGATIONS

(13)     Plaintiff again avers that the FBI has not provided any information related to the status of each investigation in terms of whether they were pending, closed and how long ago they may have been closed.  In fact, the Ninth Hardy Declaration (at ¶¶ 11-13) described this process and how the FBI considers how to withhold or release information as to file numbers.  Just as Mr. Hardy described there, a similar analysis was undertaken when the FBI cited coded category (b)(7)(E)-7 in this case; however, the difference lies in that this category applies more broadly to the focus of investigations and not specifically for an FBI file number.  The FBI has protected the focus of specific domestic and/or international interconnected investigations in the universe of responsive material in this case.  Revealing the specific nexus between interconnected investigations would reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal activity, thus allowing criminals to gauge the FBI's strengths and weaknesses across the criminal domain to structure their activities in a manner that avoids detection and disruption by the FBI.  Criminals armed with such knowledge would be aware that their activities had not only been detected in relation to current matters but also in relation to another matter under investigation and thus provide an opportunity for them to change their behaviors to avoid further detection or prosecution.  Therefore, the FBI has properly withheld information pursuant to coded category (b)(7)(E)-7 within the universe of responsive material in this case.

## VI. CODED CATEGORY (b)(7)(E)-12 - COLLECTION AND ANALYSIS OF INFORMATION

(14)     In this category, the FBI initially only protected the manner in which it identifies and vettes information for classification purposes.  Specifically, this information falls under the

purview of Exemption 7(E) for the law enforcement purpose of review of FBI investigative material. When FBI Special Agents are conducting investigations, they make the initial classification determination of that information based on the national security focus of their investigation. When a requester then makes a FOIA request for information within an FBI file, RIDS Classification Unit personnel then conducts their review, research and analysis of the information for classification purposes to determine if any underlying investigative information, file number, or associated case file data may remain classified, must be downgraded to a lower classification level, or be declassified altogether. This collection of information is then memorialized onto specific process forms describing the analysis these Classification Unit personnel undertake. These forms readily meet the Exemption 7 threshold because the information being reviewed for a classification determination was gathered/created as a result of law enforcement investigations and indeed would not exist if the underlying information was not created for a law enforcement purpose initially. Thus, the FBI properly protected these forms used to memorialize this process pursuant to coded category (b)(7)(E)-12.

(15)    Similarly, the FBI has also applied this category to pages of the supplemental release. For this part, the FBI exempted information under this coded category when release of the information could risk circumvention of the law. The FBI protected information about techniques and procedures used by the FBI in conducting Domestic Terrorism investigations into extremist activities, including information that would reveal what types of techniques and procedures are routinely used in such investigations, and non-public details about when, how, and under what circumstances they are used. To describe this information in further detail on the public record would identify the very information that the FBI seeks to protect pursuant to this exemption. Specifically, revealing what techniques and procedures are commonly used in

9

Domestic Terrorism investigations and most importantly how such investigations are interrelated, and the details and circumstances under which they are used, would enable the targets of these techniques to avoid detection or develop countermeasures to circumvent the ability of the FBI and/or law enforcement authorities to effectively use these important law enforcement techniques in future investigations, therefore allowing for circumvention of the law. Thus, the FBI also properly protected this type of information pursuant to coded category (b)(7)(E)-12.

### *PART II* – MINUTE ORDER ISSUES
### And RE-OPENED CASES PROCESSING (ITEM 6)

**I.   Item 1 - 36 FILE NUMBERS**

(16)    The Minute Order specified the FBI to review Plaintiffs' list of purportedly acknowledged file numbers against the "36 file numbers" at issue. The FBI reviewed all previous filings in the case and could not locate any mention of a specific 36 file numbers at issue to this point. During this review, the only applicable mention of the number "36" the FBI could locate was at ¶ 11 of the Ninth Hardy Declaration where the FBI was describing its applicability of coded category (b)(7)(E)-4 without respect to coded category (b)(7)(A). Specifically Mr. Hardy stated in that declaration, "With the facts above in mind, the FBI cited solely FOIA Exemption 7(E)-4 on approximately 36 pages because they were not related to pending investigations, but were nonetheless sensitive." The FBI could not identify any other mention of "36 file numbers" in either its' or Plaintiffs' filings in this case.

(17)    Consequently, the FBI reviewed Plaintiffs' list of file numbers against these pages, conducted additional research on any of these files appearing on these 36 pages or the underlying FOIA requests at issue on these pages to determine if any had been previously disclosed, and determined that some files from Plaintiffs' list could be released as they had been

10

released in the public domain previously. The FBI then re-processed these pages and released them to Plaintiffs with these file numbers released.[4] Similarly, the FBI also utilized the limited file numbers it determined were in the public domain from these 36 pages for its review of remaining file numbers withheld pursuant to FOIA Exemptions 3 and/or 7(E) for item 2.

## II.   Item 2 – FOIA EXEMPTIONS 3 & 7(E) TO PROTECT FILE NUMBERS

(18)   Similarly, the Minute Order advised the FBI to re-examine its withholdings of remaining file numbers under FOIA Exemptions 3 and/or 7(E) to either provide additional justification for these withholdings or to release said file numbers if either of these exemptions were not appropriate. As mentioned *supra,* to minimize duplication of effort and to maximize disclosure, the FBI considered the review of the narrowed list of file numbers for the parameters of Item 1 in conjunction with its review of withholdings for file numbers for Item 2.

(19)   Accordingly, the FBI re-examined all pages where it asserted FOIA Exemptions 3 and/or 7E to redact underlying file numbers. Subsequently, on approximately 120 pages the FBI determined the file number redactions were either publicly released file numbers (from Item 1) and/or that FOIA Exemptions 3/7E were inappropriately applied. The FBI re-processed these pages and released them to Plaintiffs. Nevertheless, this process solidified the continued application of Exemption 3 per an identified nexus to the statutory protection of intelligence sources and methods and/or identified, foreseeable harm to the interests protected by Exemption 7E. As a result, the FBI amplifies its prior justifications for the remaining instances in this case where the FBI has determined that continued Exemption 3/7E redactions for file numbers is

---

[4] The FBI determined that from its review of the original 36 pages and in an effort of good faith, it reviewed the underlying FOIA requests (1169791, 1156661, 1165550, and 1157021). The FBI determined that 31 pages (FBI-491, 493-495, 507, 510, 512, 517-525, 527-530, 604-605, 607, 663-664, 667, 670-673, and 677) needed to be re-processed to release file numbers it determined had now been previously released from Plaintiff's list.

warranted.

## EXEMPTION 3 – NSA OF 1947 50 U.S.C. § 3024(I)(1)

(20)     The FBI previously described where this exemption was cited on its own and where it was cited in conjunction with other applicable FOIA exemptions in the Ninth Hardy Declaration at ¶ 6. The Minute Order affords the FBI the opportunity to provide further detail regarding its withholdings for this exemption, and there are three points which show the connection between the release of these file numbers and the disclosure of intelligence sources and methods.   First, given the very structure of an FBI file number and its component parts, the release of this piece of information alone provides the key to opening the door to FBI intelligence sources and methods.  An FBI file number consists of three parts - a file classification number indicating the investigative/intelligence area the case falls within, an alpha designator for subcategories further describing the investigative focus of the case within the general file classification; a two-letter designation for the Office of Origin (OO) where a case was initiated; and a case number automatically created and assigned sequentially by the FBI's case management system (currently Sentinel).  Some FBI file classifications are created with the functional purpose of compiling records/information pertaining solely to intelligence sources, methods, and activity.  Once a file number with one of these file classifications is opened, the file number itself is linked with an intelligence source, method or activity; the FBI must protect this information as releasing the number itself is inseparable from the intelligence source and method subject matters the file is about.

(21)     Second, the FBI cannot examine these file numbers in isolation but in the broader functional context of usage and linkage to the employment of intelligence sources and methods. Within this broader context, the FBI considers--in integrated fashion--the underlying intelligence

and/or investigative information, its operational function(s), along with the file number itself.   In

other words, the file number is fused with the agencies non-discretionary mandate to protect

intelligence sources and methods because disclosure of the file number would in and of itself

reveal a functional intelligence source and method designation and/or provide a singular,

distinctive pointer to FBI national security tradecraft.

(22)    Third, the protection mandated by 50 U.S.C., § 3024 (i)(1) *(hereinafter* § 3024)

is specifically magnified in this case, as the information is not a mere listing of file numbers;

they are listed in direct association with several subjects.  The mere fact that a file number of a

designated intelligence source and method file classification is connected to a particular subject

reveals operational intelligence source and method activity within the ambit of § 3024 protection.

(23)    Per the expressed language of § 3024, Intelligence Community (IC) agencies,[5]

"shall" protect intelligence sources and methods.  The protection afforded by § 3024 is absolute,

and IC components lack the discretion to release intelligence source and method information

regardless of classification level.   As outlined above, the FBI asserts Exemption 3 with respect

to file numbers because disclosure of the number itself would reveal an FBI intelligence source

or method in three respects.  Even though there is no harm requirement, the FBI cannot ignore

the bona fide operational harm that would be triggered by releasing these sensitive file numbers

as these key indicators could readily be assembled into a mosaic by adversaries.  Disclosure of

an intelligence file number in the aggregate of other information gleaned from disparate

information sources will enable criminals, adversaries, and/or foreign intelligence services

("FIS") to attribute any information released to a type of investigation and/or intelligence

gathering method utilized.  An adversary could then identify the specific intelligence activities

---

[5] The FBI is one of the 17 federal agencies comprising the Intelligence Community affording the FBI the authority to withhold exempted material pursuant to the NSA of 1947.  50 U.S.C., § 3003 (4)(H).

applying a mosaic by assembling missing pieces of information.

(24)    Procedurally, the FBI conducted a detailed, segmented analysis for the applicability of Exemption 3 for file numbers in this case.  The FBI examined each instance it cited Exemption 3 to verify a nexus to foreign intelligence and counterintelligence sources, methods and activities.  Additionally, as described at ¶¶ 16-17, *supra,* the FBI also examined the limited list of file numbers it determined was previously released to ensure none of those files were listed.  As a result, the FBI determined that none of the file numbers which remain exempt per Exemption 3, or in conjunction with Exemption 7(E), was previously disclosed and still warrant protection.  The FBI has determined that release of any of these file numbers would lead to unauthorized release of statutorily-exempt intelligence sources, methods and activities in the underlying cases.  Therefore, the FBI has asserted Exemption 3 and at times in conjunction with Exemption 7(E) to protect file numbers in this case.

## EXEMPTION 7(E) – SENSITIVE FILE NUMBERS

(25)    The FBI released many file numbers in this case and exempted others.  The FBI does not employ a blanket policy of protecting and/or categorically denying all file numbers; there must be a nexus between disclosure of the number itself and harm to interests protected by Exemptions, including a circumvention of law analysis when making disclosure determinations of sensitive file numbers compiled for a law enforcement purpose under Exemption 7E.  This determination is based on several factors including, but not limited to file classifications and functionality (i.e., bank robbery vs. foreign intelligence and source related files), age of the records, status of the investigation documented in a particular file (pending vs. closed), context in which particular file numbers are mentioned, and the interrelation of file numbers to other investigations in terms of investigative scale, scope, and impact on enforcement efforts.

14

(26)     Using the analytical framework described above, the FBI conducted a similarly exhaustive analysis for each file number redacted in this case per Exemption (7)(E) and determined that additional file numbers could be released on the approximately 120 pages mentioned above.   The FBI determined the remainder of the file numbers still warrant Exemption (7)(E) protection.

(27)     The FBI only exempted file numbers in this case when its release posed a risk of circumvention pursuant to Exemption 7(E).   The FBI maintains that exempted file numbers in this case were: 1) Compiled for a Law Enforcement purpose; 2) Disclosure would reveal techniques and procedures; and 3) Disclosure would risk circumvention of the law.

(28)     Release of these file numbers would reveal investigative interest or priority given to a particular investigative matter.   Especially given the core information the release of an FBI file number itself reveals as noted above, disclosure would also provide criminals and adversaries with a tracking mechanism by which they can place particular files/investigations within the context of larger FBI investigative efforts.   Release of sensitive investigative file numbers over time in response to FOIA or other information requests would allow criminals and adversaries to piece together how FBI investigations may be interrelated and when, why, and how the FBI pursued different investigative targets and strategies.   They could then judge where the FBI allocates its limited investigative resources and/or is prioritizing its investigative and or intelligence-gathering efforts regarding particular threat areas; how the FBI responds to different investigative circumstances and national security threats; and what the FBI likely knows about a particular crime or threat, when/how it obtained that knowledge, and if there are knowledge-gaps.   The risk of circumvention is particularly acute in this case, as Plaintiff sought information about multiple subjects within the animal rights extremist genre.   The majority of the underlying

15

requests are subject of an ongoing litigation; *Shapiro v. DOJ, 12-cv-313 (DDC)*.   Release of the file numbers exempted in this case is tantamount to handing Plaintiffs the composite "list" of cases within this genre whereby subjects can connect and/or cross-correlate other investigative pieces of information to map out the investigative landscape.   This, in turn, would equip criminals and adversaries with knowledge to discern information that risks circumvention of the law by allowing them to predict FBI investigative activities; interest in particular locales; and providing an opportunity to alter behaviors to avoid detection, apprehension, or create alibis for suspected activities to mislead or interfere with investigations.   Furthermore, this Court previously determined the FBI demonstrated the release of certain file numbers could provide a birds-eye view of FBI resource allocations which illuminate vulnerabilities and capabilities; thereby creating a bona fide risk of circumvention. (See Memorandum Opinion and Order at Docket Number 92).   Holistically viewed, disclosure of the remaining file numbers withheld 7(E) would provide a birds-eye perspective into FBI investigation efforts in this genre.

(29)    Finally, the FBI maintains the exempted file numbers are not reasonably segregable. Each portion of the file number in this case represents a piece of the puzzle that would create risk of circumvention as described above.   Disclosure of any part of the file numbers exempted within the context of the file undermines the very exemption interests articulated above as it would provide a framework to determine the exact matter prompting the FBI to open an investigation.

## III.    ITEM 3 - NSC AND STEIN RECORDS PROCESSING

(30)    The Minute Order also advised the FBI to segregate and disclose non-exempt portions of the NSC and Stein records previously categorically denied under FOIA Exemptions 6/7(C).  Although the FBI has not withdrawn its claim that the underlying requests in this case

absent a Privacy Waiver constitutes and unwarranted invasion of privacy pursuant to Exemptions 6 and 7(C), the FBI nonetheless examined the underlying case notes and/or search slips available for the requested cases in comparison with publicly filed declarations in the underlying cases and has now processed 232 pages[6] of the resultant material – 215 pages were released in part pursuant to FOIA Exemptions 1, 3, 5, 6, 7C, 7D, 7E and 17 pages were released in full.  For these 232 pages, the FBI utilized the same coded categories previously described in its Fifth (at ¶¶ 31-138) and Eleventh Hardy Declarations (at ¶¶ 16-33).  The FBI will provide a coded category breakdown for its processing of this material later in this declaration.  *See* ¶¶ 30-81, *supra.*

## IV.   ITEM 4 – SIXTH HARDY DECLARATION

(31)   The FBI will resubmit its Sixth Hardy Declaration *in camera ex parte.*

## V.   ITEM 5 – EXEMPTION 5 IN TRUTHOUT COUNT

(32)   The Court's Minute Order advises the FBI to review and/or reprocess the 32 pages the FBI deemed related to the *Leopold* litigation.[7]  The FBI has conducted this review and has released information in part on these pages it deemed did not fall under the purview of the deliberative process privilege as it directly related to the *Leopold* case.

(33)   Specifically, the FBI conducted another segmented analysis for the pages at issue: First, the FBI determined when the complaints were filed for both the *Truthout* and *Leopold* cases; second, the FBI examined these case notes to determine if any notes were entered into the

---

[6] This material consists of the case notes and search slips from the NSC and Stein requests (FOIA Request Numbers 1174832 & 1174507): FBI-4128-FBI-4359.

[7] *Jason Leopold, et al. v. CIA, et al., 12-cv-00245 (DDC)* filed February 14, 2012 related to status requests of FBI FOIA Request Numbers 1164662 and 1173446.  The latter FOIA Request is not at issue in the instant litigation.

underlying FOIA request (1164662) denoting that the case was in litigation and determined this applied on Bates pages FBI-214 to FBI-245; third, the FBI analyzed the actions denoted in each note to determine if they related or were completed in relation to either litigation case. As a result of these efforts, the FBI released additional material, removing Exemption 5. However, as discussed in the First Seidel Declaration at ¶ 6, the FBI already located a case note entry dated February 16, 2012 titled "CASE IN LITIGATION" on Bates page FBI-230. Given that a complaint in the underlying *Truthout* litigation was not filed until October 5, 2012, the FBI determined these notes related to the *Leopold* litigation. Also as evidenced by multiple Bates pages (i.e. FBI-219-220, 226) the Litigation Support Unit (LSU)[8] advised FOIA analysts regarding actions within FOIA 1164662 related to the status of the release in the case. With this additional segmented analysis, the FBI has determined Exemption 5 pursuant to the deliberative process privilege applies only to Bates-stamped pages FBI-215-219, 225-230, 234, 236-237, 239-243 and has re-released these pages with its supplemental release to Plaintiffs. *See* **Exhibit A.**

## VI. ITEM 6 – RE-OPENED CASES PROCESSING

(34)    As discussed *supra*, the FBI has examined its redactions on the 13 requests it initially processed as No Record Cases and imported and processed the case notes and search slips for the re-opened cases for these requests. The FBI determined 250 pages[9] of additional material and previously processed material from the 13 requests (approximately 832 pages) needed to be processed because the underlying FOIA requests were re-opened due to appeal and/or cross-reference processing. For these 250 pages, the FBI utilized the same coded

---

[8] LSU assists the FBI's Office of General Counsel ("OGC") in all FOIA and Privacy Act litigations against or involving the FBI, and LSU employees perform essentially as litigation paralegals.

[9] This additional material consists of the case notes and search slips from the re-opened requests of the original 13 cases: FBI-4360-FBI-4609.

categories previously described in its Fifth (at ¶¶ 31-138) and Eleventh Hardy Declarations (at ¶¶ 16-33) to withhold the material at issue for this item. The FBI will provide a coded category breakdown for its processing of this material later in this declaration. *See* ¶¶ 30-81, *supra.*

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(35)     Here, the FBI will describe its withholdings on the approximately 482 pages of additional material it has processed from Items 3 and 6 noted *supra*.[10] All pages of this material responsive to Plaintiffs' requests were processed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information in the responsive records. No reasonably segregable, nonexempt portions have been withheld from Plaintiff. Further description of the information withheld, beyond what is provided in this declaration could identify the actual exempt information that the FBI has protected. The FBI consecutively numbered the responsive pages "FBI-4128 through FBI-4609" at the bottom of each page. Pages withheld in their entirety (*e.g.*, removed as duplicate to another page) were replaced by a "Deleted Page Information Sheet" ("DPIS"), which identifies the reason relied upon to withhold the page in full, as well as the Bates numbers for the withheld material. RIDS provided the Bates-numbered pages to Plaintiffs' counsel Mr. Light by letter dated July 30, 2019. *(See* **Exhibit A)**; and may be made available to the Court upon request. Accordingly, the FBI asserted FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E) as grounds for non-disclosure of portions of the responsive documents here.

---

[10] The FBI will not address the reprocessed material since this material has already been briefed in previous declarations in this case.

***Explanation of the Coded Format Used to Describe and Justify Withholdings***

(36)    The Bates-numbered documents contain, on their faces, coded categories of exemptions that detail the nature of the information withheld pursuant to the provisions of the FOIA.  The coded categories are provided to aid the Court's and Plaintiff's review of the FBI's explanations of the FOIA exemptions it has asserted to withhold the material.  The coded, Bates-numbered pages together with this declaration demonstrate that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions, or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.

(37)    Each instance of information withheld on the Bates-numbered documents is accompanied by a coded designation that corresponds to the categories listed below.  For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy.  The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Names and/or Identifying Information of FBI Special Agents and  Support Personnel."

### Coded Category Justification Layout

(38)    The FBI utilized the same FOIA exemption categories it has used to process previous responsive material in this case for its processing of the additional material here with only one (1) additional coded category which is specific to this additional material.[11].  Therefore, in those instances where the FBI has previously used the coded category it will only provide citations to previous filings in the case where it provided more substantial justification or give a

---

[11] This additional coded category is: (b)(7)(D)-2.

brief description in addition to the citation.  Additionally, for those instances where the FBI has already briefed an exemption but nonetheless determined additional justification was needed or for the one (1) coded category not previously discussed, the FBI has provided the requisite justification herein.

(39)     Listed below are the categories used to explain the FOIA exemptions asserted to withhold the protected material:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
| --- | --- |
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(1)** | **CLASSIFIED INFORMATION** |
| (b)(1)-1 | Information Properly Classified By an FBI Official Pursuant to E.O. 13526 |
| **Category (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| (b)(3)-1 | 50 U.S.C. § 3024(i)(1) |
| **Category (b)(5)** | **PRIVILEGED INFORMATION** |
| (b)(5) – 1 | Attorney Work Product Privilege |
| (b)(5) – 2 | Deliberative Process Privilege |
| (b)(5) – 3 | Attorney Client Privilege |
| **Category (b)(6) and (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents and  Support Personnel |
| (b)(6)-2 and (b)(7)(C)-2 | Names and/or Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-4 and (b)(7)(C)-4 | Names and/or Identifying Information of Third Parties of Investigative Interest |
| **Category (b)(7)(A)** | **PENDING LAW ENFORCEMENT PROCEEDINGS** |

| (b)(7)(A)-1 | Information Which, if Disclosed, Could Reasonably be Expected to Interfere with Pending Law Enforcement Proceedings |
|---|---|
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE INFORMATION** |
| (b)(7)(D)-2 | Confidential Source Symbol Numbers |
| **Category (b)(7)(E)** | **LAW ENFORCEMENT INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-2 | FBI Internal Non-Public Intranet Web Address |
| (b)(7)(E)-4 | Sensitive File Numbers or Sub-file Names |
| (b)(7)(E)-5 | Database Identifiers / Printouts |
| (b)(7)(E)-7 | Investigative Focus of Specific Investigations |
| (b)(7)(E)-12 | Collection and Analysis of Information |

## EXEMPTION 1 – CLASSIFIED INFORMATION

(40)    Exemption 1 protects records that are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to such Executive Order . . . ." *See* 5 U.S.C. § 552(b)(1). The FBI also relied on Exemptions 3 and 7(E) to protect information in some of these records.

(41)    Before I consider an Exemption (b)(1) claim for withholding agency records, I determine whether the information in those records is information that is currently and properly classified – *i.e.*, satisfies the requirements of Executive Order ("E.O.") 13,526 and complies with the various substantive and procedural criteria of the E.O. The E.O. 13,526 was signed by President Barack Obama on December 29, 2009, and is the Executive Order that currently governs the classification and protection of national security information.[12] I am bound by the requirements of E.O. 13,526 when making classification determinations.

---

[12] E.O. 13,526 § 6.1(cc) defines "National Security" as "the national defense or foreign relations of the United States."

22

(42)    For information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O.

13,526 § 1.1(a):

   (1)    an original classification authority must have classified the information;

   (2)    the information must be owned by, produced by or for, or be under the
          control of the United States Government;

   (3)    the information must fall within one or more of the categories of
          information listed E.O. 13,526 § 1.4; and

   (4)    the original classification authority must determine that the unauthorized
          disclosure of the information reasonably could be expected to result in
          damage to the national security, which includes defense against
          transnational terrorism, and the original classification authority must be
          able to identify or describe the damage

(43)    In addition to these substantive requirements, E.O. 13,526 sets forth certain

procedural and administrative requirements that must be followed before information can be

considered to be properly classified. Those requirements include the following:

   (1)    Each document must be marked as required and stamped with the proper
          classification designation.

   (2)    Each document must be marked to indicate clearly which portions are
          classified and which portions are exempt from declassification as set forth
          in E.O. 13,526 § 1.5(b).

   (3)    The prohibitions and limitations on classification specified in E.O. 13,526
          § 1.7 were adhered to.

   (4)    The declassification policies set forth in E.O. 13,526 §§ 3.1 and 3.3 were
          followed.

   (5)    Any reasonably segregable portion of the classified documents that did not
          meet the standards for classification under E.O. 13,526 were declassified
          and marked for release, unless withholding was otherwise warranted under
          applicable law.

(44)    All information which I determined to be classified is marked at the "Secret"

level, since the unauthorized disclosure of this information reasonably could be expected to

cause serious damage or damage to the national security.

### Findings of the Declarant Regarding Exemption 1

(45)     With the above requirements in mind, I personally and independently examined the information withheld from Plaintiff pursuant to FOIA Exemption 1 and determined that it is currently and properly classified pursuant to E.O. 13,526.

(46)     I determined that this information satisfies the substantive requirements of the Executive Order. Specifically, I determined that the classified information protected by the FBI in this case is owned by, was produced by or for, and is under the control of the U.S. Government, and that it was classified by an original classification authority. I further determined that the classified information protected by the FBI in this case continues to warrant classification at the "Secret" level (as marked on the documents) to protect "intelligence activities (including covert action), intelligence sources or methods, or cryptology" pursuant to E.O. 13,526 § 1.4(c). Finally, I made certain that all procedural requirements of E.O. 13,526 set forth above were followed in order to ensure that the information was properly classified.

### E.O. 13,526 § 1.4(c) – Intelligence Activities, Sources and Methods

(47)     E.O. 13,526 § 1.4(c) authorizes the classification of "intelligence activities (including covert action), intelligence sources or methods, and cryptology," in order to protect classified intelligence sources, methods, and activities utilized by the FBI for gathering intelligence data.

(48)     An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An

24

intelligence activity or method has two characteristics. First, the intelligence activity or method -
- and information generated by it -- is needed by U. S. Intelligence/Counterintelligence agencies
to carry out their missions. Second, confidentiality must be maintained with respect to the
activity or method if the viability, productivity and usefulness of its information is to be
preserved. Information was withheld pursuant to Exemption 1 to protect intelligence methods
utilized by the FBI for gathering intelligence data.

(49)    The classified material here would, if disclosed, reveal actual intelligence
activities and methods used by the FBI against specific targets of foreign counterintelligence
investigations or operations; identify a target of a foreign counterintelligence investigation; or
disclose the intelligence-gathering capabilities of the activities or methods directed at specific
targets. The information obtained from the intelligence activities or methods is very specific in
nature, provided during a specific time period, and known to very few individuals.

(50)    It is my determination that the disclosure of the specific information describing
the intelligence activities or methods withheld in this case, which are still used by the FBI today
to gather intelligence information, could reasonably be expected to cause serious damage to the
national security for the following reasons: (a) disclosure would allow hostile entities to discover
the current intelligence-gathering methods used; (b) disclosure would reveal current specific
targets of FBI's national security investigations; and (c) disclosure would reveal the
determination of criteria used and priorities assigned to current intelligence or
counterintelligence investigations. With the aid of this detailed information, hostile entities could
develop countermeasures that would, in turn, severely disrupt the FBI's intelligence-gathering
capabilities. This severe disruption would also result in severe damage to the FBI's efforts to
detect and apprehend violators of national security and criminal laws of the United States. This

25

information is currently and properly classified at the "Secret" level, in accordance with E.O. 13,526 § 1.4(c), and is exempt from disclosure pursuant to Exemption 1, as well Exemption 3/National Security Act of 1947, 50 U.S.C. § 3024(i)(1), as explained *infra*.

(51)    The FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security: (a) intelligence sources and (b) the character and/or title of a case. Below is a more detailed discussion of each of these categories

### *Intelligence Sources[13]*

(52)    An intelligence source who requires continued classification is an individual who provided or is currently providing information that pertains to national security matters, the disclosure of which could reasonably be expected to result in serious damage to the FBI's intelligence and counterintelligence-gathering capabilities.

(53)    My review determined that the information contained in these documents, which pertains to classified intelligence sources, is likely to identify these sources if released.  The withheld information and material provided by -- or which pertains to -- these sources is specific and, if disclosed, reasonably could be expected to reveal the identities of the contributing sources. I considered a number of factors in reaching this conclusion, including most importantly, the damage to the national security that would result by publicly identifying sources utilized in intelligence investigations, and the FBI's ability to protect and recruit intelligence sources in the future.

(54)    Disclosure of the identities of FBI intelligence sources, regardless of whether they are active or inactive, alive or deceased, can reasonably be expected to cause current and

---

[13] Classified information in this category was withheld in conjunction with Exemption 7(D) on Bates pages:  FBI-4199-FBI-4200.

potential intelligence sources to fear that their identities will be publicly revealed at some point, despite the FBI's express or implied assurances of confidentiality. The disclosure of sources' identities could jeopardize the emotional and physical well-being of the source or the sources' family or associates, and/or subject them to public ridicule and ostracism.

(55)     Thus, the release of information I determined to be source-identifying could reasonably be expected to cause damage to the national security by causing current intelligence sources to cease providing information, and discourage potential intelligence sources from cooperating with the FBI for fear their identities would be publicly revealed at some point. Such a source reaction would eliminate one of the most crucial means of collecting intelligence information and, therefore, severely hamper the FBI's law enforcement efforts to detect and apprehend individuals who seek to damage the national security through violation of the United States criminal and national security laws. The classified information provided by intelligence sources on certain pages is properly classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to Exemption 1.

(56)     The following categories of intelligence source information were withheld: (1) intelligence source symbol numbers; and (2) intelligence source symbol numbers with character of case. Below is a more detailed discussion of each of these categories.

(57)     Intelligence Source Symbol Numbers: The classified information withheld contains numerical designators for intelligence sources. Numerical designators serve as a singular identifier for an intelligence source used to provide information for a specific individual or organization determined to be of national security interest. A singular identifier is any word, term or phrase which could identify an intelligence source, either if released by itself or in the aggregate. This includes code names or sources, numerical designators and file numbers. A

singular identifier is used in lieu of the true identity of a source. The numerical designator is assigned to a specific source and is unique to, and solely used for, this source. The numerical designator is assigned sequentially and is typically prefixed with the particular FBI field office from which the source is operated. The classified symbol numbers withheld relate to sources who provided information of value on individuals and/or organizations of national security interest. The disclosure of this information could permit a hostile analyst to correlate the documents and whatever information that can be gleaned from the documents. By matching source identifiers, such as file numbers and numerical designators, with bits and pieces of other inadvertently released information, one can begin to discern the true identity of the intelligence sources. Public identification of a source will limit the effectiveness of these sources, and also have a significant chilling effect on the FBI's ability to recruit future sources. Similarly, the FBI also cited Exemption 7(D) to protect Confidential Source Symbol Numbers. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to Exemption 1.

(58)   Intelligence Source Symbol Numbers with Character of Case: The classified information contains the character of the case and a numerical designator, which serves as a singular identifier for an intelligence source. The justifications for withholding this information is the same as ¶ 52, *supra*. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to Exemption 1.

## *Character and/or Title of Case*[14]

(59)   The classified information withheld identifies the character and/or title of the case

---

[14] Classified information in this category was withheld on Bates page: FBI-4198.

for a specific type of intelligence activity directed at a specific target of national security interest. Disclosure of the characterization and/or title of the case could reasonably be expected to cause serious damage to the national security, as it would: (a) disclose a particular intelligence or counterintelligence investigation; (b) disclose the nature, scope or thrust of the investigation; and (c) reveal the manner of acquisition of the intelligence or counterintelligence information. This information is properly classified at the "Secret" level pursuant to E.O. 13,526 § 1.4(c) and therefore, is exempt from disclosure pursuant to Exemption 1.

### Defendant's Burden of Establishing Exemption 1 Claims

(60)    The information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense and foreign relations of the United States. This information was not examined in isolation. Instead, each piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States would have upon the information I examined.

(61)    In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause damage or serious damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority and designated that information as classified in the interest of national security at the "Secret" level, and invoked FOIA Exemption 1 to prevent disclosure. The explanations set forth below justifying the FBI's withholding of classified information were prepared with the intent that they be read with consideration given to the context in which the

classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by hostile intelligence entities. It is my judgment that any greater specificity in the descriptions and justifications set forth with respect to information relating to foreign government relations or foreign activities and intelligence sources and methods of the United States could reasonably be expected to jeopardize the national security of the United States.

## EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE

(62)     Exemption 3 exempts information when another federal statute prohibits its disclosure provided that either the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Moreover, if the withholding statute was enacted after October 28, 2009 (the date of enactment of the OPEN FOIA Act of 2009), then it must specifically cite to § 552(b)(3). [15]

## EXEMPTION 5 – PRIVILEGED INFORMATION

(63)     FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as

---

[15] The FBI cited Category (b)(3)-1 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(1) on Bates Pages: FBI-4198-FBI-4200, FBI-4466-FBI-4468, FBI-4484, FBI-4556, FBI-4564, FBI-4566-FBI-4570, and FBI-4583. *See* Fifth Hardy Declaration at ¶¶ 61-64, Seventh Hardy Declaration at ¶ 26, Ninth Hardy Declaration at ¶¶ 5-7, and ¶¶ 18-20, *supra* for further discussions about the FBI's reliance on Exemption 3 to withhold information in this case.

is the case here, the attorney work-product, attorney-client, and deliberative process privileges.
Generally, the attorney work-product privilege protects documents and other memoranda
prepared by or for an attorney in reasonable anticipation of litigation.  Similarly, to invoke the
deliberative process privilege, an agency must show that an allegedly exempt document or
information is both (a) "pre-decisional" – antecedent to the adoption of agency policy; and
agency must also pinpoint agency decision or policy to which document contributed . . . or . . .
identify a decision making process to which a document contributed – and (b) "deliberative" – a
direct part of the deliberative process in that it makes recommendations or express opinions on
legal or policy matters, reflects the give and take of the consultative process, and bears on the
formulation or exercise of agency policy-oriented judgment.  Furthermore, an agency must
identify the role of a contested document in a specific deliberative process.  Lastly, the attorney-
client privilege protects confidential communications between a client seeking legal advice from
a professional legal adviser in his/her capacity as a lawyer and encompasses confidential
communications made to an agency attorney by decision-making personnel as well as lower
echelon employees who possess information relevant to an attorney's advice-rendering function.

(64)    The FBI has relied on Exemption 5 for all three privileges within the additional
material at issue here.  The FBI has previously provided details regarding its invocation of these
privileges in the Fifth Hardy Declaration at ¶¶ 65-82.

*Attorney Work-Product Privilege[16]*

(65)    This privilege protects privileged intra-agency attorney work products.  The

---

[16] The FBI cited category (b)(5)-1 to withhold information pursuant to the attorney work-product
privilege on Bates Pages: FBI-4152-FBI-4153, FBI-4183, FBI-4210-FBI-4212, FBI-4220, FBI-4228,
FBI-4232-FBI-4238, FBI-4241-FBI-4243, FBI-4263-FBI-4265, FBI-4267-FBI-4270, FBI-4273-FBI-
4277, FBI-4279, FBI-4281-FBI-4282, FBI-4288, FBI-4315-FBI-4316, FBI-4331-FBI-4333, and FBI-
4337.

attorney work product privilege protects such tangible and intangible items as interviews, memoranda, correspondence, mental impressions, and personal beliefs prepared or developed by an attorney in anticipation of litigation. Specifically, the FBI asserted this privilege for information and instructions provided by FBI Office of General Counsel ("OGC") counsel to RIDS personnel in anticipation of litigation and there FBI's litigation defense strategy therein. Consider on Bates-stamped page FBI-4263-FBI-4264 where an OGC attorney is providing comments on her review of responsive material in the *Negley* litigation – "Here are my comments on the LAST section for Negley review: (J. Toth Response)." The FBI redacted this agency attorney's correspondence and mental impressions of the FOIA processing at issue for that section and her responses are specifically prepared to place the FBI in a better position in defending the agency in that litigation. Similarly, consider Bates-stamped pages FBI-4331-FBI-4332 where a RIDS LSU analyst is corresponding with San Francisco Field Office personnel and OGC personnel regarding the *Negley* litigation. The FBI released the subject line of the email "FW: Litigation – Negley, James Lutcher [sic] (FOIPA#1133487)" as well as the first line of the email advising the following information is at the direction of an OGC FLU attorney. Consequently the FBI also protected the body of this email pursuant to the deliberative process privilege as well. These markers indicate the clear nexus to anticipation of litigation and discussion at the direction of an attorney.

*Deliberative Process Privilege*[17]

(66)     This privilege protects the internal deliberations of the government by insulating

---

[17] The FBI cited category (b)(5)-2 to withhold information pursuant to the deliberative process privilege on Bates Pages: FBI-4179, FBI-4189, FBI-4220, FBI-4241, FBI-4263-FBI-4265, FBI-4267-FBI-4270, FBI-4273-FBI-4278, FBI-4281-4282, FBI-4285-FBI-4286, FBI-4288-FBI-4290, FBI-4315-FBI-4316, FBI-4331-FBI-4332, FBI-4336-FBI-4337, FBI-4361, FBI-4363-FBI-4365, FBI-4367-FBI-4368, FBI-4500-FBI-4501, FBI-4539, and FBI-4542-FBI-4554.

recommendations, analyses, opinions, and other non-factual information comprising the
decision-making process. In turn, Exemption 5 allows for the withholding of such privileged
material – *i.e.*, material that contains, or was prepared in connection with the formulation of,
opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or
recommendations. The privilege also protects records and information that if disclosed, would
reveal the agency's collection of multitudinous facts, and the sorting, evaluation, and analysis of
those facts in order to make recommendations or reach a final agency decision. The FBI
approached the review of this additional material under the more limiting Deliberative Process
privilege lens dictated by the Court in its March 6, 2017 Order, and therefore the FBI only
redacted information under this privilege where it could discern a clear nexus to a litigation case.
Consider Bates-stamped pages FBI-4331-FBI-4332 noted above, the withheld material is dually
protected with the attorney work-product and deliberative process privilege because the
underlying information not only discusses pre-decisional litigation strategy the FBI planned to
employ in its defense in the *Negley* case but also clearly connects the information to being under
the direction of an OGC FLU attorney and is part of the legal deliberative process of gathering
information to bolster the FBI's defenses in that litigation. Consequently, the information the
FBI protected with this privilege in the additional material is all predecisional because they
consist of preliminary opinions, evaluations and comments of FBI staff pertaining to the
processing of FOIPA requests and FOIPA litigations. The FBI specifically segregated facts from
non-facts in determining how and when to assert the deliberative process privilege at this stage
of the instant action.

(67)     Consider on Bates-stamped page FBI-4285, a note titled "LITIGATION
STATUS" dated 4/23/2012 indicates when the FBI determined the underlying case became part

of a FOIPA litigation clearly indicating that select information is deliberative. Similarly on the

same page, RIDS personnel is documenting the review process for the 3rd Interim Release in the

*Negley* litigation and the FBI released "on 7/20/12, per conversation with ASC REDACTED and

REDACTED…" and further down the page lists the work items to be included with this release.

The review process for FOIPA releases in litigation cases is a deliberative process because prior

to release not only LSU analysts review the material but also RIDS Front Office personnel (i.e.

Assistant Section Chief ("ASC")), and most importantly, OGC attorneys who ultimately approve

or reject exemption recommendations on responsive material based on that attorneys litigation

defense strategy. Although I have only provided a few direct examples of the material protected

pursuant to the deliberative process here, the FBI's analysis for this privilege was similarly

segmented, deliberate, and based on the inherent harm analysis required of the Exemption

pursuant to the FOIA Improvement Act of 2016 and the Court's March 6, 2017 Order limiting

the FBI's assertion of this privilege.

### *Attorney-Client Privilege[18]*

(68)     The FBI protected privileged attorney-client communications. Confidential

communications between the attorneys and their clients are protected because disclosure would

inhibit candor between the clients and their attorneys in relation to the issues about which they

are seeking legal advice. Such candor and full disclosure is necessary in order to ensure that

thorough and sound legal advice is provided. Here, the FBI's analysis is based on direct

communications with OGC attorneys within the additional material here. Consider Bates-

---

[18] The FBI cited category (b)(5)-3 to withhold information pursuant to the attorney-client privilege on Bates Pages: FBI-4154, FBI-4173, FBI-4206, FBI-4263-FBI-4265, FBI-4267-FBI-4270, FBI-4273-FBI-4277, FBI-4280-FBI-4282, FBI-4286-FBI-4287, FBI-4361, FBI-4363-FBI-4365, FBI-4367-FBI-4368, FBI-4500 and FBI-4535.

stamped page FBI-4154 where the FBI protected confidential communications from an OGC

Laboratory Division ("Lab") attorney providing legal advice and instruction to an LSU analyst

regarding the Lab's response to a FOIA case related to the *Marshall* litigation.  The previous

page (FBI-4153) specifically states in an email sent by that LSU analyst that "this case is a civil

FOIA/PA litigation…" and sought specific information from OGC of the Lab Division.  This

indicates that on FBI-4154, the response from OGC is privileged because it provides advice on

next steps and how to interpret and obtain the information sought.  Similarly, on Bates-stamped

page FBI-4206, the FBI protected communication from OGC to an LSU analyst regarding the

application of (b)(5) in the processing in the *Negley* litigation.  As discussed above, on Bates-

stamped pages FBI-4263-FBI-4264, the FBI protected information directly from an OGC

attorney to RIDS personnel in relation to the same *Negley* litigation where the attorney provides

comments on the proposed redactions for a release.  The FBI protected the information in this

instance pursuant to all three privileges and here it qualifies as privileged communications

because that agency attorney is providing candid legal advice on the FBI's litigation strategy in

this case and how RIDS personnel should redact the underlying material to align with that

strategy.

## EXEMPTION 7 THRESHOLD

(69)    Although case notes and search slip records may ostensibly be considered as

"administrative material," they were either guided or were gathered in the FBI's FOIPA

Document Processing System to search for and re-compile the law enforcement purposes

underlying the requested records.  *See* Fifth Hardy Declaration at ¶¶ 83-84 for further description

of the Exemption 7 threshold.

## EXEMPTIONS 6 AND 7(C) – UNWARRANTED INVASIONS OF PERSONAL PRIVACY

(70)    Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption 6. [19, 20, 21]

(71)    Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an

---

[19] The FBI cited categories (b)(6)-1 and (b)(7)(C)-1 to protect the names and identifying information of FBI support personnel on the following Bates Pages: FBI-4128, 4129, 4131, 4132, 4133, 4135, 4136, 4137, 4138, 4140, 4141, 4142, 4145, 4146, 4147, 4148, 4149, 4150, 4151, 4152, 4153, 4154, 4155, 4156, 4157, 4158, 4159, 4160, 4161, 4162, 4163, 4164, 4165, 4166, 4167, 4168, 4169, 4170, 4171, 4173, 4174, 4175, 4176, 4178, 4179, 4180, 4181, 4182, 4183, 4186, 4187, 4188, 4189, 4190, 4191, 4192, 4193, 4194, 4195, 4196, 4197, 4198, 4199, 4200, 4201, 4202, 4203, 4204, 4205, 4206, 4207, 4208, 4209, 4210, 4211, 4212, 4213, 4214, 4215, 4216, 4217, 4218, 4219, 4220, 4221, 4222, 4223, 4224, 4225, 4227, 4228, 4229, 4230, 4231, 4232, 4233, 4234, 4235, 4236, 4237, 4238, 4239, 4240, 4241, 4242, 4243, 4244, 4245, 4246, 4247, 4248, 4249, 4250, 4251, 4252, 4253, 4254, 4255, 4256, 4257, 4258, 4259, 4260, 4261, 4262, 4263, 4264, 4265, 4266, 4267, 4269, 4270, 4271, ,4272, 4273, 4274, 4275, 4276, 4277, 4278, 4279, 4280, 4281, 4282, 4283, 4284, 4285, 4286, 4287, 4288, 4289, 4290, 4291, 4292, 4293, 4294, 4295, 4296, 4297, 4298, 4299, 4300, 4301, 4302, 4303, 4304, 4305, 4306, 4307, 4308, 4309, 4310, 4311, 4312, 4313, 4314, 4315, 4316, 4317, 4318, 4324, 4325, 4326, 4330, 4331, 4332, 4333, 4334, 4335, 4336, 4337, 4338, 4339, 4340, 4341, 4342, 4343, 4344, ,4345 , 4346, 4347, 4348, 4349, 4350, ,4351 ,4352, 4353, 4354, 4355, 4356, 4357, 4358, 4359, 4360, 4361, 4362, 4363, 4364, 4365, 4366, 4367, 4368, 4369, 4370, 4371, 4372, 4393, 4395, 4423, 4449, 4450, 4451, 4452, 4453, 4454, 4455, 4456, 4457, 4458, 4459, 4460, 4461, 4462, 4463, 4464, 4465, 4466, 4467, 4468, 4469, 4470, 4471, 4472, 4473, 4474, 4475, 4476, 4477,  4478, 4479, 4480, 4481, 4482, 4483, 4484, 4485, 4486, 4487, 4488, 4489, 4490, 4491, 4492, 4493, 4494, 4495, 4496, 4497, 4499, 4500, 4501, 4502, 4503, 4504, 4505, 4506, 4508, 4509, 4510, 4511, 4534, 4535, 4536, 4537, 4538, 4539, 4540, 4541, 4542, 4543, 4544, 4545, 4546, 4547, 4548, 4549, 4550, 4551, 4552, 4553, 4554, 4556, 4557, 4559, 4560, 4561, 4562, 4563, 4564, 4565, 4566, 4567, 4568, 4569, 4572, 4582, 4583, 4584, 4585, 4586, 4587, 4588, 4605, 4606, and 4607.

[20] The FBI cited categories (b)(6)-2 and (b)(7)(C)-2 to protect the names and identifying information of third parties merely mentioned on the following Bates Pages: FBI-4131, 4132, 4137, 4146, 4178, 4230, 4236, 4248, 4263, 4304, 4317, 4318, 4320, 4324, 4325, 4339, 4340, 4344, 4358, 4359 and 4492.

[21] The FBI cited categories (b)(6)-4 and (b)(7)(C)-4 to protect the names and identifying information of third parties of investigative interest on the following Bates Pages: FBI-4145, 4158, 4162, 4164, 4169, 4171, 4175, 4189, 4196, 4199, and 4200.

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[22] When withholding

information pursuant to these exemptions, the FBI is required to balance the privacy interests of

the individuals mentioned in these records against any public interest in disclosure. In asserting

this exemption, the FBI has scrutinized each item of information to determine the nature and

strength of the privacy interest of every individual whose name and/or identifying information

appears in the documents at issue. In conducting this analysis, the public interest in disclosure of

this information is determined by whether the information in question would shed light on the

FBI's performance of its mission to protect and defend the United States against terrorist and

foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to

provide leadership and criminal justice services to federal, state, municipal, and international

agencies and partners. In this case, the FBI concluded that the information should be withheld

under Exemptions 6 and 7(C), and determined that the individuals' privacy interests were not

outweighed by any public interest in disclosure.

### EXEMPTION 7(A) – PENDING LAW ENFORCEMENT PROCEEDINGS

(72)    FOIA Exemption 7(A) protects "records or information compiled for law

enforcement purposes [when disclosure] could reasonably be expected to interfere with

enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

(73)    Application of this exemption requires: the existence of law enforcement records;

a pending or prospective law enforcement proceeding; and a determination that release of the

---

[22] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

information could reasonably be expected to interfere with the enforcement proceeding.[23]

## EXEMPTION 7(D) – CONFIDENTIAL SOURCE INFORMATION

(74)     Exemption 7(D) protects "records or information compiled for law enforcement

purposes" when disclosure:

> could reasonably be expected to disclose the identity of a
> confidential source, including a State, local or foreign agency or
> authority or any private institution which furnished information on a
> confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement agency conducting a
> lawful national security intelligence investigation, information
> furnished by a confidential source.  5 U.S.C. § 552(b)(7)(D)

(75)     Exemption 7(D) provides categorical protection for the identities of confidential

sources, as well as the information provided by such sources in a criminal or national security

investigation.  No balancing of interests is required and the public's interest in the information is

not a factor.

(76)     As background, confidential sources report to the FBI on a regular basis in

furtherance of the FBI's criminal law enforcement and national security mission.  Some provide

information under express assurances of confidentiality and are "informants" within the common

meaning of the term.  Others are interviewed and/or provide information under circumstances

from which assurances of confidentiality may be inferred. In either situation, these sources are

considered to be confidential because they furnish information only with the understanding that

their identities and the information they provided will not be divulged outside the FBI.

(77)     Information provided by confidential sources is singular in nature, and if released,

could reveal their identities. The FBI has learned through experience that sources assisting,

cooperating with, and providing information to the FBI must be free to do so without fear of

---

[23] The FBI cited category (b)(7)(A)-1 to protect pending law enforcement information on the following
Bates Pages: FBI-4534, 4537, 4542, 4544, 4545, 4547-4551, and 4553.

reprisal.  The FBI has also learned that sources must be free to furnish information to the FBI

with complete candor and without the understandable tendency to hedge or withhold information

because of fear that their cooperation with the FBI will later be made public.  Sources providing

information to the FBI must be secure in the knowledge that their assistance and their identities

will be held in confidence.  Given this need for confidentiality, the release of a source's identity

would forever eliminate that source as a future means of obtaining information.  In addition,

when the identity of one source is revealed, that revelation has a chilling effect on the activities

and cooperation of other sources.  Such a result would eliminate one of the FBI's most important

means of collecting information and thereby severely hamper law enforcement efforts to detect

and apprehend individuals engaged in the violation of federal criminal laws.

### (b)(7)(D)-2   Confidential Source Symbol Numbers

(78)    In Category (b)(7)(D)-2, the FBI protected from disclosure the permanent source

symbol number of confidential sources of the FBI.  The FBI assigns permanent source symbol

numbers in sequential order to confidential informants who report information to the FBI on a

regular basis pursuant to an express assurance of confidentiality.  In this case, the FBI did not

refer to the confidential source by his or her true name.  Instead, the source was referred to only

by his or her individually assigned permanent source symbol number.  The FBI obtained

information from this confidential source regarding activities of investigative interest in the

investigative files responsive to plaintiff's requests.

(79)    If the FBI disclosed the confidential source symbol number of this informant, his

or her identity could be ascertained by persons knowledgeable of the FBI's investigations of

plaintiff and others.  Furthermore, if the FBI disclosed his or her identity, the informant, as well

as his or her family, could be subjected to embarrassment, humiliation, and/or physical or mental

harm.  Disclosure of a source symbol number at various times and in various documents could identify a confidential FBI source because such disclosure would reveal the connections of the confidential informant to the subject matter of these documents.  Repeated release of the confidential source symbol number along with the information provided by the confidential source would narrow the possibilities of his or her true identity.  This is especially true inasmuch as each confidential source symbol number is assigned to only one confidential informant. Moreover, the disclosure of a confidential informant's identity would have a chilling effect on the activities and cooperation of other FBI confidential informants.  The FBI has found that it is only with the understanding of complete confidentiality that the aid of such informants can be enlisted, and only through this confidence that informants can be persuaded to continue providing valuable assistance in the future.  Accordingly, the FBI properly withheld this information pursuant to FOIA Exemption (b)(7)(D).[24]

### EXEMPTION 7(E) – INVESTIGATIVE TECHNIQUES AND PROCEDURES

(80)   Exemption 7(E) protects records and information compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552 (b)(7)(E). This exemption affords categorical protection to techniques and procedures used in law enforcement investigations.  It protects techniques and procedures that are not well-known to the public as well as non-public details about the use of publicly-known techniques and procedures.

(81)   Exemption 7(E) has been asserted to protect information from these documents,

---

[24] The FBI cited <u>category (b)(7)(D)-2</u> to protect confidential symbol source numbers on the following Bates Pages: FBI-4199-4200.

the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, that could reasonably be expected to risk circumvention of the law. This exemption affords categorical protection to techniques and procedures used in law enforcement investigations; it protects techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures.

### (b)(7)(E)-2      FBI Internal Non-Public Intranet Web Address

(82)    The FBI cited category (b)(7)(E)-2 on only one page – FBI-4488 – to protect an FBI internal non-public intranet web address in the additional material it has processed here. *See* Fifth Hardy Declaration at ¶¶ 112 for the FBI's justification of its use of this exemption category.

### (b)(7)(E)-4      Sensitive File Numbers and Sub-file Names

(83)    The FBI cited category (b)(7)(E)-4 to protect sensitive file numbers and sub-file names as it has previously done in this case. The FBI has presented extensive justifications detailing its use of this category to protect specific file numbers including outlining the FBI's litmus test for determining how file numbers are protected or disclosed. [25] *See* Fifth Hardy Declaration at ¶ 130, Seventh Hardy Declaration at ¶¶ 13-19, Ninth Hardy Declaration at ¶¶ 8-11 and ¶¶ 21-24 *supra* for the FBI's justifications of the use of this exemption category.

### (b)(7)(E)-5      Database Information and/or Printouts

(84)    The FBI cited category (b)(7)(E)-5 to protect database information and/or printouts on only one (1) page (FBI-4560) as it has previously done in this case. The FBI has

---

[25] The FBI cited category (b)(7)(E)-4 to protect sensitive file numbers and sub-file names on the following Bates Pages: FBI-4360, 4456, 4457, 4458, 4459, 4460, 4465, 4466, 4467, 4468, 4470, 4471, 4476, 4477, 4484, 4485, 4487, 4488, 4491, 4492, 4493, 4494, 4495, 4499, 4500, 4501, 4502, 4503, 4507, 4534, 4537, 4540, 4542, 4544, 4545, 4547, 4548, 4549, 4550, 4551, 4553, 4556, 4557, 4558, 4559, 4560, 4562, 4563, 4564, 4565, 4566, 4567, 4568, 4569, 4570, 4583, and 4586.

presented justifications detailing its use of this category to protect database information.  *See* Eleventh Hardy Declaration at ¶ 31 and ¶ 12 *supra* for the FBI's justifications of the use of this exemption category.

**(b)(7)(E)-7    Investigative Focus of Specific Investigations**

(85)    The FBI cited category (b)(7)(E)-7 to protect the investigative focus of specific investigations on only one (1) page (FBI-4127) as it has previously done in this case.  The type of records at issue here (namely the case note and search slip records for select FOIA requests in the instant action) warrant the use of this category because the release of this information would disclose the heat map or areas in which the FBI focused its efforts.  *See* Fifth Hardy Declaration at ¶ 132 and Eleventh Hardy Declaration at ¶ 32 for the FBI's justification of the use of this category.

**(b)(7)(E)-12    Collection and Analysis of Information**

(86)    The FBI cited category (b)(7)(E)-12 to protect the methods that the FBI uses to collect and analyze the information that it obtains for investigative purposes as it has previously done in this case in addition to further types of information.[26]  *See* Eleventh Hardy Declaration at ¶ 33 and ¶ 14 *supra* for the FBI's justification of the use of this category.

**"OUTSIDE THE SCOPE" CITATIONS**

(87)    Because some of the underlying FOIA requests for Plaintiff Shapiro were and still are pending since the time of the litigation, the FBI continued to process and address these requests even while this case has been litigated.  When the FBI gathered the additional responsive material for the re-opened cases (*see* ¶¶ 8-11, *supra*), FDPS is only able to gather all

---

[26] The FBI cited underlined category (b)(7)(E)-12 to protect collection and analysis of information on the following Bates Pages: FBI-4199, 4200, 4466, 4467, 4470, 4471, 4535, 4536, 4539, 4540, and 4542-4554.

case notes for a FOIPA Request and RIDS is unable to print out such notes that only fall within a specified date range. Therefore on the case notes for Plaintiff Shapiro's FOIA Request Numbers[27] 1156519-001, 1173520-001, 1167292-001, 1167308-001, 1171502-001, 1173483-001, and 1173579-001 the FBI determined these notes contained case note entries which fell outside the search cutoff date[28] of this litigation. The FBI utilized this search cutoff date to determine whether or not to cite "outside the scope" on the documents themselves and therefore only withheld non-responsive material as outside the scope when the entry date exceeded the search cutoff date. Due to the limitations of the FDPS, the FBI examined the date each case note was entered and out-scoped portions of information that exceeded that search cut-off date, noting "Outside the Scope" on the select pages themselves. Finally, aside from this very limited usage, the FBI did not "out-scope" on responsiveness grounds within individual records.

## SEGREGABILITY

(88)    As discussed at ¶ 4 *supra,* RIDS identified 482 total pages of additional responsive material consisting of 140 pages RIF, 341 pages RIP, and 1 page WIF.

> A.    Pages RIF.  Following the segregability review, RIDS determined that 140 pages could be released in full without redaction as there was no foreseeable harm to an interest protected by a FOIA exemption.
>
> B.    Pages RIP.  Following the segregability review, RIDS determined that 341 pages could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be

---

[27] The FBI cited this "Outside the Scope" on only eight (8) pages in this additional material – FBI-4455, 4480, 4483, 4498, 4499, 4534, 4582, and 4585.

[28] The FBI determined its search cutoff date to be October 2015 as the date where all responsive material had been located.

segregated for release and material that was withheld as release would trigger

foreseeable harm to one or more interests protected by the cited FOIA exemptions

on these pages.

C.    Pages WIF.  Following the segregability review, RIDS determined that

Bates-stamped Page FBI-4555 was required to be withheld in its entirety because

it was a duplicate to FBI-4547.

## CONCLUSION

(89)    The FBI has provided additional information regarding the six issues Plaintiff

raises in his Cross-MSJ.  Additionally, it has addressed the five remaining issues from the

Court's Minute Order.  The FBI performed adequate and reasonable searches of its CRS and

FDPS systems for the responsive additional material here; processed all such records and

released all reasonably segregable non-exempt information from documents responsive to

Plaintiffs' FOIA requests that are subject to FOIA.  The FBI processed the records under the

access provisions of the FOIA to achieve maximum disclosure.  Information was properly

withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C),

(b)(7)(D), and (b)(7)(E).  The FBI carefully examined the documents and determined that the

information withheld from Plaintiff in this case, if disclosed:  would reveal classified

information; would reveal statutorily protected information; would reveal privileged information;

would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be

expected to constitute an unwarranted invasion of personal privacy; could reasonably be

expected to interfere with pending or prospective enforcement proceedings; could reasonably be

expected to disclose the identities of confidential sources and the information they provided;

and/or would disclose techniques and procedures for law enforcement investigations.  After

44

extensive review of the documents at issue, the FBI has determined that there is no further non-exempt information that can be reasonably segregated and released without revealing statutorily exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and Exhibit A is also true and correct.

Executed this 5th day of September, 2019.

MICHAEL G. SEIDEL
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia