UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **RYAN NOAH SHAPIRO,** *et al.*, | ) ) ) |  |
| Plaintiffs | ) ) |  |
| v. | ) ) | Civil Action No. 13-0555 (RDM) |
| **U.S. DEPARTMENT OF JUSTICE,** | ) ) ) |  |
| Defendant. | ) ) |  |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S NOTICE REGARDING FDPS

Defendant argues that the data in the remaining FDPS tabs are not records because (1) the FDPS system is not static; and (2) the FDPS system does not have a function to export data. Neither of these arguments is persuasive and the FBI should therefore be ordered to disclose non-exempt portions of the data in the remaining FDPS tabs.

**A. Data is not properly excluded from the definition of a "record" simply because it is contained in a dynamic database.**

First, it is not at all clear why the fact that the FDPS system is not a static database affects the analysis of whether the data contained in it constitutes a record. The FBI cites no authority for the proposition that only data in static databases can be deemed agency records, and in fact the FBI produced records from FDPS in this case (*i.e.*, search notes). To the extent that the FBI means that *specific tabs* which contain non-static data are not agency records, this argument fares no better. The parent FOIA requests have long since been closed and therefore the data in the FDPS tabs relating to these FOIA requests is presumably no longer being modified. While the completion of processing of the parent requests may mean that some tabs were empty at the time the FBI located them in response to this FOIA request, the government does not state that the

Workflow History tab, for example, is currently empty or has been empty at any time during this litigation, only that whatever might be in the tab is not a record.

Further, even if the data in these tabs was still being updated in real-time, extraction of data from a dynamic database[1] does not constitute the creation of a new record. Although it does not appear that this precise question has arisen in a published opinion in the FOIA context, in the context of electronic discovery courts have routinely and unanimously rejected the argument that extraction of data from a dynamic database constitutes the creation of a new record. *See e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 116493 (N.D. Cal. Aug. 14, 2013); *Crocs, Inc. v. Effervescent, Inc.*, Civil Action No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 184498 (D. Colo. Feb. 8, 2017); *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2009 U.S. Dist. LEXIS 132817 (N.D. Cal. Oct. 28, 2009); *McGlone v. Centrus Energy Corp.*, No. 2:19-cv-2196, 2020 U.S. Dist. LEXIS 138449 (S.D. Ohio Aug. 4, 2020).

### B. The lack of a built-in export function in a database does not mean that the data contained in the database falls outside the definition of a "record."

As to the government's second argument, that FDPS has no capability to export data, this misses the relevant inquiry about whether the data constitutes a record. Congress's intent, as well as case law, clearly establishes that an agency may be required to write code or programs to extract data from a database and that doing so does not constitute the creation of a new record. *See e.g.*, *Ctr. for Investigative Reporting v. United States DOJ*, 14 F.4th 916 (9th Cir. 2021) ("Congress acknowledged that [c]omputer records found in a database rather than a file cabinet

---

[1] A "dynamic database" is one "where information is create[d] and changed in a 'real time' environment and can not be recreated exactly for specific times/dates." *Citizens for Responsible Open Space v. San Mateo Cty. Local Agency Formation Com.*, 159 Cal. App. 4th 717, 731 n.10 (2008) (alteration in original).

may require the application of codes or some form of programming to retrieve the information, but emphasized that the review of computerized records would not amount to the creation of records") (internal quotation marks omitted, alteration in original); *Long v. CIA*, Case No. 15-cv-1734 (TSC), 2019 U.S. Dist. LEXIS 153618 at *11, 2019 WL 4277362 (D.D.C. Sep. 10, 2019) ("[T]he court is unconvinced by the CIA's argument that writing new computer code to locate responsive records in its database or compiling the resulting records constitute the creation of a new record"); *Am. Small Bus. League v. United States SBA*, Case No. C 08-00829 MHP, 2008 U.S. Dist. LEXIS 65905 at *9, 2008 WL 3977780 (N.D. Cal. Aug. 25, 2008) ("That the SBA may have had to direct GSA to generate computer code to extract and compile the list of small businesses and contract amounts requested by the League is encompassed in the SBA's obligation to 'search' for electronic records.")

At its core, the FBI's position on this matter boils down to an assertion that not all data points contained in agency databases are "records" subject to FOIA, a position precluded by well-established case law and legislative history. Case law has repeatedly emphasized that all data points retained in an electronic database are records. *ACLU Immigrants' Rights Project v. United States Immigration and Customs Enforcement*, 58 F.4th 643, 654 (2nd Cir. 2023) ("The identification of existing datapoints as records disclosable under FOIA finds support in caselaw"); *Institute for Just. v. IRS*, 941 F.3d 567, 570 (D.C. Cir. 2019) ("In the context of a request for a database, FOIA requires agencies to disclose all nonexempt data points") (internal quotation marks omitted); *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 272 (D.D.C. 2012) ("The FOIA requires agencies to disclose all non-exempt data points that it retains in electronic databases"); *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 160 n.28 (D.D.C. 2013) ("[T]he data points that populate a given field of the database—are records under the FOIA"); *Yanofsky*

3

*v. United States DOC*, Case No. 19-cv-2290 (KBJ), 2020 U.S. Dist. LEXIS 185460 at *3, 2020 WL 5944448 (D.D.C. Oct. 6, 2020) ("In the context of data files, this means that an agency must disclose all non-exempt data points that it retains in electronic databases") (internal quotation marks omitted).

As far as legislative history:

"By the end of the Twentieth Century, Congress recognized that 'agency records' were no longer all documented on 'pieces of paper . . . placed in filing cabinets.' H.R. Rep. No. 104-795, at 11 (1996). A growing 'volume of Federal agency records' was being 'created and retained in electronic formats.' *Id.* Accordingly, in 1996, Congress enacted the Electronic Freedom of Information Act Amendments ('E-FOIA'), Pub. L. No. 104-231, 110 Stat. 3048 (1996), which 'codified a principle already established' by federal courts that 'the full disclosure policies of the FOIA' pertain as much to records created or stored electronically as to those documented on paper. *Ctr. for Investigative Reporting*, 14 F.4th 916, 938 (9th Cir. 2021) (quoting *Institute for Just. v. IRS*, 941 F.3d 567, 571, 444 U.S. App. D.C. 256 (2019)); *see* S. Rep. No. 104-272, at 29 (1996) (stating that '[a]s a general rule, information maintained in electronic form should be no less subject to the FOIA than information maintained in conventional paper record form.') Toward this end, E-FOIA describes a disclosable agency 'record' as 'any information that would be an agency record subject to the requirements of [FOIA] when maintained by an agency in any format, including an electronic format.' 5 U.S.C. § 552(f)(2)(A). Thus, E-FOIA makes plain that the threshold 'record' requirement for FOIA, as well as that Act's full-disclosure, narrow-exemption philosophy, applies equally in the electronic and in the physical contexts."

*ACLU Immigrants' Rights Project*, 58 F.4th at 652-53.

The application to this case is clear. Contrary to the FBI's contention, it does not have to maintain a separate copy of screenshots of FDPS tabs for the information contained in those tabs to be subject to FOIA; the information maintained in electronic form at the time of the search[2] *is*

---

[2] The FBI emphasizes how dynamic many of these tabs are, with information listed in a tab one day and removed another, implying that much of the requested information is already gone. However, Plaintiffs are entitled to records that the FBI retained and located *when the search was performed*, as this Court previously held in this case. *Shapiro v. United States DOJ*, 507 F. Supp. 3d 283, 328 (D.D.C. 2020). Plaintiffs are not asking the Court to order the FBI to recreate data which has already been deleted from these tabs; they are only asking it to order FBI to conduct a new search and produce all the information it locates in these tabs in that search. *See Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs.*, 844 F. Supp. 770, 778 (D.D.C. 1993) ("[P]laintiff correctly argues that defendants must release the 'second' Swygert database as it exists today.") If the FBI located information responsive to this FOIA request during a

"a record." *See ACLU Immigrants' Rts. Proj.*, 58 F.4th at 654, citing *Inst. for Just. v. IRS*, 941 F.3d at 570. "[W]ork items that were reviewed, sealed, and ready to be released" (12th Seidel Decl., Dkt. #188-1, ¶ 6 (filed July 19, 2022)) are existing data points, as are all other pieces of information stored in other FDPS tabs at the time of search. This is true regardless of whether the system in which the information is stored possesses a built-in "function to export the information in these remaining tabs as any sort of record for review and release." *Id.*

> As Senator Patrick Leahy, E-FOIA's leading sponsor, stated:
>
> If an agency maintains an electronic information system in such a way that objectively understandable access to any nonexempt information in it is dependent upon a computer program or software that is unavailable to the public, then the agency must upon request, . . . take all reasonable steps to convert the data in order to afford FOIA access to it in a requested electronic form.

S. Rep. No. 104-272, at 32. One need only replace "convert" with "export" to see the prescience of Senator Leahy's remarks and the clear infirmity of the FBI's position.

To be clear, the issue before the Court regarding the FDPS tabs does not involve the "form or format" provision of FOIA, 5 U.S.C. § 552(a)(3)(B). Under that provision, "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." *Id.* Plaintiffs are not requesting that the FDPS tabs be provided in any particular form or format and therefore the "readily reproducible" standard does not apply. Indeed, the fact that an agency must only honor a form or format request if the records are "readily reproducible" in the format suggests that Congress did not mean to impose a "readily reproducible" standard for the issue of whether a record is subject to FOIA *at all*.

---

previous search which it then deleted, that is a question of spoliation which would be discussed later in a different context and is not relevant to *this* controversy.

In any event, while the FBI argues that it cannot be required to produce the data in the form of a screenshot, it does not suggest that there is a less burdensome alternative or that reproducing the data in the form of a screenshot would be burdensome at all, and any such an argument would fail. *See Brown v. Perez*, 835 F.3d 1223, 1238 (10th Cir. 2016) ("[W]hether the agency is required to release printouts of the menu screens of its software program turns on whether those screens are 'readily reproducible' in the requested printed format"); *Cf. Stahl v. DOJ*, No. 19-4142, 2021 WL 1163154, at *7 (E.D.N.Y. Mar. 26, 2021) (observing that if agency could avoid production of responsive video recording by arguing that it would need to acquire video-editing software, "no video would ever be disclosed"). Put another way, if an agency designs or acquires a system which lacks an export function, it cannot then properly claim that the records contained in the database are not subject to FOIA because of the agency's deliberate choice to design or acquire a system which was incompatible with FOIA.

The FBI also cites *Colgan* for the proposition that the agency cannot be required to create a screenshot in response to a FOIA request. *See Colgan v. DOJ*, Civil Action No. 14-cv-740 (TSC), 2020 U.S. Dist. LEXIS 74319, 2020 WL 2043828 (D.D.C. Apr. 28, 2020). *Colgan* is readily distinguishable from the present case. In *Colgan*, the FOIA request itself sought "a screenshot / printout of any computer search screen (meaning a screen from which an individual may input search terms to search one or more system of records) that can be used to search one or more of the following systems of records[.]" *Id.* at *4. This Court in *Colgan* concluded that the FBI did not need to produce screenshots because, "[r]egardless of whether the FBI search screen is an agency record, the search screen is not retained as a record (except, as noted above, if the FBI already took screenshots and retained them)." In this case, the FOIA request is not for a screenshot, but instead encompasses the data in the FDPS tabs, which *is* retained as a record.

6

*Ctr. for Investigative Reporting*, 14 F.4th at 938 ("[U]sing a query to search for and extract a particular arrangement or subset of data *already maintained in an agency's database* does not amount to the creation of a new record") (emphasis added). The use of a screenshot would be simply as a tool to extract the data from the database. *Cf. People for Am. Way Found. v. United States DOJ*, 451 F. Supp. 2d 6, 15 (D.D.C. 2006) ("The FOIA request, as framed by plaintiff, will not employ PACER to generate any new records or documents, or to obtain non-agency records or documents. Instead, PACER's role is contemplated as a means of identifying those pre-existing agency records that are indisputably within defendant's control and are responsive to the narrowed FOIA request – PACER is simply a tool to aid in identifying responsive records from defendant's database of case files.") A screenshot would thus be equivalent to coding or programming to retrieve records, which can be required of an agency under E-FOIA.[3] *See ACLU Immigrants' Rts. Project*, 58 F.4th at 659 ("[W]e are mindful that Congress foresaw the need for an agency to apply 'codes or some form of programming' to retrieve records in a requested electronic format, and expressly stated that the use of such codes or programming would 'not amount to the creation of records.' H.R. Rep. No. 104-795, at 22. That conclusion applies as much to substituted access code numbers—here, Unique IDs in place of exempt A-Numbers—as it does to the application of new computer coding or programming to retrieve responsive records. *Though the tools are different, each functions to retrieve non-exempt records in their existing state* but organized in a particular format") (emphasis added).

---

[3] Since Plaintiffs' request encompasses data within FDPS, the FBI is free to use any tool it chooses to extract the data from FDPS and provide it to Plaintiffs as long as whatever solution it chooses produces an end result that complies with FOIA. Thus, while the FBI objects to the use of screenshots in this litigation, it may find that complying with a court order to produce the data in the FDPS tabs is most conveniently and inexpensively accomplished by capturing the data in screenshots, rather than employing coding or programming.

Another distinction from *Colgan* is that the requested record in *Colgan* was stored temporary while the requested records in this case are stored permanently. In *Colgan*, this Court explained that screenshots were not record because "[w]hile a computer stores data in RAM to display a blank search screen during use of the software, that storage is not permanent." 2020 U.S. Dist. LEXIS 74319 at *31. This Court's explanation was based on the representation by the FBI that "[o]nce a search is complete and the user logs off, the screenshot, either blank or recording the search results, disappears and the image of the screenshots for the search is not stored in any format." *Id.* Here, however, the data in the FDPS is not stored only temporarily and does not disappear when the user logs off. Thus, in contrast to *Colgan*, the requested data would continue to "exist from the last time the agency opened the" FDPS tabs. *Id.*

**C.  *Burka* does not support the FBI's argument that the FDPS tabs are not records.**

The government's argument regarding the application of the *Burka* factors fails because the argument is entirely premised on the nonexistence of responsive records in FDPS. The government's argument is circular: once all the data that the agency deems to be "non-records" is excluded from consideration, the empty tabs are not records. Since the data in the FDPS tabs is data that the FBI chose to create and retain (at least up until the date of the agency's search), there can be no question that this data is an agency record.

Respectfully submitted,

/s/ Jeffrey L. Light
Jeffrey L. Light, Esq.
D.C. Bar #485360
1629 K Street, NW
Suite 300
Washington, DC  20006
202-277-6213
Jeffrey@LawOfficeOfJeffreyLight.com

8

                                       /s/ Kelly B. McClanahan
                                       Kelly B. McClanahan, Esq.
                                       D.C. Bar #984704
                                       National Security Counselors
                                       4702 Levada Terrace
                                       Rockville, MD  20853
                                       301-728-5908
                                       240-681-2189 fax
                                       Kel@NationalSecurityLaw.org

                                       *Counsel for Plaintiffs*