UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RYAN NOAH SHAPIRO, *et al*. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civil Action No. 13-0555 (RDM) |
| v. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF FILING OF SUPPLEMENTAL BRIEF

Department of Justice ("FBI"), by and through the undersigned counsel, respectfully submits this Supplemental Brief in response to the Court's order entered on December 4, 2023. Specifically, the Court "conclude[d] that supplemental briefing on the question of whether the entries in the FDPS constitute 'records' subject to FOIA is appropriate."   *See id*.

For eight years, this case had been about "search slips" and "notes" or, as Plaintiffs referred to them in their Complaint, "administrative processing records."   *See generally* ECF No. 1.   The Court has largely adjudicated the propriety of the processing and withholding related to those records.   As this case was winding down, Plaintiffs pivoted to request records from the "administrative side" of FDPS.   The FBI has already processed and released any records that can be exported or extracted per the normal functions of FDPS.   At issue are the fourteen remaining tabs within FDPS that have not been processed.   In compliance with the Court's October 16, 2023 Order, the FBI created screenshots of 20 sample cases selected by Plaintiffs and filed the sample with the Court.   *See* ECF 204-2.   The Twenty-Seventh Overall and Sixteenth Declaration of Michael G. Seidel and attached exhibit, *see* ECF No. 204 ("16th Seidel Decl.") (incorporating by reference previous Seidel declarations at ECF Nos. 171, 179, 180, 184, 188, 191), and Exhibit A,

Twenty-Eighth Overall and Seventeenth Declaration of Michael G. Seidel ("17th Seidel Decl."), explain the painstaking process by which these screenshots were created. Those prior declarations as well as the FBI's earlier brief on this issue are also incorporated here by reference. *See* ECF No. 191. In order for the FBI to provide Plaintiffs with the information contained in the remaining FDPS tabs, the FBI would need to create new records by taking numerous screenshots of each tab in FDPS. FOIA does not require agencies to create records in response to FOIA requests. Rather, agencies typically search for records that already exist in a system of records or using technology to search and/or sort database information that can be retrieved and produced. In addition to the FBI's position that creating screenshots requires the FBI to create records, the FBI's position is also that the remaining FDPS tabs are not records subject to the FOIA, as it has not, in fact, created or retained the information in such a way that renders it an agency record for the purposes of FOIA. Finally, even if this Court were to determine that the information is a "record," it is not a form or format readily reproducible by the FBI. *See* 5 U.S.C.S. § 552(a)(3)(B).

The issue of whether printouts or screenshots from the "administrative side" of FDPS constitute FOIA records that the FBI is obligated to process and release under FOIA has been in this case for some time. *See* Minute Order entered on August 22, 2022 ("[T]he FBI shall file a declaration and brief on or before September 19, 2022, explaining why the remaining FDPS tabs are not records within the meaning of FOIA."); *see also* Minute Order entered on July 14, 2022 ("[I]f it is the FBI's position that the agency is not obligated to produce records that are not 'documents,' the FBI must direct the Court to controlling authority on that question.").

"FDPS is a workflow management tool used to process responses to FOIA and Privacy Act requests." 16th Seidel Decl. at 3 ¶ 7. The processing records that Plaintiffs requested have already been processed, released, and litigated during the course of this long-running litigation.

*Id.* (Plaintiffs have received "exportable" case notes, electronic search slips, and records stored within FDPS's Documents tab).   At issue now is whether screenshots from the "remaining tabs" of FDPS set forth in the Sixteenth Seidel Declaration constitute records under FOIA.   *Id.* at 4 ¶ 8. The purpose of these non-exportable "remaining tabs is to facilitate the workflow of processing FOIA/Privacy Act requests, rather than to store records" as is the case with the non-administrative sides of FDPS.   *Id.* at 4 ¶ 9.   "The information that appears within the[se] tabs is not static and is constantly updating to reflect the status and workflow of a request."   *Id.*   The tabs contain "nothing more than administrative data of the case that changes, or in some cases may be overwritten, as the workflow of a request progresses."   *Id.*   For example, some of the information in these tabs are bases upon which a request may be expedited, or a fee waiver may be requested or granted.   *See e.g.* ECF No. 202-2 at 19, 30 (screenshots).   Not only would much of such information have been conveyed in correspondence with the requesters (which has already been processed in this litigation), but furthermore "FDPS does not have a function that enables RIDS to print, extract, or export" this "administrative data."   17th Seidel Decl. at 3-4 ¶ 6.

"The only options to completely review these tabs are to view and use the system in-person, or to create a new record" by "access[ing] individual case shells, each iteration of which contains 14 tabs per case shell," which resulted in the creation of 855 pages of screenshots to respond merely to the Court's Order to create sample screenshots of the tabs relevant to 20 requests   16th Seidel Decl. at 4-5 ¶¶ 10-11.   "The process by which the FBI created the screenshots was by opening and displaying each tab of FDPS, generating a screenshot of each displayed tab, and copying that screenshot to a PowerPoint slide where all the images for each tab in each iterative case shell were organized by the relevant FOIA number.   The PowerPoint document was then converted to an Adobe PDF and imported into FDPS to be reviewed for applicable exemptions."   *Id.*   "These

screenshots are limited to the information immediately displayed on each tab" at any moment in time and "FDPS contains numerous additional fields that cannot be displayed on a single screenshot." *Id.* "This includes information boxes that cannot be expanded in a static screenshot and requires the use of a scroll bar while using the program to view the full contents, drop down menus with various selections, and further information that is only visible once you click into a particular item." *Id.* Therefore, "the FBI would need to create innumerable screenshots to capture the various permutations of each tab," so much so that it would be overburdensome and prohibitive. *Id.* at 6 ¶ 12. The screenshots then must be converted into PowerPoint, which in turn must be converted to PDFs for reingestion into PDF to enable review for FOIA exemptions. *Id.* at 7 ¶ 13.[1]

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). In 1996, Congress amended the definition of "record" to include electronic records. *See* 5 U.S.C. § 552(f)(2). The legislative history notes that "[n]o matter how it is preserved, information that passes the threshold test of being an agency record, remains a record. This provision should restrain agencies from evading the clear intent of the

---

[1]     As such, the FBI still believes (if the Court is so inclined) that "a demonstration of FDPS is best suited to provide the Court with comprehensive information about the system and what each portion of it contains."   16th Seidel Decl. at 8 ¶ 15.   However, "[d]ue to the nature of the classified and exempt information maintained in FDPS, providing a public demonstration of FDPS could result in an unauthorized disclosure of classified or exempt information, as there is no way to redact or remove this information from the active system while still including the actual material currently in dispute per the Court's request."   *Id.*   Alternatively, "[a] public hearing would not be as informative as an *in camera* and *ex parte* hearing because the discussion would be limited to unclassified and nonexempt information and could not include a demonstration of FDPS."   *Id.* ¶ 16.

FOIA by deeming some forms of data as not being agency records and not subject to the law. . . .

This provision, however, does not broaden the concept of agency record. The information

maintained on a computer is a record, but the computer is not."   H.R. REP. 104-795, at 20, 1996

U.S.C.C.A.N. 3448, 3463.

Similarly, this Court is now being asked to consider whether certain tabs within an FBI

database are records.   It is critical to note that the FBI is not taking the position that the

*information* viewable in the FDPS tabs would not be an agency record if it were maintained in

another format that the FBI had created or retained, such as a printout or screenshot.   Rather, it is

the FBI's position that the FDPS database itself is not a record, in the same way that Congress did

not intend for a computer to be a considered a record.

As electronic technology has evolved, courts have noted that the distinction between

searching or creating records remains somewhat muddled.   *See Nat'l Sec. Couns. v. CIA*, 898 F.

Supp. 2d 233, 270 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020) ("In particular, there is a

tension between the well-settled prohibition against requiring agencies to conduct research and

create records, and the policy of the E–FOIA Amendments to bring the contents of electronic

databases within the FOIA's reach.   When points of data are stored in a database, that data can

often be manipulated in myriad ways, only some of which are likely to qualify as mere 'searching'

within the meaning of the FOIA.")   Specifically, using technology to search or sort information

in a database, even through the application of codes or some sort of programming, is not considered

to be creating a record.   Rather, it is just part of the requirement to search records.   As Congress

noted in the legislative history to the E-FOIA Amendments, "[c]omputer records found in a

database rather than a file cabinet may require the application of codes or some form of

programming to retrieve the information."   *See* H.R. Rep. No. 104-795, at 22, 1996 U.S.C.C.A.N.

3448, 3465.   Sorting a database by a particular data field (e.g., date, category, title) is essentially "the application of codes or some form of programming," and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests.   *Id.*

In contrast, FOIA "imposes no obligation to compile or procure a record in response to a request."   *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 151-52 (1980).   In *Colgan v. Dep't of Just.*, Civ. A. No. 14-0740 (TSC), 2020 U.S. Dist. LEXIS 74319 (D.D.C. Apr. 28, 2020), the requester sought "screenshot[s] of the search screen" arguing that it was an agency record because "the search screen is stored in the computer's random-access memory (RAM), which is the component where data is temporarily stored, it is sufficiently tangible to be an agency record."   *Id*. at *29-30.   The Court held that the screenshots did not constitute agency records because "temporary storage does not constitute retention of a record.   For the government to produce the requested screenshots, it would have to open the software and create a screenshot, which would not otherwise exist from the last time the agency opened the software to the search screen.   FOIA imposes no such duty on agencies, and the search screen is not simply another form or format of an already maintained record."   *Id*. at *32.

Similarly, in *National Security Counselors v. CIA*, the Court held that the agency was not required to produce an index of the contents of a database that did not exist prior to a given FOIA request, emphasizing that doing so would "require the creation of a new record because the record being requested—whether produced in the format of a printout, a 'screen shot,' or something similar— is not necessarily something 'that an agency has in fact chosen to create and retain.' . . . Therefore, a FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request

that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index." 898 F. Supp. 2d at 271 (citing *Yeager v. Drug Enf. Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982)); *see also Brown v. Perez*, 835 F.3d 1223, 1229 (10th Cir. 2016) (holding that the agency should provide "various redacted reports generated by its scheduling software," including some of the relevant information that had been requested, but refusing to order the creation of screenshots because "the plaintiffs wanted to see how the scheduling menus would appear on users' screens"); *Rutila v. Dep't of Transp.*, Civ. No. 3:16-cv-2911-B, 2022 WL 2359640, at *9 (N.D. Tex. June 30, 2022), *aff'd*, 72 F.4th 692 (5th Cir. 2023) (noting that screenshots were not required to be created, because the databases at issue were not configured to "allow[ ] data to be exported." . . . [B]oth systems allow a party to search for information and display the information on a screen, but "that . . . does not constitute retention of a record.") (citations omitted); *Powell v. Dep't of State*, Civ. A. No. 20-1789, 2021 WL 2420147, at *4–5 (N.D. Tex. May 20, 2021), *report and recommendation adopted*, 2021 WL 2416978 (N.D. Tex. June 14, 2021) (concluding that "the FOIA applies only to information in record form, […] 'not information in the abstract.'") (quoting *Forsham v. Harris*, 445 U.S. 169, 185 (1980)).

Likewise in this case, "FDPS tabs function as workflow management tools, and include nothing more than administrative data of the case that changes, or in some cases may be overwritten, as the workflow of a request progresses." 17th Seidel Decl. at 3 ¶ 6. Moreover, "FDPS does not have a function that enables RIDS to print, extract, or export this information beyond what has already been located and provided to Plaintiffs." *Id*. at 3-4 ¶ 7. Except the "notes section, the electronic search slip, and the records stored in the Documents tab," "[t]hese tabs are not records." *Id*. The only ways to completely review these tabs are to view and use the system in-person, or to create a new record by the process described in the declarations. *See id*.

Creating such screenshots is the equivalent of creating a new record, which is not required under the FOIA.  *See Colgan*, 2020 U.S. Dist. LEXIS 74319, *31-32 ("For the government to produce the requested screenshots, it would have to open the software and create a screenshot, which would not otherwise exist"); *see also Nat'l Sec. Counselors v. CIA*, 969 F.3d at 409 ("[T]he CIA's FOIA analysts would be required to individually review each FOIA request submitted from 2008 to 2010 and manually sort thousands of requests based on fee category.   That process would quintessentially entail the creation of new records, not the disclosure of preexisting ones."); *Aguiar v. Drug Enf. Admin.*, 992 F.3d 1108, 1109 (D.C. Cir. 2021) ("DEA does not possess, and never itself created or stored the map images that appellant seeks.   Asking DEA to convert the GPS coordinate data into maps in these circumstances would therefore require DEA to create new records rather than reproduce an existing record in another 'form or format.'   FOIA does not obligate DEA to retain or create records."); *Yeager*, 678 F.2d at 321 ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request."); *Ctr. for Immigr. Studies v. United States Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 271 (D.D.C. 2023) ("[A] requester oversteps when it seeks information in a format that the agency does not use or for which the agency lacks the necessary technology.").

Furthermore, the screenshots are not "records" under FOIA because much of the information is not retained or maintained and is transient.  *See* 17th Seidel at 8 ¶ 14 ("FDPS is intended to be used as a system to effectively and efficiently process FOIA and Privacy Act requests, and as such, the information in the FDPS tabs is a constantly transient account of the events of a case, even after the case has been closed.").   The FOIA describes the term "record" as "includ[ing] any information that would be an agency record . . . when maintained by an agency in any format, including an electronic format," but that description provides little help in

understanding what is a "record" in the first place. *Am. Immigr. Lawyers Ass'n v. Exec. Office for Immigr. Review*, 830 F.3d 667, 678 (D.C. Cir. 2016) (citing 5 U.S.C. § 552(f)). Rather, under FOIA, "agencies instead in effect define a 'record' when they undertake the process of identifying records that are responsive to a request." *Id*. Not all information found in an agency constitutes "agency records" for the purpose of the FOIA. *Ryan v. Dep't of Just.*, 617 F.2d 781, 785 (D.C. Cir. 1980). As the Supreme Court instructed in *Tax Analysts*, "agency records" encompasses only those documents that an agency both (1) "create[s] or obtain[s]," and (2) "control[s] . . . at the time the FOIA request [was] made." *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-45 (1989).

In this Circuit, a four factor test to determine whether an agency has sufficient control over a document to make it an agency record considers [1] the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the record as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files. *Tax Analysts v. Dep't of Just.*, 845 F.2d 1060, 1069 (D.C. Cir. 1988). In deciding whether a document is an "agency record," courts evaluate how the agency would treat the records in its normal course of operations, disregarding FOIA requests. *See Judicial Watch, Inc. v. United States Secret Serv.*, 726 F.3d 208, 219 (D.C. Cir. 2013) ("Most courts which have considered the question have concluded that the FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control.").

The information viewable in the remaining FDPS tabs is not static. 17th Seidel at 8 ¶ 14. It can be updated and modified throughout the course of processing a case, so the information that is presently visible on a screen does not necessarily reflect the same information that would have been reflected on the screen when the Plaintiffs filed their requests. *Id*. FDPS is not intended to

be used to retain a historical or documentary account of past events or to memorialize information as it appears on a screen on a specific day.  *Id.*   Rather, FDPS is intended to be used as a system to effectively and efficiently process FOIA and Privacy Act requests, and, as such, the information in the FDPS tabs is a constantly transient account of the events of a case, even after the case has been closed.  *Id.* at 8-9 ¶ 14.   The FBI has not created or retained screenshots, printouts, or any other record format memorializing the information within the FDPS tabs at issue beyond those provided in the FBI's screenshot sample requested by the Court.  *Id.*

Finally, even if this Court were to determine that the information is a "record," it is not a form or format "readily reproducible" by the FBI. *See* 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person *if the record is readily reproducible by the agency in [the requested] form or format*.")   Agencies' determinations as to reproducibility, moreover, must be accorded "substantial weight" by the reviewing court.  *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C. Cir. 2006) (citing 5 U.S.C. § 552(a)(4)(B) (directing courts reviewing the withholding of records to "accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility . . . and reproducibility")).

"Readily reproducible" in a requested format means "readily accessible" by the agency in that format."  *Id.* (citing *Carlson v. Postal Serv.*, Civ. A. No. 03-4113, 2005 WL 756573, at *7 (N.D. Cal. 2005)).   Webster's definition of "readily" as "quickly, promptly, or without delay or objection" is consistent with FOIA's requirement that records should be released "promptly." https://www.merriam-webster.com/thesaurus/readily (visited January 8, 2024).   Some synonyms are "effortlessly" or "efficiently," while antonyms are "laboriously," "strenuously," and "arduously."  *Id.*   These terms are relevant here.   "Interpreting § 552(a)(3)(B) as imposing such

an obligation" to create records in requesters' preferred forms or formats "would likely also be in tension with this Court's precedent holding that FOIA does not obligate agencies to "add explanatory material to a document" and that a FOIA "requestor must take the agency records as he finds them."   *Aguiar*, 992 F.3d at 1110 (citing *Yeager*, 678 F.2d at 321-23).

In this case, there is no "readily reproducible" or "readily accessible" form or format. "The word 'readily' signifies that an agency is relieved of its obligation to fulfill a format request that is onerous."   *Sai v. Transp. Sec. Admin.*, 466 F. Supp. 3d 35, 45 (D.D.C. 2020) ("Imposing such a duty for electronic records would dramatically expand the demands that the FOIA imposes on federal agencies with no indication that Congress intended to make such a fundamental change to the law or that it intended to impose an organization requirement with respect to the release of electronic records that does not exist for paper records.").   In *Aguiar*, where the DEA provided the requester with spreadsheets approximating the requester's movements during an investigation, but the requester insisted on live GPS tracking maps of his movements instead, which "would [require DEA to] have to create new records," the D.C. Circuit sided with the DEA.   *See* 992 F.3d at 1113.   Moreover, the maps "were transient and [could] 'not . . . [be] located with a reasonable amount of effort by a person familiar with DEA's record systems.'"   *Id.* (citing DEA declarations).   As in *Aguiar*, where the requester had received spreadsheets, but wanted live data, it is important to note here that Plaintiffs have already received responsive records from FDPS.

The FBI's explanation, which is entitled to the presumption of good faith, is that it "reviewed the 20 requests and determined that in order to create the screenshots at issue, it must access 57 individual case shells, each iteration of which contains 15 tabs per case shell, which

resulted in the creation of 855 pages of screenshots."[2]   16th Seidel Decl. at ¶ 11.   The information

was not readily reproducible or accessible because the FBI was required to "open[] and display[]

each tab of FDPS, generating a screenshot of each displayed tab, and copying that screenshot to a

PowerPoint slide where all the images for each tab in each iterative case shell were organized by

the relevant FOIA number."   *Id*.   "The PowerPoint document was then converted to an Adobe

PDF and [re]imported into FDPS to be reviewed for applicable exemptions."   *Id*.; *see also* 17th

Seidel Decl. at 4-5 ¶¶ 8-9.   Because the information Plaintiffs requested is not readily reproducible

or accessible, the FBI has to engage in an unreasonable amount of effort to respond.   Both Seidel

Declarations also explain that the "screenshots are limited to the information immediately

displayed on each tab [and] FDPS contains numerous additional fields that cannot be displayed on

a single screenshot."   *See, e.g.,* 16th Seidel Decl. at 6 ¶ 12.   This explanation gives some insight

into the limitations of taking screenshots of FDPS and the type of information that is not readily

reproducible.

Thus, for the foregoing reasons and the FBI's explanations contained in both of the

referenced Seidel Declarations, the FBI respectfully requests that the Court rule that the FDPS tabs

do not constitute "agency records" under FOIA, and, as such, the FBI is not required to create

agency records, or in this case, screenshots of the FDPS database.   In the alternative, if the Court

finds that the information does constitute an "agency record," then the FBI requests that the Court

find that the information is not "readily reproducible" under the FOIA.

*       *       *

---

[2]       "A new case shell is created when a request needs to be re-opened after a case was closed.
There are various reasons why a case might be reopened, including if a requester provides
additional information, resubmits their request with a privacy waiver, pays fees, or if an appeal is
filed, amongst other possible reasons."   16th Seidel Decl. at 5 n3.

January 10, 2024                              Respectfully submitted,


                                             MATTHEW M. GRAVES, D.C. Bar #481052
                                             United States Attorney

                                             BRIAN P. HUDAK
                                             Chief, Civil Division

                                             By:_____/s/_____
                                             KENNETH ADEBONOJO
                                             Assistant United States Attorney
                                             United States Attorney's Office – Civil Division
                                             601 D Street, NW
                                             Washington, D.C.   20530
                                             Telephone: (202) 252-2562