UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN NOAH SHAPIRO, et al.<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 13-cv-0555 (RDM) |

## TWENTY-EIGHTH OVERALL AND SEVENTEENTH DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1. I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA) from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various

1

assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

2.  In my official capacity as Section Chief of RIDS, I supervise approximately 241 FBI employees, supported by approximately 98 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009); Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based on my personal knowledge, information provided to me in my official capacity, and conclusions and determinations reached and made in accordance therewith.

3.  Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiffs' FOIA request in this litigation.

4.  The FBI submits this declaration in response to the Court's December 4 Minute Order concerning the question of whether the entries in the FOIPA Document Processing System (FDPS) constitute "records" subject to FOIA. Part I describes the procedures the FBI used to create the screenshots of the tabs of FDPS and why that is tantamount to the creation of a new record; and Part II explains why the FDPS tabs themselves are not records subject to the FOIA.

2

## PART I: SCREENSHOTS OF FDPS CONSTITUTE THE CREATION OF NEW RECORDS

5. As described in the Sixteenth Seidel Declaration (ECF 204-1, ¶ 7), FDPS is unique due to its role as a workflow management tool used to process responses to FOIA and Privacy Act requests. The FBI has previously acknowledged that parts of FDPS contain already-extant records that can be exported or extracted per the normal functions of FDPS. All of these records have been exported and processed and provided to Plaintiffs.[1]

6. Currently at issue are the fourteen remaining tabs within FDPS that have not been processed.[2] In contrast to the exportable portions of FDPS, the purpose of these remaining tabs is to facilitate the workflow of processing FOIA/Privacy Act requests, rather than to store records. The information that appears within the tabs is not static and is constantly updating to reflect the status and workflow of a request. Specifically, these FDPS tabs function as workflow management tools, and include nothing more than administrative data of the case that changes, or in some cases may be overwritten, as the workflow of a request progresses. Some of this administrative data, such as the bases upon which a request may be expedited, or upon which a fee waiver may be requested or might be granted, would have been conveyed in correspondence with requesters, which has already been processed for Plaintiffs in this litigation.

---

[1] These extant records include the electronic search slips, case notes and records located in the Documents tab.

[2] These tabs include the Case Summary, Status, Expedite, Fee Waiver, Case Searches, Case Files, OGA Case Files, Work Items, OGA Coordination, Ready Work Items, Requester Releases, OGA Releases, Case Fees, and Case History tabs. As noted in FN 1, the contents of the fifteenth tab, the Documents tab, are exportable and have already been processed and provided to Plaintiffs.

7. Additionally, because the purpose of these tabs is to provide users with the tools and information needed to manage the workflow of the relevant FOIA request, FDPS does not have a function that enables RIDS to print, extract, or export this information beyond what has already been located and provided to Plaintiffs. These tabs are not records beyond the notes section, the electronic search slip, and the records stored in the Documents tab. The only options to completely review these tabs are to view and use the system in-person, or to create a new record by the process described in ¶ 8 *infra*. Creating such screenshots is the equivalent of creating a new record which is not required under the FOIA.

### THE FBI'S CREATION OF THE SCREENSHOT SAMPLES

8. In compliance with the Court's October 16 Order, the FBI created screenshots of 20 sample cases selected by Plaintiffs and filed the sample with the Court alongside the Sixteenth Seidel Declaration as Exhibit A (ECF 204-2). As described in the Sixteenth Seidel Declaration (ECF 204-1, ¶ 11), the FBI reviewed the 20 requests and determined that in order to create the screenshots at issue, it must access 57 individual case shells[3], each iteration of which contains 15 tabs per case shell[4], which resulted in the creation of 855 pages of screenshots. The process by which the FBI created the screenshots was by opening and displaying each tab of FDPS, generating a screenshot of each displayed tab, and copying that screenshot to a

---

[3] A new case shell is created when a request needs to be re-opened after a case was closed. There are various reasons why a case might be reopened, including if a requester provides additional information, resubmits their request with a privacy waiver, pays fees, or if an appeal is filed, amongst other possible reasons.

[4] Although the FBI has determined that one of the fifteen tabs, the Documents tab, contains extractable records previously provided to Plaintiffs, it provided screenshots of this tab in compliance with the Court's Order.

4

PowerPoint slide where all the images for each tab in each iterative case shell were organized by the relevant FOIA number. The PowerPoint document was then converted to an Adobe PDF and imported into FDPS to be reviewed for applicable exemptions. Once created, each screenshot was ingested into FDPS, and the FBI reviewed the screenshots for all applicable exemptions and protected all exempt information pursuant to the FOIA. The sample was attached as Exhibit A to the Sixteenth Seidel Declaration (ECF 204-1).[5]

LIMITATIONS IN CREATION OF SCREENSHOTS FOR FOIA REVIEW

9.      Since the tabs of FDPS were built for use within a software program, the FBI encountered significant limitations in creating screenshots of these tabs for FOIA review. These screenshots are limited to the information immediately displayed on each tab. FDPS contains numerous additional fields that cannot be displayed on a single screenshot. This includes information boxes that cannot be expanded in a static screenshot and requires the use of a scroll bar while using the program to view the full contents, drop down menus with various selections, and further information that is only visible once you click into a particular item. For example, on the Requester Releases tab[6], each release made to a requester is listed in the informational field titled "Releases." This field cannot be expanded. When there are more entries than can be immediately displayed in the field, a GIS must scroll down the field to show the remaining entries. Additionally, when a GIS clicks on one of the entries in the Releases field, information

---

[5] The FBI's review for exempt information and justification for nondisclosure of some information is described in depth in the Sixteenth Seidel Declaration. (ECF 204-1, ¶¶ 17-66).

[6] *See* ECF 204-1, Ex. A, Bates Page "Screenshot Sample-297" for an example of the Requester Releases tab with multiple releases.

populates in the Releases Item(s) and Release Letter fields to display the component work items[7] of that particular release. This information is only visible if each release is clicked on and would require multiple screenshots of the same tab to capture all this information.

10. In the Joint Status Report filed on December 1, 2023 (ECF 205), Plaintiffs "note that many of the screenshots provided by the FBI so far have non-exempt portions of the responsive records obscured." (Id. Pgs. 1-2). One example Plaintiffs cite is the list of case files on Bates-numbered pages Screenshot Sample-50, 51, 155, 156, 215, 216 which is cut off at the bottom. To include all the information located in the list of case files[8] in the examples cited by Plaintiffs, the FBI would need to scroll the informational field further and create additional screenshots until all the information is captured in the requisite number of screenshots. The number of screenshots would be dependent on the number of files imported into that particular case. Another example cited by Plaintiffs is on Bates page Screenshot Sample-42[9], where the column to the right of "Pages Preprocessed" is cut off on the right-hand side. This column of information was inadvertently not captured in the creation of the screenshot sample. To capture this information, each column in that informational field would need to be resized to effectively display all information before a screenshot is created. In this instance, the missing column on

---

[7] A work item is the FDPS method of creating and administratively tracking a task within a case in FDPS, such as letters, versions of the documents to be processed, and the finalized releases that are moved through the workflow. The work items are not documents; rather, they link to, and track with, the corresponding processed files or outgoing letters in the Case Files tab, the Documents tab, etc.

[8] As discussed in the Sixteenth Seidel Declaration, in Shapiro requests that resulted in a No Records response, the FBI withheld the information within the Case Files tab pursuant to Exemption (b)(7)(E). (ECF No. 204-1, ¶¶ 47-49).

[9] Screenshot Sample-42 is an example of a Requester Releases tab.

Screenshot Sample-42 is titled "Creator" and displays the name of the FBI employee who assembled the displayed release. Even then, as described in the example in ¶ 9 supra, all the information in the Requester Releases tab cannot be displayed without further interaction with the system and the creation of multiple screenshots.

11. Plaintiff's concerns clearly illustrate some of the limitations of creating screenshots of a system like FDPS. In the status report, Plaintiffs request the Court to specifically direct the FBI that when processing the "non-empty FDPS tabs for release, the agency ensure that all non-exempt portions of records are included." (ECF 205, pgs. 1-2). However, as described in the Sixteenth Seidel Declaration (ECF 204-1, ¶ 12), to effectively capture all the information present in FDPS with screenshots, the FBI would need to create innumerable screenshots to capture the various permutations of each tab, with each drop down or item selected that displays further information, or numerous screenshots to capture information in fields that require further scrolling to display all the information present.

THE FOIA DOES NOT REQUIRE FEDERAL AGENCIES TO CREATE RECORDS

12. As described *supra*, in order for the FBI to provide Plaintiffs with the information contained in the remaining FDPS tabs, the FBI would need to create new records by taking numerous screenshots of each tab in FDPS. However, the FOIA does not require federal agencies to create new records in response to a FOIA request. Essentially, Plaintiffs are asking the FBI to create records in response to their requests, rather than searching for records that already exist in a system of records or using technology to search and/or sort information located in a database that can retrieved and produced. In order to create these records, the FBI would have to access FDPS, pull up virtual images of what FBI personnel can see in FDPS at that moment in time, and then manufacture screenshots that could be reviewed for applicable FOIA exemptions, as

7

opposed to locating existing records to process as it has already done in this case. There is no automated process, such as an export function or print function, that enables the FBI to compile the images of the tabs of the cases in FDPS. Rather, compiling the screenshots is a manual creation process that requires FBI employees to capture an image and save it for importing into FDPS for review. Additionally, the screenshots of the relevant FDPS cases would not have existed prior to Plaintiff's FOIA request because such screenshots are not something the FBI would have chosen to create and/or retain. Consequently, the FBI maintains that Plaintiffs' request for screenshots of FDPS tabs would require it to create records that do not already exist, and the FOIA does not require agencies to create records in response to FOIA requests.

### PART II: THE REMANING TABS ARE NOT RECORDS SUBJECT TO THE FOIA

13. In addition to the FBI's position that creating screenshots requires the FBI to create records, the FBI's position is also that the remaining FDPS tabs are not records subject to the FOIA. It is critical to note that the FBI is not taking the position that the information viewable in the FDPS tabs would not be an agency record if it were maintained in another format that the FBI had created or retained, such as a printout or screenshot. Rather, it is the FBI's position that it has not, in fact, created or retained the information in such a way that renders it an agency record for the purposes of FOIA, beyond those screenshots specifically created and provided in the FBI's sample ordered by the Court (ECF 204-2).

14. As described in the Thirteenth Seidel Declaration (ECF 191-1) and within this declaration, the information viewable in the remaining FDPS tabs is not static. It can be updated and modified throughout the course of processing a case, so the information that is currently visible on a screen does not necessarily reflect the same information that would have been reflected on the screen when the Plaintiffs filed their requests. FDPS is not intended to be used to

retain a historical or documentary record of past events or to memorialize information as it appears on a screen on a specific day. Rather, FDPS is intended to be used as a system to effectively and efficiently process FOIA and Privacy Act requests, and as such, the information in the FDPS tabs is a constantly transient account of the events of a case, even after the case has been closed. The FBI has not created or retained screenshots, printouts, or any other record format memorializing the information within the FDPS tabs at issue beyond those provided in the FBI's screenshot sample ordered by the Court (ECF 204-2).

15. As described in the Thirteenth Seidel Declaration (ECF 191-1), in order to provide the information currently listed in the remaining tabs, the FBI would have to open the software to create new records, in this case numerous new screenshots, following the process described *supra*. Consequently, because the FBI has not created or retained screenshots of those tabs beyond those provided in the FBI's screenshot sample ordered by the Court (ECF 204-2), the FBI does not have possession or control of any records with regard to the information in these tabs. The FBI has no possession or control as the records simply do not exist at the time of the request nor at any time, without being newly created via screenshotting.

16. Further, because these records are not in existence, other than those created in response to this Court's order, the control factor has not been met. Since the control requirement has not been met due to the non-existence of records, neither will the four factors relevant to a determination of whether the FBI exercises sufficient control over a record to render it an agency record, including: (1) the intent of the document creator to retain or relinquish control, (2) the ability of the agency to use and dispose of the record as it sees fit, (3) the extent to which agency personnel have read or relied upon the document, and (4) the degree to which the document was

integrated into the agency record system or files.[10] As such, the FBI's position is that it cannot produce records that are not under its possession or control, as they simply do not exist without further creating new records using the process described *supra*.

## CONCLUSION

17. In response to the Court's December 4 Order, the FBI has described the procedures used to generate screenshots of the fifteen tabs of FDPS. As the FBI has described in this declaration, the generation of those screenshots would require the FBI to create new records, which is not required under the FOIA. Additionally, this declaration demonstrates that the remaining FDPS tabs are not records subject to the FOIA.

---

[10] *Burka v. United States Department of Heath Human Serv.*, 318 U.S. App. D.C. 274, 87 F.3d 508, 515 (D.C. Cir. 1996).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of January 2024.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia