UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RYAN NOAH SHAPIRO, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

    *Defendant*.

Civil Action No. 13-555 (RDM)

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the latest in a very long series of disputes between the parties regarding the Federal Bureau of Investigation's ("FBI's") obligation to respond to Plaintiffs' Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests, which seek records relating to the FBI's consideration and processing of Plaintiffs' earlier FOIA requests. In this sense, it is a case about FOIA on FOIA. For present purposes, however, the Court needs to resolve only the narrow question of whether substantive entries contained within fourteen tabs of the FBI's Freedom of Information and Privacy Act Document Processing System ("FDPS") constitute "records" that are subject to FOIA.

FDPS "is a request management system . . . [that] helps FBI personnel process documents electronically, track workload, and efficiently use subject matter expertise by streamlining the collaboration and review process associated with complex FOIA/Privacy Act requests." Dkt. 21-3 at 15 (Hardy Decl. ¶ 54). "The FBI has previously acknowledged that parts of FDPS contain already-extant records that can be exported or extracted per the normal functions of FDPS," and it attests that it previously provided "[a]ll of these records . . . to

Plaintiffs." Dkt. 208-1 at 3 (17th Seidel Decl. ¶ 5).  On a quick read, one might conclude that there is nothing left for the Court to decide, because the agency has already provided all of the FPDS records at issue to Plaintiffs.  But on a closer inspection, that is not what the FBI says—or what it means.  In referring to "these records," the FBI is not referring to all "extant" entries in the FDPS but, rather, is referring to those "extant records that can be exported or extracted per the normal functions of FDPS."  *Id.*  That is, the FBI is referring only to materials that is exportable using "the normal functions of FDPS"—a category that apparently includes "electronic search slips, case notes[,] and records located in the Documents tab."  *Id.* at 3 n.1.  It is not referring to material found in "the fourteen [other] tabs within FDPS," which "have not been processed."  *Id.* at 3 (17th Seidel Decl. ¶ 6).

The FBI makes three arguments in support of its contention that these materials are not "records" subject to FOIA.  First, the agency argues that a document or electronic entry does not constitute a "record" for purposes of FOIA unless the agency is able to "control the record[] at the time the FOIA request is made," and, here, "the FBI has no control because the records responsive to Plaintiffs['] requests . . . do not exist in [any of] the [FDPS] tabs other than the documents and notes tabs."  Dkt. 191 at 3–4.  Second, it argues that the information contained in the remaining tabs "is not static and is constantly updating to reflect the status and workflow of a request."  Dkt. 208-1 at 3 (17th Seidel Decl. ¶ 6).  The FDPS is, to use the FBI's (forced) metaphor, "a 'living, breathing,' processing system," Dkt. 191-1 at 4 n.4, which lacks sufficient permanence to fall within the reach of FOIA.  Third, the agency argues that to produce the material at issue, "the FBI would need to create new records by taking numerous screenshots of each tab in FDPS," and "FOIA does not require agencies to create records in response to FOIA requests."  Dkt. 208 at 2.  None of these arguments is persuasive.

2

First, in its initial briefing on the question now before the Court, the FBI argued that under *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144–45 (1989), and *Burka v. HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996), any information in the remaining tabs does not qualify as "record" for purposes of FOIA because the "FBI has no control" over the information. Dkt. 191 at 3–4. In invoking this line of authority, which has its roots in a battle over access to Henry Kissinger's official papers, *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980), the FBI struggles to fit a square peg into a round hole. Nothing in this case turns on who "controls" the FDPS—it is a FBI-owned and controlled database, which contains records created and maintained by FBI employees in the performance of their official duties.

Moreover, to the extent that the FBI maintains that it lacks "control" of the records at issue because the remaining are analogous to empty drawers of a file cabinet, Dkt. 191 at 2, that contention is either demonstrably false or merely an alternative (and obfuscating) formulation of the FBI's second and third arguments, which posit that any information contained in the remaining tabs does not qualify as an agency "record" for purposes of FOIA. At the Court's direction, the FBI has now produced sample screenshots from the tabs at issue, and it has redacted significant portions of the material at issue pursuant to various FOIA exemptions, *see generally* Dkt. 204-2, belying any contention that the "drawers" at issue are simply empty. Indeed, in its most recent, supplemental brief, the FBI softens its contention (albeit only slightly), so that it now claims only that "*much of the information* is not retained or maintained and is transient." Dkt. 208 at 8 (emphasis added).

Second, the FBI repeatedly asserts that "[t]he information viewable in the remaining FDPS tabs is not static," *id.* at 9 (citing 17th Seidel Decl. ¶ 14), and the tabs are merely designed "to facilitate the workflow of processing FOIA/Privacy Act requests," *id.* at 3 (quoting 16th

3

Seidel Decl. ¶ 9). This matters, according to the FBI, because the information is "administrative data of the case that changes, or in some cases may be overwritten, as the workflow of a request progresses." *Id.* (quoting 16th Seidel Decl. ¶ 9).

It goes without saying that Court does not contemplate ordering the FBI to release data that has been overwritten or otherwise no longer exists. Nor does this case require the Court to grapple with the question of when government-created and controlled information or data is sufficiently ephemeral to fall beyond the reach of FOIA. Rather, the FOIA requests at issue in this case seek records relating to the processing of other FOIA requests well over a decade ago. If the relevant entries in FDPS have been overwritten, so be it—although all responsive records should have been preserved as soon as the FOIA requests at issue in this case were received. But if the relevant information still exists in any of the remaining tabs—as the FBI's sample screenshots suggest—then the fact that FDPS is an interactive workspace, which *can* but *need not* necessarily change over time, should not make a difference. Indeed, the same thing might be said of document prepared using standard word processing software: each key stroke changes the document, and the document can be overwritten or changed at any time. But it would border on the absurd to suggest that a version of the document that has remained on the agency's word processing file for over a decade is not an agency "record" for purposes of FOIA merely because it can be overwritten and, at least as it was being prepared, it was not static.

Third, the FBI argues that the only way that it could comply with Plaintiffs' requests for information found in the remaining FDPS tabs would be to create screenshots of each page. This matters, according to the FBI, for two reasons. First, these screenshots do not currently exist, and an agency cannot be compelled to produce what it does not possess. Dkt. 208 at 6 (citing *Colgan v. Dep't of Just.*, No. 14-cv-740, 2020 WL 2043828 (D.D.C. Apr. 28, 2020). Second, the

governing caselaw establishes that an agency cannot be required to create a new record simply for the purposes of responding to a FOIA request. *Id.* at 8 (citing *Yeager v. Drug Enf. Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982)).

This argument, however, misunderstands Plaintiffs' FOIA requests. Those requests do not seek screenshots, and they certainly do not request that the FBI create new, previously non-existent records. Rather, the requests seek the information found in the remaining FDPS tabs, and the screenshots are simply one way—and perhaps the FBI's preferred way—of producing those extant agency records. As Plaintiffs note, the FBI could fully comply with the FOIA requests by using (and, if necessary, creating) an export script, which would download the data in a readable format. *See* Dkt. 194 at 2. There is no doubt, for example, that "using a query to search for and extract a particular arrangement or subset of data already maintained in an agency's database does not amount to the creation of a new record." *Ctr. for Investigative Reporting v. Dep't of Just.*, 14 F.4th 916, 938 (9th Cir. 2021).

Notably, the FBI acknowledges that it "is not taking the position that the *information* viewable in the FDPS tabs would not be an agency record if it were maintained in another format that the FBI had created or retained, such as a printout or screenshot." Dkt. 208 at 5 (emphasis in original). But that information, which is recorded in the remaining FDPS tabs, is no less subject to FOIA than any other information that reflects the workings of government and that cannot be produced by simply hitting print, by copying an electronic file onto a flash drive, or downloading the information to an accessible website. Any doubt regarding this conclusion is put firmly to rest by Congress's enactment of the e-FOIA amendment, which makes clear that an agency "record" includes "any information that would be an agency record . . . when maintained by an agency in any format, including an electronic format." 5 U.S.C. § 552(f)(2)(A).

The FBI argues that the "'FDPS does not have a function that enables RIDS to print, extract, or export,' this 'administrative data.'" Dkt. 208 at 3 (quoting 17th Seidel Decl. ¶ 6).  But the agency's existing extraction functionality (or lack thereof) does not divest the public of the right to obtain the underlying information through an otherwise proper FOIA request.  *See Long v. CIA*, No. 15-cv-1734, 2019 WL 4277362, at *4 (D.D.C. Sep. 10, 2019) (holding that creating new code to locate and extract data does not constitute the creation of a new record); *Am. Small Bus. League v. U.S. Small Bus. Admin.*, 2008 WL 3977780, at *4 (N.D. Cal. Aug. 26, 2008) (same).  The FBI itself quotes the legislative history of the e-FOIA amendments, which describes how "[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information."  Dkt. 208 at 5 (quoting H.R. Rep. No. 104-795, at 22).

Finally, the FBI argues that producing the records at issue would involve a "gargantuan" effort.  Dkt. 211 at 4.  The Court is skeptical.  The FBI has already provided screenshots for 20 of the underlying requests, as it was required to do by the Court's October 16, 2023 minute order.  Dkt. 204; Min. Order (Oct. 16, 2023).  By the FBI's own estimate, the task of creating these screenshots required "a total estimated time of 9 hours."  Dkt. 202 at 2.  Repeating this process for the remaining underlying FOIA requests will not impose a burden on the FBI that is any different from the burden imposed in myriad FOIA cases.  This is particularly true because the FBI need not create screenshots for the many empty tabs, *see, e.g.*, Dkt. 204-2 at 24, in order to respond to Plaintiffs' FOIA request.

The Court will, accordingly, order the FBI to continue the process of producing any non-exempt, responsive material found in the remaining 14 tabs of the FDPS.  But to be clear, if there is no data or information in a particular tab, the FBI's task with respect to that tab has come to an

6

end.  It need not, for example, produce a screenshot of an empty tab.  Nor is the FBI required to produce (segregable) information that is not responsive to Plaintiffs' FOIA requests.  If the information contained in a tab has been overwritten with information relating to a FOIA request that has no bearing on this case, for example, the FBI need not produce that non-responsive material.  But where a tab contains information that is responsive to Plaintiffs' long-pending FOIA requests, the FBI must release that material in a suitable format.

## CONCLUSION

For all these reasons, the FBI is hereby **ORDERED** promptly to review the material contained in the remaining FDPS tabs and to release to Plaintiffs, in a suitable format, any responsive, non-exempt material.  The Court cautions the FBI, moreover, that any withholdings the agency decides to make must be consistent with FOIA *and with this Court's multiple, prior opinions in this case*.  This is not an occasion for either side to re-fight the many battles that have preceded what the Court hopes is a final skirmish in a case that has gone on for far too long.

**SO ORDERED**.

> /s/ Randolph D. Moss
> RANDOLPH D. MOSS
> United States District Judge

Date:  August 1, 2024